<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRANDON COPELAND,<br><br>                Plaintiff,<br><br>                v.<br><br>POLIQUIN PERFORMANCE<br>CENTER 2, LLC d/b/a POLIQUIN<br>GROUP, et al.,<br><br>                Defendants. | Case No. 3:19-cv-20278 (BRM) (ZNQ)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion for Reconsideration filed by Plaintiff Brandon Copeland ("Plaintiff"), seeking reconsideration of the Court's July 29, 2020 Order, to the extent it dismissed Counts One through Three and part of Count Four of Plaintiff's Complaint with prejudice. (ECF No. 24.) Defendant Poliquin Performance Center 2, LLC d/b/a Poliquin Group ("Poliquin" or "Defendant") opposed the Motion (ECF No. 26), Plaintiff replied (ECF No. 27), and Defendant filed a sur-reply (ECF No. 30.) The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Reconsideration is **GRANTED**.

I.   BACKGROUND

A.   **Factual Background**[1]

Plaintiff is a professional football player who, at all relevant times, was employed by the New York Jets, who are a member of the National Football League ("NFL"). (ECF No. 1-1 ¶ 12.) The NFL has instituted polices that prohibit the use of performance-enhancing substances and players are subject to these policies, without exception. (*Id.* ¶ 13.) The policy in effect during all relevant times for this litigation was the 2018 NFL Performance Enhancing Substances Policy (the "Policy"). (*Id.*) The Policy included a "Prohibited Substances List" that, at all relevant times, prohibited all Selective Androgen Receptor Modulators ("SARMs"). (*Id.*) Specifically, the Policy identifies Ostarine as a prohibited brand-name SARM. (*Id.*). Ostarine is "not legal or approved for human consumption in the United States, or any other country." (*Id.* ¶ 14.) Products containing SARMs "can produce life threatening reactions, including liver toxicity and can increase the risk of heart attack and stroke." (*Id.* (internal quotations omitted).)

Plaintiff was under contract with the New York Jets for the 2019 season and was projected to be a starter. (*Id.* ¶ 16). As a veteran player, Plaintiff was eligible for various incentives that could increase his compensation for the year. (*Id.*) Defendant promoted and sold Yang R-ALA "as a purported high-quality dietary supplement." (*Id.* ¶ 1.) "Plaintiff consumed Yang R-ALA for training purposes." (*Id.* ¶ 17.) Plaintiff "relied on the representations of Defendant[]" and "on the label of the Yang R-ALA bottle and website description that Yang R-ALA did not contain Ostarine." (*Id.*) Plaintiff also personally researched Yang R-ALA and was satisfied "through his research that the product did not contain any substances, including Ostarine, that were banned" or

---

[1] The factual background of this matter is familiar to the parties. The Court, therefore, only recounts the facts necessary to resolve the present Motion.

prohibited by the NFL. (*Id.* ¶ 18.) Plaintiff also submitted pictures of the Yang R-ALA bottle "to at least two nutritionists who approved his consumption on the condition that the ingredient list was accurate." (*Id.* ¶ 19.) On March 28, 2019, Plaintiff received two bottles of Yang R-ALA and on April 1, 2019 he began consuming Yang R-ALA. (*Id.* ¶¶ 20–21.)

As a professional football player, Plaintiff was subject to regular drug testing. (*Id.* ¶ 22.) On April 15, 2019, in compliance with NFL policy, Plaintiff provided urine samples to the NFL. (*Id.*) "Plaintiff's 'A' urine sample was analyzed by the Sports Medicine Research & Testing Laboratory," which reported that Plaintiff's urine sample contained the prohibited substance Ostarine. (*Id.* ¶ 23.) These findings "were repeatedly certified by a number of accredited scientists and analysts." (*Id.*) The same laboratory subsequently tested Plaintiff's "B" sample and found that it also contained Ostarine. (*Id.* ¶ 24.) Plaintiff had never previously tested positive for a banned substance and Plaintiff contends he "had never knowingly or intentionally exposed himself to or ingested Ostarine." (*Id.* ¶ 25.)

On May 18, 2019, the NFL notified Plaintiff that he had failed the urine test due to the presence of Ostarine and that he would be subject to discipline. (*Id.* ¶ 26). Upon learning this, Plaintiff "immediately ceased consumption of Yang R-ALA." (*Id.*). On May 29, 2019, Plaintiff had the AEGIS laboratory, which maintains an independent and accredited anti-doping analysis program, test his remaining Yang R-ALA capsules. (*Id.* ¶ 27.) On June 14, 2019, the AEGIS laboratory "reported that it found . . . each of the Yang R-ALA capsules . . . were conclusively positive for Ostarine." (*Id.* ¶ 28.) On July 9, 2019, "the AEGIS laboratory was directed to purchase a sealed bottle of Yang R-ALA directly from Defendant[], which the laboratory did." (*Id.* ¶ 29.) On August 6, 2019, the AEGIS laboratory reported that all ten of the Yang R-ALA capsules it tested from this sample were conclusively positive for Ostarine. (*Id.* ¶ 30.)

3

As a result of testing positive for a banned substance, Plaintiff suffered numerous harms. (*Id.* ¶ 31.) Plaintiff was suspended for the first four games of the 2019 regular season; he was advanced "to the next disciplinary state of the Policy until 2021"; he was subject to the "forfeiture of any Forfeitable Salary Allocations on a proportionate weekly basis"; and in order to be reinstated, he would have to be approved by an independent administrator. (*Id.*) Additionally, pursuant to NFL policy, players who test positive for a banned substance are not permitted to use their team's training facility and are prohibited from participating in team meetings. (*Id.*) Because Plaintiff was temporarily barred from the team training facility, he was forced to "pay for his own training out of pocket." (*Id.* ¶ 32.) Plaintiff "also incurred significant . . . legal expense defending himself" through the NFL appellate and arbitration procedure. (*Id.* ¶ 33.) Because there was conclusive evidence of Ostarine in Plaintiff's urine samples, his appeal was ultimately unsuccessful. (*Id.*).

Plaintiff's suspension resulted in him losing income for four games and also becoming "ineligible for player incentives and bonuses that were available to him as a starter and veteran" which may have been guaranteed at kick-off at the first game. (*Id.* ¶ 34.) Plaintiff similarly "lost significant contributions to his retirement and other savings and financial benefits which would have been conferred upon him" had he not been suspended. (*Id.* ¶ 35.) Because Plaintiff's four-week suspension included a bye week, it was effectively extended to a five-week suspension. (*Id.* ¶ 36). Plaintiff further claims that, following his suspension, "his character and integrity have been called into question" and that he "has lost and will continue to lose" speaking engagements and endorsement opportunities as a result. (*Id.* ¶ 38.)

### B.     Procedural History

On November 14, 2019, Defendant removed this matter to this Court from the New Jersey Superior Court, Middlesex County, Law Division. (ECF No. 1.) On December 5, 2019, Defendant moved to dismiss (ECF No. 6) and on December 13, 2019, Plaintiff moved to remand (ECF No. 7.) The Court heard oral argument on July 28, 2020 and placed its decision on the record. (ECF 20.) The Court denied Plaintiff's motion to remand and granted Defendant's motion to dismiss. (ECF No. 21.) The Court found that Counts One through Three of the complaint were subsumed by the New Jersey Products Liability Act ("PLA"), N.J. Stat. Ann. §§ 56:8C-1, *et seq.*, and dismissed those counts with prejudice. (*See id.*) For the same reasons, the Court also dismissed Count Four, to the extent it asserted a claim for breach of implied warranty, with prejudice, and dismissed the remainder of Count Four, to the extent it asserted a claim for breach of express warranty, without prejudice. (*Id.*) Finally, Count Five was also dismissed without prejudice. (*Id.*) On August 6, 2020, Plaintiff filed the present motion for reconsideration.

## II.    LEGAL STANDARD

"The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration." *Morton*, 2011 WL 2975532, at *1 (citing *United States v. Compaction Sys. Corp.,* 88 F. Supp. 2d 339, 345 (D.N.J. 1999)). "Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under [Rule] 59(e), or as a motion for relief from judgment or order under [Rule] 60(b)." *Id.* In the District of New Jersey, Local Civil Rule 7.1 governs motions for reconsideration. *Id.* (citing *Bowers*, 130 F. Supp. 2d at 612). Local Civil Rule 7.1(i) provides that a party seeking reconsideration must file "[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked."

Reconsideration is an extraordinary remedy that is rarely granted. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 506–07 (D.N.J. 2002). There are three grounds for reconsideration: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence that was previously unavailable; or (3) to correct a clear error of law or to prevent manifest injustice. *Id.*

A motion for reconsideration is not an opportunity to raise new matters or arguments that could have been raised before the original decision was made. *See Bowers*, 130 F. Supp. 2d at 612–13. Nor is a motion for reconsideration an opportunity to ask the Court to rethink what it has already thought through. *See Interfaith Cmty. Org.*, 215 F. Supp. 2d at 507. "Rather, the rule permits a reconsideration only when 'dispositive factual matters or controlling decisions of law' were presented to the court but were overlooked." *Id.* (quoting *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992)). "The fact that an issue was not explicitly mentioned by the court does not on its own entail that the court overlooked the matter in its initial consideration." *Morton*, 2011 WL 2975532, at *3.

### III.   THE PARTIES' POSITIONS

#### A.   Plaintiff's Position

Plaintiff seeks reconsideration of the Court's Order, to the extent it dismissed several of Plaintiff's claims with prejudice on the grounds they were subsumed by the PLA. (*See generally* ECF No. 24-1.) Plaintiff argues that the New Jersey Supreme Court's holding in *Sun Chemical Corporation v. Fike Corporation*, No. 082815, 2020 WL 4342658 (N.J. July 29, 2020), "is an intervening change, by way of express clarification, of a controlling law or legal interpretation." (*Id.* at 3.) Plaintiff contends that in *Sun Chemical*, the New Jersey Supreme Court held that "a

CFA[2] claim alleging express or affirmative misrepresentations—deceptive, fraudulent, misleading, and other unconscionable commercial practices—may proceed in separate counts without being subsumed by a PLA claim or claims." (*Id.* at 3–4.) Plaintiff notes that *Sun Chemical* highlights that the CFA and the PLA "are intended to govern different conduct and to provide different remedies for such conduct, finding that there is no direct and unavoidable conflict between" the two statutes. (*Id.* at 4.)

### B. Defendant's Position

In opposition, Defendant contends that Plaintiff is merely "attempting to improperly get a second bit at the proverbial apple" and that *Sun Chemical* is "not a change in the law that can save Plaintiff's properly dismissed claims." (ECF No. 26 at 4.) Defendant argues that because *Sun Chemical* was not published when this Court rendered its decision, the Court did not overlook the ruling and, therefore, reconsideration should be denied on that basis alone. (*Id.* at 4–5.) Additionally, Defendant contends that *Sun Chemical* did not create an intervening change in controlling law because it merely "restates and clarifies under which circumstances CFA and PLA claims may be properly [pleaded] in the same action." (*Id.* at 5.) Because, as Defendant argues, "the heart of Plaintiff's case . . . is essentially a failure to warn claim, grounded in products liability," Plaintiff's claims can only be asserted, if at all, under the PLA. (*Id.*) The Court, therefore properly found the claims subsumed by the PLA (*Id.*)

### IV. DECISION

As a preliminary matter, the Court rejects Defendant's argument that Plaintiff has not identified a potentially viable basis for reconsideration. Defendant argues that, "at the time this Court issued its ruling from the bench . . . the Court had not 'overlooked' any controlling decisions

---

[2] The New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. §§ 2A:58C-1, *et seq.*

7

of law in reaching its decision. Accordingly, because the Court did not 'overloook' *Sun Chem[ical]*, . . . Plaintiff's motion for reconsideration should be denied on this basis alone." (ECF No. 26 at 4–5.) Defendant's argument on this point is meritless and a plain misstatement of the law regarding motions for reconsideration. The correction of a clear error of law is only one of the enumerated grounds for reconsideration. Indeed, the Court may grant reconsideration to accommodate an intervening change in controlling law. *See Interfaith Cmty. Org.*, 215 F. Supp. 2d at 506–07. Here, because *Sun Chemical* was published after the Court issued its Order, the Court will evaluate whether it constitutes an intervening change in the controlling law.

In *Sun Chemical*, the New Jersey Supreme Court considered "in response to a question of law certified by the United States Court of Appeals for the Third Circuit . . . whether 'a [CFA] claim [can] be based, in part or exclusively, on a claim that also might be actionable under the [PLA].'" *Sun Chem.*, 2020 WL 4342658, at *3 (second alteration in original). The CFA and the PLA "are remedial statutes that target different wrongs, address distinct types of harm, and provide for divergent remedies." *Id*. Specifically, the PLA "intended to protect users from harm caused by defective products" and "imposes liability upon the manufacturer or seller for a product's 'manufacturing defects, warning defects, and design defects.'" *Id.* at *7. Compared to the CFA, the "PLA's reach is more limited." *Id.* at *3. The CFA, on the other hand, "is to be expansively read to proscribe unconscionable business practices." *Id.* Indeed, "[i]n addition to its ever-growing scope, the language of the CFA evinces a clear legislative intent that its provisions be applied broadly" and "[l]ike most remedial legislation, the [CFA] should be construed liberally in favor of consumers." *Id.* at *6 (internal quotations and citations omitted) (third alteration in original). "The measured application of [these] principles ha[ve] led to few, very limited exceptions to the CFA's reach." *Id.* at *7 (citation omitted).

8

Critically, the New Jersey Supreme Court made clear that "nothing about the PLA prohibits a claimant from seeking relief under the CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices in the sale of the product." *Id.* at *9. The court further noted:

> Indeed, the CFA is expressly in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State. Said differently, if a claim is based on deceptive, fraudulent, misleading, and other unconscionable commercial practices, it is not covered by the PLA and may be brought as a separate CFA claim.

*Id.* (internal quotations omitted). They highlighted that "PLA and CFA claims may proceed in separate counts of the same suit, alleging different theories of liability and seeking dissimilar damages." *Id.* "[T]he presumptive application of the CFA is overcome only if 'a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes." *Id.* In sum, the court concluded:

> [A] CFA claim alleging express misrepresentations—deceptive, fraudulent, misleading, and other unconscionable commercial practices—may be brought in the same action as a PLA claim premised upon product manufacturing, warning, or design defects. In other words, the PLA will not bar a CFA claim alleging express or affirmative misrepresentations.

*Id.* at *11.

Here, the Court finds that, upon consideration of the new guidance issued by the New Jersey Supreme Court, the factual allegations of this case present no direct and unavoidable conflict that would preclude Plaintiff from pursing both CFA- and PLA-based claims. Plaintiff alleges he "relied on the representations of Defendant[]" and "on the label of the Yang R-ALA bottle and website description that Yang R-ALA did not contain Ostarine." (ECF No. 1-1 ¶ 17.) Plaintiff also submitted pictures of the Yang R-ALA bottle "to at least two nutritionists who approved his consumption on the condition that the ingredient list was accurate." (*Id.* ¶ 19). The

9

representations of Defendant, including the label on the bottles of Yan R-ALA, however, were not accurate, and subsequent testing revealed that the supplement contained the banned substance Ostarine. Plaintiff's CFA claim, therefore, is alleging express or affirmative misrepresentations. As the New Jersey Supreme Court stated in *Sun Chemical*, "the PLA will not bar a CFA claim alleging express or affirmative misrepresentations." *Sun Chem.*, 2020 WL 4342658, at *11. "[A] CFA claim alleging express misrepresentations—deceptive, fraudulent, misleading, and other unconscionable commercial practices—may be brought in the same action as a PLA claim premised upon product manufacturing, warning, or design defects." Because Plaintiff brings a CFA claim based, at least in part, on alleged express or affirmative misrepresentations made by Defendant, his CFA claims are not subsumed by the PLA. The Court finds that, based on the intervening clarification of law stemming from *Sun Chemical*, the Court's July 29, 2020 Order was in error and must be vacated. Plaintiff's Motion for Reconsideration is therefore **GRANTED**.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Reconsideration is **GRANTED**. The Court's July 29, 2020 Order is **VACATED** as to the dismissal with prejudice of Counts One through Three of Plaintiff's Complaint and as to the dismissal with prejudice of Count Four, to the extent it asserted a claim for breach of implied warranty. The Court will enter an appropriate Order.

**Date: March 30, 2021**                                              */s/Brian R. Martinotti*
                                                                      **HON. BRIAN R. MARTINOTTI**
                                                                      **UNITED STATES DISTRICT JUDGE**