**EXHIBIT A**

**CERTIFICATION OF BRANDON COPELAND**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRANDON COPELAND <br>                          Plaintiff, <br>      vs. <br> POLIQUIN GROUP, a business entity, form unknown, POLIQUIN PERFORMANCE CENTER 2 LLC, CAROLEEN KANDEL A/K/A CAROLEEN KANEL A/K/A CAROLEEN JONES, an individual, JAD NUTRITION doing business as XTREME FORMULATIONS, a business entity, form unknown, TOTAL BODY NUTRITION LLC doing business as TBN LABS LLC, WE DO PRIVATE LABEL LLC, MICHIGAN ELITE CONDITIONING FOR ATHLETES LLC A/K/A MECA, JOHN DOES 1-30, ABC CORPORATIONS 1-30 and XYZ PARTNERSHIPS 1-30, unidentified individuals, corporations and partnerships (fictitious designations); <br>                    Defendant(s). | Civ. No. : 1:19-cv-20278-ESK-EAP <br><br><br> **CERTIFICATION OF DAMAGES OF PLAINTIFF BRANDON COPELAND IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** |

**CERTIFICATION OF DAMAGES OF PLAINTIFF BRANDON COPELAND
IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

I, Brandon Copeland, hereby certify under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the Plaintiff in this action. I make this certification in support of my motion for default judgment against Defendant JAD Nutrition L.L.C. d/b/a Xtreme Formulations.

2. In April 2019, while playing for the New York Jets, I tested positive for Ostarine after unknowingly ingesting Yang R-ALA. Discovery has established that JAD Nutrition manufactured the contaminated supplement.

1

3. As a result, I was suspended for four games without pay and suffered significant financial harm.

4. My damages, verified through NFL records, endorsement contracts, receipts, and arbitration costs, are as follows:

A. Lost NFL Compensation (Contractual Entitlements)
– $411,765 — Lost NFL salary (four games)
– $73,530 — Returned signing bonus
– $250,000 — Lost playtime incentive bonus (contractual)
– $78,125 — Lost 46-man roster bonus (contractual)
– $500,000 — Lost sacks-per-game incentive bonus (contractual)
– $228,000 — Lost NFL Retirement Plan contributions
Subtotal: $1,541,420

B. Endorsement and Sponsorship Losses
– $46,500 — Lost endorsement and marketing deals

C. Additional Financial Harm
– $14,425 — Training and lodging expenses during suspension
– $189,582.85 — Lost Player's Performance-Based Pay
– $5,975 — Attorneys' fees incurred appealing NFL suspension
Subtotal: $209,982.85

Total Documented Losses: $1,797,902.85

5. Under the New Jersey Consumer Fraud Act, these damages are subject to trebling, yielding $5,393,708.55.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 6th, 2025

Brandon Copeland
Plaintiff

**EXHIBIT B**

**LABORATORY REPORTS**

(AEGIS and SMRTL test results confirming Ostarine contamination)


B-1: Copeland Sample Test (June 14, 2019) - POSITIVE

B-2: NFLPA Independent Test (August 6, 2019) - POSITIVE

B-3: Defendant's Test (August 28, 2019) - POSITIVE


(Highlighting added by counsel)



**Aegis Sciences Corporation**
515 Great Circle Road
Nashville, TN 37228
(615) 255-2400 fax (615) 255-3030
www.aegislabs.com

## Client Information

**Client:** NFL PA

**Report To:** Todd Flanagan
NFLPA
1133 20th St. NW
Washington, DC  20036

## Sample Information

| | | | |
|---|---|---|---|
| **Donor ID:** 4565789 | | **Specimen Type:** Capsule | |
| **Lab Sample ID:** 4565789 | | **Collected:** | |
| **SSN:** | | **Received:** 5/29/2019 10:04 | |
| **Reason for Test:** Not Given | | **Reported:** 6/14/2019 13:51 | |

## Test(s) Requested

00720          Nonbio Drug Form

| Tested For | Result | Original | Normalized |
|---|---|---|---|
| **Nonbiological** | **POSITIVE** | | |

## Sample Comments

Description of Sample ID 4565789:

Aegis Sciences Corporation received a zip-top bag labeled "YANG R-ALA".  A photograph of the product container was included:

YANG R-ALA

BIOSIGNATURE MODULATION

90 CAPSULES

POLIQUIN GROUP

No lot number or expiration date was available.  The zip-top bag contained 4 white capsules containing white powder.  One of the capsules was cracked and had spilled powder into the zip-top bag.  The contents of 4 capsules were analyzed for ostarine.

Results:

POSITIVE for ostarine at approximately 3.5 ppm

Test result was not verified by analysis of an independently obtained sealed product.

Mass Spectrometric analysis was performed on the supplement submitted for testing. The results on this report are solely applicable to the lot number(s) referenced on the product's packaging (if applicable) submitted for testing. The results from a single container/lot test do not indicate certification, endorsement, or safety of use of this supplement.



**Aegis Sciences Corporation**
515 Great Circle Road
Nashville, TN 37228
(615) 255-2400 fax (615) 255-3030
www.aegislabs.com

## Client Information

**Client:** NFL PA

**Report To:** Todd Flanagan
NFLPA
1133 20th St. NW
Washington, DC  20036

## Sample Information

**Donor ID:** 4565799
**Lab Sample ID:** 4565799
**SSN:**
**Reason for Test:** Not Given

**Specimen Type:** Capsule
**Collected:**
**Received:** 7/9/2019 13:15
**Reported:** 8/6/2019 10:51

## Test(s) Requested

| 00720 | Nonbio Drug Form | | |
| --- | --- | --- | --- |

| Tested For | Result | Original | Normalized |
| --- | --- | --- | --- |
| **Nonbiological** | **POSITIVE** | | |

## Sample Comments

Description of Sample ID 4565799:

Per client request, Aegis Sciences Corporation purchased and received a sealed white plastic bottle labeled:

YANG R-ALA

BIOSIGNATURE MODULATION

90 CAPSULES

POLIQUIN GROUP

C04081910

EXP: 04/21

The bottle contained 90 white capsules containing white powder.  The contents of 10 capsules were analyzed for ostarine.

Results:

POSITIVE for ostarine at a threshold <1 ppm

Test results of this independently obtained product are consistent with Sample ID 4565789 originally submitted by the client.

Mass Spectrometric analysis was performed on the supplement submitted for testing. The results on this report are solely applicable to the lot number(s) referenced on the product's packaging (if applicable) submitted for testing. The results from a single container/lot test do not indicate certification, endorsement, or safety of use of this supplement.





**Aegis Sciences Corporation**
515 Great Circle Road
Nashville, TN 37228
(615) 255-2400 fax (615) 255-3030
www.aegislabs.com

## Client Information

**Client:** NFL PA
**Report To:** Todd Flanagan
NFLPA
1133 20th St. NW
Washington, DC  20036

## Sample Information

| | |
|---|---|
| **Donor ID:** 4565799 | **Specimen Type:** Capsule |
| **Lab Sample ID:** 4565799 | **Collected:** |
| **SSN:** | **Received:** 7/9/2019 13:15 |
| **Reason for Test:** Not Given | **Reported:** 8/6/2019 10:51 |

## Sample Comments



**BANNED SUBSTANCES CONTROL GROUP**

CERTIFIED DRUG FREE®
CERTIFIED QUALITY™
CERTIFIED GMP™

11301 W. Olympic Blvd
Suite 685
Los Angeles, CA 90064
(800) 920-6605
www.bscg.org

**CONFIDENTIAL**

August 28, 2019

Poliquin Performance Center 2 LLC
Caroleen Jones
P.O. Box 233
Barrington, RI 20806
Sent Via Email: caroleen.jones@poliquingroup.com

### ANALYTICAL REPORT 1908189

**Reason for Analysis:** Banned Substances Control Group (BSCG) was asked to perform testing on an item for the presence of ostarine.

**Receiving:** On August 16, 2019, a package was received intact with no signs of tampering at our ISO 17025 accredited laboratory partner. The package contained one item identified as follows:

Yang R-ALA - C04081910

**Analytical Method:** Samples of the item were extracted and analyzed for ostarine according to in-house methods for nutritional supplements. Samples of the item were also overspiked with ostarine and analyzed along with the other samples. Expected detection levels are in the 2-500 ng/g range but they can vary depending on the items analyzed. Analysis was done by high performance liquid chromatography / triple quadrupole mass spectrometry (HPLC/MS/MS).

**Analytical Findings:** Ostarine was identified in the item at 4.5 ng/g.

Please contact us with any questions.

Sincerely,

Oliver Catlin
President

*Disclaimer: Analytical results apply only to the samples tested. BSCG makes no claims or representations about the items(s) and does not certify, endorse, make statements about the efficacy or safety, or make any other assurances regarding the items(s). Results are for internal use only not for marketing purposes and do not indicate certification of items tested. This report may not be posted or used publicly in any fashion.*

**EXHIBIT C**

**DISCOVERY RESPONSES OF CAROLEEN KANDEL**


C-1: Interrogatory Responses (Questions 2-3, and 9)

C-2: Excerpted Deposition Testimony (April 29, 2024)


(Highlighting added by counsel; certain information redacted pursuant to settlement agreement)

Dimitri Teresh
**THE KILLIAN FIRM, P.C.**
555 Route 1 South
Suite 420
Iselin, NJ 08830
732-912-2100
dteresh@tkfpc.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRANDON COPELAND,<br><br>*Plaintiff,*<br><br>v.<br><br>POLIQUIN GROUP, a business entity, form unknown, POLIQUIN PERFORMANCE CENTER 2 LLC, CAROLEEN KANDEL A/K/A CAROLEEN KANEL A/K/A CAROLEEN JONES, an individual, JOHN DOES 1-30, ABC CORPORATIONS 1-30 and XYZ PARTNERSHIPS 1-30, unidentified individuals, corporations and partnerships (fictitious designations);<br><br>*Defendants.* | Civil Action No.: 3:19-cv-20278<br><br><br><br>**DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

TO: Emily Declercq, Esq.
    **DECLERCQ LAW FIRM, PLLC**
    317 Pennington-Titusville Rd.
    Pennington, NJ 08534

CC: Edward Blackmon, Jr., Esq.
    Barbara M. Blackmon, Esq
    Bradford J. Blackmon, Esq.
    **BLACKMON & BLACKMON, PLLC**
    907 W Peace St.
    Canton, MS 39046

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:** Identify all person(s) who provided information responsive to the questions posed in these discovery requests, including name, address, and telephone number and job title.

**ANSWER:** Subject to the general objections delineated above, Defendants respond as follows: Caroleen Jones, c/o Eugene Killian, 555 Route 1, Ste. 420, Iselin, NJ 08830, CEO of Defendant Poliquin Group, (732) 912-2100.

**INTERROGATORY NO. 2:** Regarding the subject Yang R-ALA, Lot Numbers C04081910 and C12111810, please identify and/or state with specificity:

    a.   The trade name that the subject Yang R-ALA was sold as;

    b.   The date the subject Yang R-ALA was produced;

    c.   Identify the mixing operators for the manufacturer and/or production run of the

    d.   subject Yang R-ALA;

    e.   Identify the Mixer Line, that the subject Yang R-ALA was manufactured on and the exact location the product was manufactured in;

    f.   Identify which Batch Mixer, Mixer Line and/or such other vessel was/were used in the manufacture of the subject Yang R-ALA;

    g.   Was the subject Yang R-ALA, or such other numeral, and/or letter identification assigned to the subject Yang R-ALA, and if so, list all such identifying information;

    h.   Was the subject Yang R-ALA bagged; and

    i.   Identify each and/or every product, ingredient, raw material, and/or government

agency regulated ingredient that was placed in any Batch Mixer, Mixer Line, or

such other vessel that was used for the manufacture of the subject Yang R-ALA,

for three months prior to the manufacture of the subject Yang R-ALA Lot

Numbers C04081910 and C12111810.

**ANSWER:** Subject to the general objections delineated above, a. Yang R-ALA.  With regards to

items b-h, to the extent the information is available to the undersigned, said information is provided

as P001-P056. Additional information may be available from the contract manufacturer, JAD

Nutrition dba Xtreme Formulations (See P054-P056).

**INTERROGATORY NO. 3:** Please identify each and every manufacturer, supplier, contractor,

subcontractor, involved in any way in the manufacturing, mixing and distribution of the Yang R-

ALA supplement.

**ANSWER:** Subject to the general objections delineated above, JAD Nutrition dba Xtreme

Formulations (See P054-P056).

**INTERROGATORY NO. 4:** Please list all ingredients in the subject Yang R-ALA supplement

that were FDA approved prior to its manufacture/formulation.

**ANSWER:**  Defendants object to this interrogatory, on the ground that it is premature, as

discovery is at a very early stage in this action. Subject to this objection and the general objections

delineated above, Defendants respond as follows: to the extent known to Defendants, none of the

**INTERROGATORY NO. 8:**  If you believe Brandon Copeland was negligent and/or using the subject supplement in a manner for which it was not intended, designed, or recommended to be used at the time of use, please state in complete detail the way(s) in which you contend such use was negligent and/or not an intended use and/or a misuse of the subject supplement, how such negligence or use contributed to the ingestion of the substance Ostarine, and identify all persons with knowledge thereof.

**ANSWER:**  Defendants object to this interrogatory, on the ground that it is premature, as discovery is at a very early stage in this action. Defendants further object to the interrogatory on the grounds that it calls for speculation.  Subject to these objections and the general objections delineated above, Defendants respond as follows:  Defendants are not in a position to respond to this interrogatory prior to reviewing Plaintiff's responses to interrogatories, depositions, and corresponding with appropriate experts. Defendants reserve the right to supplement this response as discovery in this matter continues.

**INTERROGATORY   NO.   9:**  Please   state   in   detail,   including   pertinent   dates,   the manufacturing/developmental history of the subject supplement Yang R-ALA and identify all persons who played any role in the manufacturing/development and/or testing/quality assurance aspects or representations associated with Yang R-ALA.

**ANSWER:**  Defendants object to this interrogatory, on the ground that it is premature, as discovery is at a very early stage in this action. Defendants further object to the interrogatory on the grounds that it is grossly overbroad, vague, and ambiguous.  Subject to these objections and the general objections delineated above, Defendants respond as follows:  Defendants are without

basis of knowledge regarding the ingredients underlying the formulation of the Yang-R-ALA product.  To the extent information is available, that information is likely in the possession of JAD Nutrition dba Xtreme Formulations.  However, also see P054-P056.

**INTERROGATORY NO. 10:** Identify and describe each and every performance problem, failure, or contamination or difficulty with the supplement Yang R-ALA, including the ram materials and components of the supplement, of which you are aware, including, but not limited to:

a. Identifying each performance standard, goal or objective that was implicated by such problem, failure, contamination or difficulty.

b. Identifying each of your employees with personal knowledge of such problem, failure, contamination or difficulty.

c. Identifying each and every document reflecting or evidencing your knowledge of such problem, failure, contamination or difficulty.

d. Identifying the manner and frequency of your testing for quality and label claim assurance/accuracy and who was responsible for carrying testing out.

**ANSWER:** Defendants object to this interrogatory, on the ground that it is premature, as discovery is at a very early stage in this action. Defendants further object to the interrogatory on the grounds that it is grossly overbroad, vague, and ambiguous.  Subject to these objections and the general

Exhibit C-2 Excerpted Deposition Testimony (April 29, 2024)
(Highlighting added by counsel; certain information redacted pursuant to settlement agreement)



*Copeland v Poliquin Group, et al.*

*Caroleen Kandel*
*April 29, 2024*

*FrontinoReporting, LLC*
*a Woman-Owned Business*
*215 922-2133    215 922-2910 fax*
*www.frontinoreporting.com*

Min-U-Script® with Word Index

45

1    one who sourced the ingredients.

2        Q.   But your company adopted it as its

3    label for its product, correct?

4        A.   Yes, it was put on the label.

5        Q.   By who?

6        A.   JAD.

7        Q.   And who put the label on your bottle?

8        A.   JAD.

9        Q.   Did JAD then sell this product or

10   disseminate it to your customers?

11       A.   No.

12       Q.   Who did that?

13       A.   We did.   I bought bottles from JAD.

14       Q.   And you're the one that distributed

15   the product, correct?

16       A.   Correct.

17       Q.   You had an opportunity to review this

18   label before you disseminated it to your

19   customers, correct?

20       A.   Correct.

21       Q.   The company did not take any steps or

22   measures to determine whether or not that

23   representation was true or not, correct?

24       A.   I wasn't involved in what was put on

25   the label at the time.   That would have been Mr.

**FrontinoReporting, LLC**
**www.frontinoreporting.com - (215) 922-2133**
Motion for Default Judgment Page 16 of 31

48



I placed the purchase order with JAD.

20    Q.    And you left it up to them to find someone --

22    A.    Correct.

23    Q.    -- to make the formula?

24    A.    Correct.

25    Q.    I've seen some documents that have

**FrontinoReporting, LLC**
**www.frontinoreporting.com - (215) 922-2133**
Motion for Default Judgment Page 17 of 31



51

1

8          Q.    And you were also a vendor of JAD,

9    correct?

10         A.    No.  I'm not -- I place purchase

11   orders there.  They were my vendor.  I'm not a

12   vendor of them.

13         Q.    What's your definition of a vendor if

14   you can tell me?

15         A.    I purchase something from you.  They

16   didn't purchase anything from me.

17         Q.    They were a supplier; is that what

18   you're saying?

19         A.    Yes, supplier, vendor, correct.

20         Q.    Do you use those terms

21   interchangeably?

22         A.    I usually use vendor.  In this

23   company we refer to them as vendors.

24                   MR. BLACKMON:  Let me have

25   this certificate of analysis marked as the next

**FrontinoReporting, LLC**
**www.frontinoreporting.com - (215) 922-2133**
Motion for Default Judgment Page 18 of 31

58

1    on.  Do you know anything about that?

2         A.    No.

3         Q.    That would be important because you

4    would want to make sure that whoever is making

5    your product is doing it exactly to the formula

6    required, correct?

7         A.    Yes.

8         Q.    And would it be important that the

9    company had good quality control to make sure

10   that nothing other than your formula got into the

11   product, correct?

12        A.    Correct.

13        Q.    And in this case you -- who did you

14   rely on to make sure that that was done?

15        A.    JAD.

21        Q.    Do you know what time frame that was?

22        A.    I can't find it now.  I'll find it

23   for you.

24        Q.    But this was from JAD?

25        A.    Yes.

**FrontinoReporting, LLC**
**www.frontinoreporting.com - (215) 922-2133**
Motion for Default Judgment Page 19 of 31

107

1    about.   I think I do, but it said there was

2    another lot number.

3                        There you go, W.   I'm

4    familiar with 910.   ███████████████████████

     ██████████████████████████████████████████████

     ██  ████████████

7            Q.   You know that the product was tested

8    by -- your company had it tested twice; is that

9    correct, I believe that was with the same batch

10   number, correct?

11           A.     With 910, yes.

12           Q.   And then the NFL Player's

13   Association -- they placed an order and did their

14   own testing?

15           A.     Yes.

16           Q.   So we know that there were at least

17   three tests performed -- well, actually four

18   tests performed?

19           A.     Four, including the baggie.

20           Q.   Do you know which batch, at least one

21   would have a different batch number, would it

22   not?

23           A.     No.

24           Q.   The NFL Players Association purchased

25   theirs independently, didn't they?

**FrontinoReporting, LLC**
**www.frontinoreporting.com - (215) 922-2133**
Motion for Default Judgment Page 20 of 31

133

1         Q.    That is correct, too.

2                         So you have now two, three

3     tests that were positive for a product believed

4     to have been distributed by your company, and you

5     have one test that was negative; is that not

6     correct?

7         A.         That's what you have here, yes, in

8     all different values and all different quantities

9     tested and different ways the product was

10    delivered.    But, yes, you have three tests

11    positive.

12        Q.    Let me have that lab test which is

13    August 6, 2019, let's have it marked as the next

14    exhibit.

15                         — — —

16                    (Exhibit 13, 8/6/2019, Aegis

17    Lab Report, is marked for identification.)

18                         — — —

19                    MS. DECLERCQ:  Marked.

20    BY MR. BLACKMON:

21        Q.    Let's go to the next e-mail which

22    would be Bates 155.  This is an e-mail from Eric?

23        A.    Yes.

24        Q.    Who is Eric by the way?

25        A.    He's one of my -- a friend of mine.

**FrontinoReporting, LLC**
**www.frontinoreporting.com - (215) 922-2133**
Motion for Default Judgment Page 21 of 31

**EXHIBIT D**

**BUSINESS RECORDS**

(JAD Invoice and related correspondence)

(Highlighting added by counsel; certain information redacted pursuant to settlement agreement)

NOTE: Produced in discovery; certain identifying information redacted consistent with settlement obligations. Highlighting added by plaintiff's counsel.

## Dimitri Teresh

| | |
|---|---|
| **From:** | Caroleen Jones <caroleen.jones@poliquingroup.com> |
| **Sent:** | Wednesday, December 1, 2021 1:38 PM |
| **To:** | Dimitri Teresh |
| **Subject:** | FW: Invoice - █████ -201800185 from ████████████ |

Here is the invoice from ████████████ to JAD Nutrition for the
Lot C04081910

---

**From:** ████████████████████ >
**Sent:** Thursday, October 24, 2019 11:40 AM
**To:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Subject:** FW: Invoice - ████ -201800185 from █████████

Here is the PO by email

## Acetyl



XF   Xtreme Formulations <sales@xfmuscle.com>
To  ████

📄 ████Acetyl.pdf
1 MB

Hi ████,

can you please send me a quote for 200 bottles of Acetyl? The ████ is attached.

Thanks

Attila


--
Xtreme Formulations
PO Box 7451
Minneapolis, MN 55407
(630) 444-1800 office

**and INVOICE**

Paid



Customize ▾

# Invoice

# ██ 20190071

**Balance Due**
**$0.00**

**Bill To**

**JAD Nutrition dba. Xtreme Formulations**
451 Taft St. NE
Suite 2
Minneapolis
55413 MN
U.S.A

| | |
|---|---|
| Invoice Date : | 04/04/2019 |
| Terms : | Net 15 |
| Due Date : | 04/19/2019 |
| P.O.# : | Yang |
| Sales person : | ████ |

**Ship To**

2123 Fairmount Ave
St. Paul
55105 MN
U.S.A

| # | Item & Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 1 | Yang R-ALA<br>LOT#C04081910 Exp Date: 04/21 | 210.00 | 11.21 | 2,354.10 |
| | 2 boxes @ 96 units<br>1 box @ 18 units<br>BOX:16x16x10 | | | |

| | |
|---|---|
| Sub Total | 2,354.10 |
| Shipping charge | 76.90 |
| CC Processing Fee 3.5% | 85.09 |
| **Total** | **$2,516.09** |
| Payment Made | (-) 2,516.09 |
| **Balance Due** | **$0.00** |

**Regards & Thanks**

██

Caroleen Jones
CEO



1485 South County Trail, Unit 302 South, East Greenwich, RI 02818
**P** 001.401.885.4070 / **F** 001.401.885.4080 / [www.poliquingroup.com](www.poliquingroup.com)



**Confidentiality Warning:** This e-mail contains information intended only for the use of the individual or entity named above. If the reader of this e-mail is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, any dissemination, publication or copying of this e-mail is strictly prohibited. The sender does not accept any responsibility for any loss, disruption or damage to your data or computer system that may occur while using data contained in, or transmitted with, this e-mail. If you have received this e-mail in error, please immediately notify us by return e-mail. Thank you.

█████████████████

██████████████████

████████████████████████████████████████████

---

**From:** ████████████████████████████
**Sent:** Tuesday, December 21, 2021 2:09 PM
**To:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Subject:** Yang - LOT# C12111810

Hi Caroleen,

Manufacturing date for this product is 12/13/2018

It was only 100 units order and we did not label this product, it was shipped unlabeled to JAD Nutrition

Let me know if you have any questions

Thanks





---

**From:** Caroleen Jones
**Sent:** Friday, December 17, 2021 11:45 AM
**To:** ████████████
**Subject:** Re: Invoice - ████-201800185 from █████████████

Thank you so much!!!

On Dec 17, 2021, at 11:41 AM, ███████████████████████ wrote:

Hi Caroleen,

Sorry for the delayed reply, I will have our office clerk find the record of manufacturing date and then I can provide you with an answer on Monday.

When it was shipped, the shipping platform does not keep record past 2 years.

Let me know if you have any questions

Thanks

██████
██████████



**From:** Caroleen Jones
**Sent:** Friday, December 17, 2021 11:25 AM
**To:** ████████
**Subject:** RE: Invoice - ██████-201800185 from █████████████

Hi ████

Just trying to get a hold of you!

Thank you!

**From:** Caroleen Jones
**Sent:** Tuesday, December 14, 2021 12:21 PM
**To:** ████████████████████
**Subject:** RE: Invoice - ████████-201800185 from ███████████

Hello ████

I spoke to you a couple years ago regarding our product Yang. Since JAD is out of business, I am trying to track down the manufacturing date and expiration date for lot number C12111810.

Can you please let me know – and when it was shipped to JAD?

I couldn't open the pdf that was attached below as it was only a picture.

Thank you so much,
Caroleen

---

**From:** ████████████████████████████
**Sent:** Thursday, October 24, 2019 12:23 PM
**To:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Subject:** RE: Invoice - ████-201800185 from ██████████████

100 units



Regards & Thanks



---

**From:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Sent:** Thursday, October 24, 2019 12:19 PM
**To:** ████████████████████████████
**Subject:** Re: Invoice - ████-201800185 from ██████████████

no no - sorry

i meant we order this product on a regular basis, so i was wondering what was the order before this one and when was that done?

do you have his PO for a quantity before this 210 PO?

---

**From:** ████████████████████████
**Sent:** Thursday, October 24, 2019 12:17 PM
**To:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Subject:** RE: Invoice - ████-201800185 from ██████████████

You have mentioned there is more than 210 bottles that's why I asked

Regards & Thanks



---

**From:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Sent:** Thursday, October 24, 2019 12:16 PM
**To:** █████████████████████
**Subject:** Re: Invoice - ████-201800185 from ██████████████

No - no second manufacturer.

████ sent it  since he had that lot number in his warehouse at the time - just trying to figure out the timing lol - I got it now.

Thank you.

Just waiting on the certificate.

He did give me the COAs that you sent him for the raw materials.

**From:** ████████████████████████████████
**Sent:** Thursday, October 24, 2019 12:13 PM
**To:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Subject:** RE: Invoice - ████-201800185 from ██████████████

Maybe there is a second manufacturer that makes your products? I showed you the PO and Invoice paid for 210 bottles that we have on record.

We did not, you guys are doing your own testing.

Regards & Thanks



---

**From:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Sent:** Thursday, October 24, 2019 12:10 PM
**To:** ████████████████
**Subject:** Re: Invoice - ████-201800185 from ██████████████

P087

You sent the sample to the lab in California for this lot number correct? or did ███ do that?

**From:** ████████████████████████
**Sent:** Thursday, October 24, 2019 11:40 AM
**To:** Caroleen Jones <caroleen.jones@poliquingroup.com>
**Subject:** FW: Invoice - ████-201800185 from ████████████

Here is the PO by email



and INVOICE



Regards & Thanks



**From:** Xtreme Formulations <sales@xfmuscle.com>
**Sent:** Thursday, April 4, 2019 10:35 AM
**To:** ████████████████████
**Subject:** Re: Invoice - ████-201800185 from ████████████

Ok. Please send me the paypal invoice.