<table>
<tr><td>

**VIA ECF ONLY:**
The Honorable Elizabeth A. Pascal
U.S. Magistrate Judge for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

</td><td>

**Emily K. Declercq, Esq**
Emily@declercqlawfirm.com
300 Carnegie Center Dr, Suite 150
Princeton, NJ 08540
(609) 873-3148
www.declercqlawfirm.com
*MEMBER NJ, PA & NY BAR

</td></tr>
</table>

November 19, 2025

Re: Copeland v. Poliquin Performance Center 2, LLC, et. al.
    Case #: 1-19-cv-20278-ESK-EAP (District of New Jersey)

Dear Judge Pascal,

Plaintiff writes to clarify Defendant JAD Nutrition's incomplete response to the Court's October 31, 2025 insurance-production directive.

As a preliminary matter, Defense counsel's letter indicated that the insurer is "likely" to decline coverage and that the carrier's position will be finalized shortly. To date, no formal declination has been provided. To the extent defense counsel's letter suggests that the insurer's position will be issued on or before November 21, Plaintiff respectfully requests that this be confirmed.

Defense counsel has produced only a certified copy of the previously-submitted 2017 Evanston/ Markel policy, which reflects cancellation effective November 30, 2017. No policies, endorsements, renewals, replacements, tail/ERP coverage, excess or umbrella coverage, Additional Insured materials, or affiliated-carrier policies have been produced for the 2018–2019 period or for any period after the 2017 cancellation. Defense counsel has stated only that "no other Markel policies were issued to JAD," but this does not address the broader insurance categories Plaintiff has raised consistently since the outset.

Plaintiff's original requests, made before and during the October 31 conference, were not limited to a single primary Markel policy. They expressly encompassed all excess or umbrella policies; any Additional Insured coverage; any insurance issued to contract manufacturers or suppliers that could afford coverage to JAD; any replacement or successor policies issued by affiliated carriers; and the underwriting materials relied upon by the insurer to evaluate available coverage.

The insurer's own exhibits now confirm that such information exists. Specifically, Defense counsel's responsive letter also references internal insurer communications ("renewed until cancellation," "no policy after X date"), suggesting that underwriting materials are being reviewed but not produced. Plaintiff requests production of the underwriting file in its entirety.

*cc: All counsel of record*

In addition, the renewal application produced this week identifies "Agropur (formerly Main Street Ingredients)" as JAD's contract manufacturer. Insurers solicit this information for the express purpose of determining whether an insured enjoys Additional Insured status under a manufacturer's policy, whether the manufacturer carries separate product-liability coverage that may respond to the same claim, and how risk is allocated. Yet no underwriting file, risk-transfer analysis, Additional Insured documentation, Agropur-related insurance, or affiliated-carrier information has been produced, despite these subjects falling squarely within the coverage categories Plaintiff has sought from the outset.

Plaintiff therefore requests that the Court direct full compliance with the insurance-production directive, including production of the insurer's underwriting materials, all excess or umbrella policies, any Additional Insured coverage, any affiliated-carrier policies, and any insurance applicable to Agropur or other manufacturers identified in the underwriting file.

Plaintiff appreciates the Court's attention to this issue.

          Respectfully submitted,

          **DECLERCQ LAW FIRM PLLC**
          **BLACKMON & BLACKMON PLLC**

                                        <u>*By: /s/ Emily K. Declercq*</u>
                                        Emily K. Declercq
                                        *Attorneys for Plaintiff*

*cc: All counsel of record*