# Exhibit H

Neutral
As of: November 19, 2025 8:58 PM Z

# Emerson Radio Corp. v. Emerson Quiet Kool Co.

United States Court of Appeals for the Third Circuit

July 10, 2023, Submitted Under Third Circuit L.A.R. 34.1(a); July 11, 2023, Filed

No. 22-1809

**Reporter**
2023 U.S. App. LEXIS 17434 *; 2023 WL 4453604

EMERSON RADIO CORPORATION v. EMERSON QUIET KOOL CO. LTD.; HOME EASY LTD., Appellants

**Notice:** NOT PRECEDENTIAL OPINION UNDER THIRD CIRCUIT INTERNAL OPERATING PROCEDURE RULE 5.7. SUCH OPINIONS ARE NOT REGARDED AS PRECEDENTS WHICH BIND THE COURT.

PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History:** Appeal from the United States District Court for the District of Delaware. (D.C. No. 1-20-cv-01652). District Judge: Honorable Leonard P. Stark* [*1] .

Emerson Radio Corp. v. Emerson Quiet Kool Co. & Home Easy Ltd., 2022 U.S. Dist. LEXIS 71420, 2022 WL 1156194 (D. Del., Apr. 19, 2022)

## Core Terms

Defendants', district court, trademark, default, default judgment, entry of default, pretrial, appearance, deadline, culpable conduct, substitute counsel, withdraw, prepare

## Case Summary

**Overview**
HOLDINGS: [1]-In a trademark infringement suit, the district court did not abuse its discretion entering a default judgment in favor of plaintiff because plaintiff would be prejudiced absent the entry based on defendants' repeated failures to meet the pretrial deadlines and lack of legal representation weeks before trial; [2]-The court stated the situation was no different from a case where a defendant fails to appear at trial, which routinely results in a default upheld on appeal.

**Outcome**
Judgment affirmed.

## LexisNexis® Headnotes

Civil Procedure > ... > Preclusion of Judgments > Estoppel > Judicial Estoppel

**HN1** Estoppel, Judicial Estoppel

Judicial estoppel prevents parties from taking different positions on matters in litigation to gain advantage. However, judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

---

* The Honorable Leonard P. Stark, United States Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(b).

Holly Johnston

HN2 **Standards of Review, Abuse of Discretion**

The appellate court reviews the District Court's entry of a default judgment for an abuse of discretion. A district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

Civil Procedure > ... > Default & Default Judgments > Entry of Default > Failure to Pursue Cause

HN3 **Default & Default Judgments, Default Judgments**

In determining whether to enter default judgment, a district court must consider (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. Because the appellate court prefers to decide cases on their merit, we do not favor entry of defaults or default judgments, and require doubtful cases to be resolved in favor of the party moving to set aside the default judgment.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

HN4 **Default & Default Judgments, Default Judgments**

A district court need not find that all three factors are satisfied to enter default judgment. It is not an abuse of discretion to enter default against a party who has callously disregarded repeated notices of a judicial proceeding, even though the party has a meritorious defense.

Civil Procedure > ... > Injunctions > Grounds for Injunctions > Irreparable Harm

HN5 **Grounds for Injunctions, Irreparable Harm**

Prejudice is not limited to irremediable or irreparable harm, but also includes the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy. A party's failure to attend or to present all of its evidence at the final pretrial conference prejudices the opposing party in their trial preparations.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

Civil Procedure > ... > Default & Default Judgments > Default Judgments > Entry of Default Judgments

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Relief From Default

HN6 **Default & Default Judgments, Default Judgments**

Despite this distinction, several of the factors from the test, such as prejudice, mirror the factors considered for entry of default judgment under *Fed. R. Civ. P. 55*.

Civil Procedure > ... > Pretrial Judgments > Default & Default Judgments > Default Judgments

HN7 **Default & Default Judgments, Default Judgments**

When considering a default, the standard for culpable conduct is the willfulness or bad faith of a non-responding defendant. This requires more than mere negligence, but may encompass reckless disregard for repeated communications from plaintiffs and the court.

Civil Procedure > Dismissal > Involuntary

2023 U.S. App. LEXIS 17434, *1

Dismissals > Failure to Comply

HN8 **Involuntary Dismissals, Failure to Comply**

While consideration of alternative sanctions is part of the test for dismissal under *Fed. R. Civ. P. 41(b)*, it is not a required factor for default under *Fed. R. Civ. P. 55*.

**Counsel:** For EMERSON RADIO CORP, Plaintiff - Appellee: Mark H. Anania, Esq., Stevens & Lee, Lawrenceville, NJ; Bobby Ghajar, Esq., Cooley, Santa Monica, CA; Karl S. Myers, Esq., Stevens & Lee, Philadelphia, PA; Stacey A. Scrivani, Esq., Stevens & Lee, Reading, PA.

For EMERSON QUIET KOOL CO LTD, HOME EASY LTD, Defendants - Appellants: Matthew H. Adler, Esq., Christopher R. Healy, Esq., Kaitlin L. O'Donnell, Esq., Troutman Pepper, Philadelphia, PA; Howard J. Bashman, Esq., Fort Washington, PA; Timothy Devlin, Esq., Clifford C. Henson, Esq., James M. Lennon, Esq., Devlin Law Firm, Wilmington, DE.

**Judges:** Before: SHWARTZ, RESTREPO, and CHUNG, Circuit Judges.

**Opinion by:** SHWARTZ

## Opinion

OPINION[**]

SHWARTZ, Circuit Judge.

Emerson Quiet Kool Co. Ltd ("EQK") and Home Easy Ltd. ("Home Easy") (collectively, "Defendants") appeal the District Court's entry of default judgment in favor of Emerson Radio Corporation ("Emerson") on its trademark infringement claims. Because the District Court did not abuse its discretion in entering default judgment, we will affirm.

I

Emerson, a seller of consumer products, [*2] owns and has continuously used several trademarks, including EMERSON and EMERSON (with a G-Clef design), since the early 1900s. From 1953 to 1980, Emerson's predecessor sold air conditioners under the mark QUIET KOOL by EMERSON RADIO. In 2017, EQK, another seller of consumer appliances, launched a series of air conditioners and dehumidifiers under the trademark EMERSON QUIET KOOL[1] Like Emerson, EQK's goods are low to moderately priced and sold through big box and online retailers. EQK promotes its goods through a website at the domain emersonquietkool.com. Despite being incorporated in 2014, the website stated that EQK was founded in 1949 and was "one of the oldest and well respected brands in the air conditioner industry," and included images of several of Emerson's historical products.[2]

In July 2017, Emerson filed suit against Defendants asserting trademark infringement and false advertising claims under the *Lanham Act*, *Anticybersquatting Consumer Protection Act*, *New Jersey Trademark Act*, and New Jersey common law. It sought cancellation of EQK's trademark registration for EMERSON QUIET KOOL, damages, and a permanent injunction requiring Defendants to, among other things, halt their [*3] use of the Emerson trademarks, trade name, and domain name, transfer the domain name to Emerson, and recall all inventory and promotional material bearing the Emerson trademarks.

After losing their motion to dismiss, Defendants filed their answer late and thereafter repeatedly failed to timely respond to written discovery requests, follow counsel's advice, and pay counsel's fees. Defendants' conduct led its counsel, Weiner Law Group, LLP ("WLG"), to move to withdraw in July 2019. Because Defendants are corporations and cannot represent themselves,[3] the motion requested that the proceedings be stayed for thirty days to allow Defendants to retain new counsel. Emerson opposed the stay, asserting that Defendants had engaged in numerous delay tactics causing Emerson prejudice.

The District Court, recognizing that "[D]efendants' failure to cooperate with their counsel has unreasonably delayed these proceedings," App. 370, ordered Defendants to have substitute counsel enter an appearance by August 20, 2019 or face the entry of default. Defendants failed to meet this deadline, and on

---

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Home Easy provides warranty services for EQK's goods.

[2] EQK removed the information and images relating to Emerson from its website after Emerson sent a cease-and-desist letter and filed this suit but asserted that its "use of every mark and image" was permitted. App. 88.

[3] See *Simbraw, Inc. v. United States, 367 F.2d 373, 374 (3d Cir. 1966)* (holding a corporation must be represented by counsel).

September 10, 2019, the Court issued an order to show cause why default should not be entered. Panitch, Schwarze, [*4] Belisario & Nadel, LLP ("PSBN") then entered an appearance as counsel for Defendants and the order to show cause was vacated.[4]

The parties cross-moved for summary judgment and, as relevant here, the District Court denied Emerson's motion for summary judgment as to its trademark infringement claims and as to Defendants' affirmative defenses of waiver, estoppel, and consent.

Thereafter, by order dated May 4, 2021, the District Court scheduled the final pretrial conference for December 21, 2021, and trial for January 10, 2022. After two joint extension requests on November 23, 2021, PSBN moved to withdraw as counsel, explaining, among other things, that Defendants "refuse[d] to engage [PSBN] on discussions for presenting their case at trial," "repeatedly ignore[d] [PSBN's] advice," and stopped paying PSBN. App. 559-61. Although PSBN did not provide the required fourteen-day written notice of the motion to Defendants, PSBN asserted that the disagreements began in early 2020, that it had informed Defendants of these "fundamental disagreements" in a February 2020 letter, and that it had engaged in "countless" communications with Defendants regarding these issues with no resolution, particularly [*5] in the several weeks leading up to the motion. App. 541-42. Emerson opposed the motion because trial was then only six weeks away, or in the alternative asked the Court to set an immediate deadline for the appearance of new counsel, which would result in default if missed.[5]

On December 8, 2021, the Court (1) granted PSBN's motion to withdraw, (2) ordered that substitute counsel for Defendants enter an appearance no later than December 15, 2021, (3) stated that the "failure to do so will result in entry of default," (4) rescheduled the final pretrial conference for January 13, 2022 and the trial for January 24, 2022, (5) precluded Defendants from serving any motions in limine or from opposing Emerson's motions in limine that were already served, and (6) ordered that Defendants "may not seek any extension of any deadline set out in this Order without the consent of Plaintiff." App. 584.

On December 14, 2021, Defendants requested a thirty-day extension to obtain counsel, stating they had interviewed three law firms but that the firms all required more time to review the court documents and perform conflict checks. Emerson opposed the extension, noting that it would require further trial [*6] delay, and requested the entry of default. On December 16, 2021, the Court denied the extension request, "given that trial [was] approximately five weeks away, as well as Defendants' pattern of failure to timely secure substitute counsel," App. 601, and directed the Clerk of the Court to enter default against Defendants. On December 23, 2021, Emerson moved for entry of default judgment. Defendants failed to respond to the motion by the required deadline.

On January 10, 2022, Devlin Law Firm ("DLF") filed a letter informing the District Court that it had been retained by Defendants and that it was prepared to respond to the motion for default judgment within one week and proceed with the January 24, 2022 trial. The Court then cancelled the pretrial conference and trial, ordered that DLF enter an appearance, and gave DLF until January 21, 2022 to respond to the motion for default judgment. DLF then entered an appearance, the parties briefed the default judgment motion, and the Court held oral argument.

The Court concluded that the relevant factors weighed in favor of entering default judgment, finding (1) Emerson had demonstrated prejudice because Defendants' conduct "render[ed] it impossible [*7] for the Court to conduct the trial on the rescheduled date," and "impeded [Emerson's] ability to prepare a full and complete trial strategy," *Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd., No. 20-1652, 2022 U.S. Dist. LEXIS 71420, 2022 WL 1156194, at \*2 (D. Del. Apr. 19, 2022)*, App. 17-18, and (2) although Defendants had a meritorious defense to Emerson's claims, Defendants' culpable conduct, which included both their inability to obtain substitute counsel and their "pattern of delay and lack of representation" throughout the litigation, weighed in favor of default judgment, *2022 U.S. Dist. LEXIS 71420, [WL] at \*4*. Thus, the Court entered default judgment, awarded Emerson $6.5 million in damages, issued a permanent injunction enjoining Defendants and their related companies from using the EMERSON trademark, and directed the United States Patent and Trademark office to cancel

---

[4] In December 2020, the case was transferred from the District of New Jersey to the District of Delaware.

[5] Emerson timely served Defendants with its pretrial documents, including the proposed joint statement of undisputed facts, statement of contested facts, statement of issues of law, trial exhibit list, motions in limine, and deposition designations. Defendants failed to provide their pretrial documents or respond to these filings and Emerson's meet and confer requests.

Defendant's trademark for EMERSON QUIET KOOL.

Defendants appeal.[6]

II[7]

In determining whether to enter default judgment, a district court must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."[8] *Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000)* (citation omitted). Because we prefer to decide cases on their merit, we do "not favor entry of defaults or default judgments," and "require doubtful cases [*8] to be resolved in favor of the party moving to set aside the default judgment." *United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984)* (quotations and citation omitted).

Although Defendants survived Emerson's summary judgment motion, and thus arguably have a meritorious defense, see *Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008)*; see also *$55,518.05 in U.S. Currency, 728 F.2d at 195* (stating that a defendant has a meritorious defense where "its allegations, if established at trial, would constitute a complete defense" to the action), the District Court did not abuse its discretion in concluding that the prejudice Emerson would suffer and Defendants' culpable conduct outweigh it.

As to prejudice, the District Court appropriately found that Emerson would be prejudiced absent the entry of default judgment. Prejudice "is not limited to 'irremediable' or 'irreparable' harm," but also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Briscoe, 538 F.3d at 259* (citation omitted).[9] A party's failure to attend or to present all of its evidence at the final pretrial conference prejudices the opposing party in their trial preparations. *Id. at 260*; see also *Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 920 (3d Cir. 1992)* (holding plaintiffs were prejudiced because they were "required to expend significant time and costs in attempting to secure responses to [*9] their discovery requests," forced to prepare their pretrial memorandum without key information, and never received the defendants' pretrial memorandum, "further prejudicing their ability to prepare an effective trial strategy"). As the District Court observed, Defendants' repeated failure to meet the pretrial deadlines and lack of representation weeks before trial was no different from a case where a defendant fails to appear at trial and "which routinely

---

[6] Defendants filed emergency motions to stay the injunction pending their appeal in both the District Court and our Court, which were denied. Emerson has since moved for civil contempt based on Defendants' alleged failure to comply with the terms of the injunction. That motion is still pending.

Emerson asserts that Defendants should be estopped from pursuing this appeal because in their motions to stay the injunction, they argued that a failure to stay the injunction would "effectively depriv[e] Defendants of any ability to appeal" because they would "be forced to either seek bankruptcy protection or pursue dissolution." Appellee's Br. at 51 (quoting App. 670, 682, 692). "Judicial estoppel prevents parties from taking different positions on matters in litigation to gain advantage." *Whiting v. Krassner, 391 F.3d 540, 543 (3d Cir. 2004)*. However, "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position," *G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009)*, as amended (Dec. 4, 2009); see also *Whiting, 391 F.3d at 544* (expressing doubt that arguing "for a stay based on the likelihood that [a] claim could be held to be moot is the type of 'position' that should work an estoppel"). Because the Court did not adopt Defendants' position, we decline to bar Defendants' appeal based on judicial estoppel.

[7] The District Court had jurisdiction under *28 U.S.C. §§ 1331*, *1338*, and *1367*. We have jurisdiction under *28 U.S.C. § 1291*.

"We review the District Court's entry of a default judgment for an abuse of discretion." *United States v. $487,825.00 in U.S. Currency, 484 F.3d 662, 664 n.2 (3d Cir. 2007)* (citing *United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)*). "A district court abuses its discretion if it 'bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 248 (3d Cir. 2014)* (quoting *Grider v. Keystone Health Plan Cent. Inc., 580 F.3d 119, 134 (3d Cir. 2009)*).

[8] A district court need not find that all three factors are satisfied to enter default judgment. See, e.g., *Hritz v. Woma Corp., 732 F.2d 1178, 1184 (3d Cir. 2014)* (stating it is not an abuse of discretion to enter default against a party "who has callously disregarded repeated notices of a judicial proceeding," even though the party has a meritorious defense).

[9] *Briscoe* considered the factors for entry of default as a sanction under *Rule 37*, rather than *Rule 55*, and applied the factors laid out in *Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984)*. Despite this distinction, several of the factors from the *Poulis* test, such as prejudice, mirror the factors considered for entry of default judgment under *Rule 55*.

results in a default upheld on appeal." *Emerson Radio Corp., 2022 U.S. Dist. LEXIS 71420, 2022 WL 1156194, at *3* (citing *Hoxworth, 980 F.2d at 918*).

Furthermore, the prejudice to Emerson goes beyond delay in realizing satisfaction on its claim, as Defendants' actions have impeded its "ability to litigate the merits of the case." *2022 U.S. Dist. LEXIS 71420, [WL] at *3*; cf. *Hoxworth, 980 F.2d at 921* ("[T]he prejudice flowing from failure to proceed with a scheduled trial after the case had been pending for more than three years is apparent."). Thus, Emerson would have been prejudiced if default had not been entered.

Moreover, both the prejudice to Emerson and Defendants' default were caused by Defendants' own culpable conduct. The standard for culpable conduct is "the 'willfulness' or 'bad faith' of a non-responding defendant." *Hritz v. Woma Corp., 732 F.2d 1178, 1182 (3d Cir. 1984)*. This requires "more than mere negligence," but may encompass "[r]eckless [*10] disregard for repeated communications from plaintiffs and the court." *Id. at 1183*.

Although Defendants assert that the sole cause of the default was their inability to timely obtain substitute counsel, that inability occurred as "part of a pattern of delay and lack of representation that ha[d] plagued this litigation," *Emerson Radio Corp., 2022 U.S. Dist. LEXIS 71420, 2022 WL 1156194, at *4*, including by failing to timely file their answer and respond to discovery, repeatedly seeking extensions, ignoring orders, disregarding discovery obligations,[10] causing WLG to withdraw because of their unwillingness to follow its advice, missing the thirty-day deadline to substitute WLG with new counsel, engaging in the same uncooperative behavior with PSBN, and missing all deadlines associated with the pretrial order.[11]

As the District Court noted, Defendants' "unwillingness to follow the advice of counsel, participate in the defense of the matter, and honor their financial obligations" caused two law firms to withdraw and "evinces a pattern of willful refusals to participate in this case in good faith." *Id.* Because Defendants' inability to retain counsel was "attributable to Defendants' own conduct," the District Court appropriately discounted "Defendants' eventual efforts to overcome [*11] challenges of their own making," *2022 U.S. Dist. LEXIS 71420, [WL] at *5*, and correctly concluded that Defendants' pattern of behavior reflected willful noncompliance with their court obligations and lack of cooperation with their various counsel. Thus, the District Court did not abuse its discretion in concluding that alternative measures would be insufficient to avoid further prejudice.

In summary, although Defendants have a meritorious defense, the prejudice to Emerson and Defendants' culpable conduct warranted the entry of default judgment.[12]

---

[10] Defendants contest the District Court's characterization of the events, asserting (1) the District Court's seven-day deadline to find new counsel was unreasonable, (2) Defendants tried in good faith to retain new counsel as quickly as possible, (3) DLF offered to keep the January 24, 2022 trial date, and (4) the District Court exaggerated the extent of Defendants' prior delays and noncompliance and the relevance of that conduct to the entry of default.

These arguments are unpersuasive. First, although the Court imposed a seven-day deadline for Defendants to retain new counsel, Defendants were on notice of PSBN's intent to withdraw by November 22, 2022, at the latest, and therefore had at least three weeks to obtain new counsel. Second, even if Defendants had demonstrated a good faith effort to obtain new counsel, this argument ignores the fact that Defendants needed to seek new counsel on the eve of trial only because they refused to cooperate with PSBN in the first place. Third, DLF's offer to proceed to trial on January 24, 2022, was unrealistic because Defendants had already missed the deadline for pretrial disclosures and the pretrial order, which were necessary for the trial to proceed, and at that point, trial was only two weeks away.

[11] Defendants' reliance on *Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167 (2d Cir. 2001)*, is misplaced. In *Pecarsky*, the Court of Appeals for the Second Circuit reversed the entry of default where, following the substantial completion of discovery, defense counsel withdrew, and the defendants failed to obtain new counsel within five days. *Id. at 169-70*. The court concluded that due to the defendants' "repeated contact with the district court and apparent efforts to retain new counsel, [it] cannot say that [the defendants] deliberately chose not to appear." *Id. at 172*. Unlike the Defendants here, the *Pecarsky* defendants did not have a pattern of failing to comply with court deadlines, and the default occurred well before trial. Thus, *Pecarsky* does not demonstrate that the District Court's entry of default was in error.

[12] While consideration of alternative sanctions is part of the test for dismissal under *Rule 41(b)*, see *Poulis, 747 F.2d at 867*, it is not a required factor for default under *Rule 55*, see, e.g., *Hritz, 732 F.2d at 1181*. That said, the District Court here did consider lesser sanctions, for example, precluding Defendants from opposing Emerson's motions in limine, but

2023 U.S. App. LEXIS 17434, *11

III

For the foregoing reasons, we will affirm.

---

**End of Document**

---

concluded that this sanction was "not nearly adequate under the present circumstances." *Emerson Radio Corp., 2022 U.S. Dist. LEXIS 71420, 2022 WL 1156194, at *2*.