# Exhibit L



As of: November 19, 2025 9:13 PM Z

# In re Metformin Mktg. & Sales Prac. Litig.

United States District Court for the District of New Jersey

January 31, 2023, Decided; January 31, 2023, Filed

Civil Action No. 20-2324

**Reporter**
2023 U.S. Dist. LEXIS 244806 *; 2023 WL 11987859

Re: In re Metformin Marketing and Sales Practice Litigation

**Prior History:** In re Metformin Mktg. & Sales Practices Litig., 2020 U.S. Dist. LEXIS 140454, 2020 WL 4530051 (D.N.J., Aug. 6, 2020)

## Core Terms

Pharmacy, Manufacturing, allegations, consumer, Plaintiffs', motion to dismiss, contaminated, warranty, deceptive act, drugs, prescription, notice, personal jurisdiction, unjust enrichment, Defendants', misrepresentation, products, lack of standing, merchantability, preemption, discovery, tracing, agrees, California Law, distributed, incurable, targeted, survive, uncured, facial

**Counsel:** [*1] For JOSEPH BRZOZOWSKI, individually and on behalf of all others similarly situated, Plaintiff: DAVID JOHN STANOCH, LEAD ATTORNEY, KANNER & WHITELEY, LLC, New Orleans, LA USA; JAMES E. CECCHI, LEAD ATTORNEY, CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C., Roseland, NJ USA; RUBEN HONIK, LEAD ATTORNEY, HONIK LAW, Philadelphia, PA USA; YITZCHAK KOPEL, LEAD ATTORNEY, BURSOR & FISHER P.A., New York, NY USA.

For Masao Hendrix, Plaintiff: JAMES E. CECCHI, CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C., Roseland, NJ USA.

For Ohio Carpenters' Health Fund, Plaintiff: MICHELLE CONSTON, SCOTT & SCOTT ATTORNEYS AT LAW LLP, New York, NY USA; JAMES E. CECCHI, CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C., Roseland, NJ USA.

For KRISTEN WINEINGER, on behalf of herself and all others similarly situated, Elaine Wohlmuth, on behalf of herself and all others similarly situated, Michael Hann, on behalf of himself and all others similarly situated; Consolidated from Case No. 2: 23-cv-22902-JKS-MAH, MOHAMMED RAHMAN, Stelios Mantalis, on behalf of himself and all others similarly situated, Plaintiff Consolidateds: ANDREW JOSEPH OBERGFELL, LEAD ATTORNEY, BURSOR & FISHER, P.A., New York, NY USA; JAMES E. CECCHI, LEAD ATTORNEY, [*2] CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C., Roseland, NJ USA; RUBEN HONIK, LEAD ATTORNEY, HONIK LAW, Philadelphia, PA USA.

For Jacqueline Harris, individually and on behalf of all others similarly situated, Plaintiff Consolidated: DAVID JOHN STANOCH, LEAD ATTORNEY, KANNER & WHITELEY, LLC, New Orleans, LA USA; JAMES E. CECCHI, LEAD ATTORNEY, CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C., Roseland, NJ USA; RUBEN HONIK, LEAD ATTORNEY, HONIK LAW, Philadelphia, PA USA.

For MSP Recovery Claims, Series LLC, a Delaware entity, Plaintiff Consolidated: JAMES E. CECCHI, LEAD ATTORNEY, CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C., Roseland, NJ USA; RUBEN HONIK, LEAD ATTORNEY, HONIK LAW, Philadelphia, PA USA.

For County of Monmouth, Plaintiff Consolidated: JAMES E. CECCHI, CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C., Roseland, NJ USA.

For Actavis Pharma, Inc., Actavis, LLC, Teva Pharmaceuticals USA Inc, Defendants: AARON VAN NOSTRAND, LEAD ATTORNEY, GREENBERG TRAURIG LLP, Florham Park, NJ USA; CARLA ROSE KARP, LEAD ATTORNEY, GREENBERG TRAURIG, LLP, Florham Park, NY USA; NILDA ISIDRO, LEAD ATTORNEY, GREENBERG TRAURIG, P.A, New York, NY USA; VICTORIA DAVIS LOCKARD, LEAD ATTORNEY, COUNSEL NOT ADMITTED TO USDC-NJ [*3] BAR, Greenberg Traurig Llp 3333 Piedmont Road, Ne Suite USA; CHRISTINE INTROMASSO GANNON, LIZA M. WALSH, SELINA MIRIAM ELLIS, WALSH PIZZI O'REILLY FALANGA LLP, Three

Holly Johnston

Gateway Center 100 Mulberry Street 15th Floor, Newark, NJ USA; JESSICA K. FORMICHELLA, WALSH PIZZI O'REILLY FALANGA LLP, Newark, NJ USA.

For Teva Pharmaceutical Industries, Ltd., Defendant: AARON VAN NOSTRAND, LEAD ATTORNEY, GREENBERG TRAURIG LLP, Florham Park, NJ USA; CHRISTINE INTROMASSO GANNON, WALSH PIZZI O'REILLY FALANGA LLP, Three Gateway Center 100 Mulberry Street 15th Floor, Newark, NJ USA.

For CVS Health Corporation, Defendant: NADINE S. KOHANE, LEAD ATTORNEY, BARNES & THORNBURG LLP, New York, NY USA; REGINA SARA ELIZABETH MURPHY, LEAD ATTORNEY, BARNES & THORNBURG, Wilmington, DE USA.

For AvKARE, INC., Defendant: REBEKAH R. CONROY, LEAD ATTORNEY, STONE CONROY LLC, Florham Park, NJ USA; RONNI E. FUCHS, LEAD ATTORNEY, MELISSA ANNE CHUDEREWICZ, TROUTMAN PEPPER HAMILTON SANDERS LLP, Princeton, NJ USA.

For Amneal Pharmaceuticals, Inc., Defendant: GAVIN J. ROONEY, LEAD ATTORNEY, LOWENSTEIN SANDLER LLP, Roseland, NJ USA; REBEKAH R. CONROY, LEAD ATTORNEY, STONE CONROY LLC, Florham Park, NJ USA; RONNI E. FUCHS, LEAD ATTORNEY, [*4] MELISSA ANNE CHUDEREWICZ, TROUTMAN PEPPER HAMILTON SANDERS LLP, Princeton, NJ USA.

For Walgreens Boots Alliance, Inc., Defendant: NADINE S. KOHANE, LEAD ATTORNEY, BARNES & THORNBURG LLP, New York, NY USA; REGINA SARA ELIZABETH MURPHY, BARNES & THORNBURG, Wilmington, DE USA.

For Walmart Stores, Inc., Defendant: BRIAN MICHAEL LANDS, LEAD ATTORNEY, Shook Hardy & Bacon, Philadelphia, PA USA; KASANDRA ROGIERS, LEAD ATTORNEY, LAW OFFICES OF K.A. RAMES, P.C., Christiansted, VI USA; JEREMY ALEXANDER GUNN, BASS, BERRY & SIMS, Nashville, TN USA.

For Granules USA, Inc., Defendant: ASHER A BLOCK, LEAD ATTORNEY, ANDREW F. ALBERO, Lewis Brisbois Bisgaard & Smith, Wayne, PA USA; MEGAN E. GROSSMAN, LEAD ATTORNEY, Lewis Brisbois Biasgaard & Smith, Wayne, PA USA; WALTER H. SWAYZE, III, LEAD ATTORNEY, Lewis Brisbois Biasgaard & Smith LLP, Wayne, PA USA.

For Granules Pharmaceuticals, Inc., HERITAGE PHARMACEUTICALS, INC., doing business as AVET PHARMACEUTICALS INC., Defendant Consolidateds:

ASHER A BLOCK, LEAD ATTORNEY, ANDREW F. ALBERO, Lewis Brisbois Bisgaard & Smith, Wayne, PA USA; MEGAN E. GROSSMAN, LEAD ATTORNEY, Lewis Brisbois Biasgaard & Smith, Wayne, PA USA; WALTER H. SWAYZE, III, LEAD ATTORNEY, Lewis [*5] Brisbois Biasgaard & Smith LLP, Wayne, PA USA.

For AUROBINDO PHARMA USA, INC., AUROLIFE PHARMA, LLC, Defendant Consolidateds: Paul Joseph Cosgrove, LEAD ATTORNEY, UB Greensfelder LLP, Cincinnati, OH USA.

For HERITAGE PHARMACEUTICALS, INC., Defendant Consolidated: MEGAN E. GROSSMAN, LEAD ATTORNEY, Lewis Brisbois Biasgaard & Smith, Wayne, PA USA; WALTER H. SWAYZE, III, LEAD ATTORNEY, Lewis Brisbois Biasgaard & Smith LLP, Wayne, PA USA.

For Rite-Aid Corporation, Defendant Consolidated: NADINE S. KOHANE, LEAD ATTORNEY, BARNES & THORNBURG LLP, New York, NY USA; REGINA SARA ELIZABETH MURPHY, BARNES & THORNBURG, Wilmington, DE USA.

For Emcure Pharmaceuticals, Defendant Consolidated: ASHER A BLOCK, LEAD ATTORNEY, Lewis Brisbois Bisgaard & Smith, Wayne, PA USA.

For Amneal Pharmaceuticals LLC, Defendant Consolidated: GAVIN J. ROONEY, LEAD ATTORNEY, LOWENSTEIN SANDLER LLP, Roseland, NJ USA; REBEKAH R. CONROY, LEAD ATTORNEY, STONE CONROY LLC, Florham Park, NJ USA; RONNI E. FUCHS, LEAD ATTORNEY, MELISSA ANNE CHUDEREWICZ, TROUTMAN PEPPER HAMILTON SANDERS LLP, Princeton, NJ USA.

For ASCEND LABORATORIES, LLC, Defendant Consolidated: KEVIN M. CAPUZZI, LEAD ATTORNEY, BENESCH FRIEDLANDER COPLAN & ARONOFF LLP, [*6] Hackensack, NJ USA.

For Amneal Pharmaceuticals of New York, LLC, Consolidated from Case No. 2: 23-cv-22902-JKS-MAH, Defendant Consolidated: MELISSA ANNE CHUDEREWICZ, TROUTMAN PEPPER HAMILTON SANDERS LLP, Princeton, NJ USA.

**Judges:** MADELINE COX ARLEO, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MADELINE COX ARLEO

## Opinion

Case 1:19-cv-20278-ESK-EAP   Document 225-14   Filed 11/21/25   Page 4 of 13 PageID: 1148

Page 3 of 12
2023 U.S. Dist. LEXIS 244806, *6

## LETTER ORDER

Dear Litigants:

Before the Court are Motions to Dismiss the Second Amended Complaint ("SAC"), ECF No. 165, brought by: (1) the Manufacturer Defendants,[1] ECF No. 184; and (2) the Pharmacy Defendants,[2] ECF No. 185. Plaintiffs[3] oppose both Motions. ECF No. 203. For the reasons explained below, each Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[4]

---

[1] The Manufacturer Defendants are Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Actavis Pharma, Inc., and Actavis, LLC ("Teva/Actavis Entities"); Emcure Pharmaceuticals Ltd., Heritage Pharmaceuticals Inc. d/b/a Avet Pharmaceuticals, Inc., Granules USA, Inc., and Granules Pharmaceuticals, Inc. ("Emcure/Avet/Granules Entities"); Amneal Pharmaceuticals, Inc., Amneal Pharmaceuticals LLC, and AvKARE, Inc. ("Amneal Entities"); Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma, LLC ("Aurobindo Entities"); and Alkem Laboratories Ltd., and Ascend Laboratories, LLC ("Alkem/Ascend Entities").

[2] The Pharmacy Defendants are CVS Health Corporation, Rite-Aid Corporation, Walgreens Boot Alliance, Inc., and Walmart Stores, Inc.

[3] There are eight proposed Class Representative Plaintiffs in the instant action. First, eight Plaintiffs seek to represent the interests of consumers who purchased Defendants' metformin-containing drugs ("MCDs") (the "Consumer Plaintiffs"): Joseph Brzozowski and Jacqueline Harris (citizens and residents of New Jersey), Michael Hann, Mohammad Rahman, Elaine Wohlmuth, and Masao Hendrix (citizens and residents of California), Stelios Mantalis (citizen and resident of New York), and Kristin Wineinger (citizen and resident of Indiana). Second, one Plaintiff, MSP Recover Claims, Series LLC ("MSPRC"), seeks to represent the interests of third-party payors ("TPPs") who made co-payments for Defendants' MCDs.

[4] These facts are principally drawn from the Second Amended Complaint ("SAC"), ECF No. 165, and the exhibits attached thereto. The Court discussed the background in its Orders dated May 20, 2021 (the "May 2021 Order"), ECF No. 124, and March 30, 2022 ("March 2022 Order"), ECF No. 157, thus this Order discusses the facts only to the extent necessary to resolve the instant Motions.

This putative class action arises out of the allegedly adulterated, misbranded, and/or unapproved manufacturing, sale, and distribution of metformin-containing drugs ("MCDs"). See generally SAC. MCDs are commonly used in the treatment and management of type 2 diabetes. Id. ¶ 2. Defendants allegedly manufactured, distributed, and/or sold MCDs that were contaminated with a probable human carcinogen known as N-nitrosodimethylamine ("NDMA"), id. ¶¶ 8-11. Plaintiffs are either consumers who purchased MCDs or MSPRC, which seeks to represent [*7] the interests of third-party payors ("TPPs") who made co-payments for Defendants' MCDs. Id. ¶¶ 16-24, 25-32.

On March 3, 2020, Plaintiffs filed their initial Complaint, ECF No. 1, which they subsequently amended on July 6, 2020, ECF No. 58. On May 20, 2021, the Court dismissed the Amended Complaint for lack of standing. Then Plaintiffs filed the First Amended Complaint ("FAC") on June 21, 2021, ECF No. 128, which the Court partially dismissed on March 30, 2022, Opinion, ECF No. 156 ("March 2022 Order"). The Court dismissed the Consumer Plaintiffs' claims in the FAC again for lack of standing without prejudice. Id. The Court dismissed certain of the TPP Plaintiffs' claims for failure to state a claim[5] and dismissed claims against foreign defendants[6] for lack of personal jurisdiction. Id.

The Plaintiffs filed the operative SAC on April 29, 2022. The SAC asserts fifteen causes of action against Defendants: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) fraud; (4) negligent misrepresentation; (5) violation of state consumer protection laws; (6) unjust enrichment; (7) negligence; (8) negligence per se; (9) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.; (10) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.; (11) violation [*8] of New York General Business Law § 350; (12) violation of to the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1, et seq.; (13-14) violation of New York General Business Law §§ 349, 350; and (15) New Jersey

---

[5] Each of MSPRC's claims dismissed by the Court in the March 2022 Order were dismissed without prejudice. March 2022 Order at 42.

[6] The Foreign Defendants are Teva Pharmaceutical Industries Ltd. ("Teva Industries"); Emcure Pharmaceuticals Ltd. ("Emcure"); Aurobindo Pharma Ltd. ("Aurobindo"); and Alkem Laboratories Ltd. ("Alkem").

Consumer Fraud Act, N.J. Stat. §§ 56:8-1, et seq.[7] SAC ¶¶ 395-686. The instant Motions followed.

## II. LEGAL STANDARD

### 1. Motion to Dismiss Under Rule 12(b)(2)

To survive a Rule 12(b)(2) motion to dismiss, Plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction" over the Defendant. Fatouros v. Lambrakis, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citation omitted). Plaintiff must make "a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Plaintiff may not rely on "the bare pleadings alone," but instead must establish its "jurisdictional facts through sworn affidavits or other competent evidence." Id. at 101 n.6 (internal quotation marks and citation omitted). If Plaintiff meets its burden, then Defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation and quotation marks omitted).

### 2. Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1). See Bellentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). Under Rule 12(b)(1), a plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In resolving a Rule 12(b)(1) motion, a court first determines whether the motion presents [*9] a "facial" or "factual" attack. See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," id. at 358, and "does not dispute the facts alleged in the complaint," Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A court reviewing a facial attack must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Constitution Party of Pa., 757 F.3d at 358. Here, Defendants' motions to dismiss for lack of standing present facial attacks because they challenge Plaintiffs' standing to bring this lawsuit according to the pleaded facts. See Mfr. Def. Mem. at 13-22, ECF No. 132.1; Pharmacy Def. Mem. at 4-9, ECF No. 133.1. The Court thus accepts the pleaded facts as they relate to Plaintiffs' standing as true and draws all reasonable inferences in Plaintiffs' favor. See Constitution Party of Pa., 757 F.3d at 358

### 3. Motion to Dismiss Under Rule 12(b)(6)

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive a motion to dismiss, the claims must be facially [*10] plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## III. ANALYSIS

### 1. Personal Jurisdiction[8]

The Foreign Defendants argue that the Court should dismiss the claims against them because the SAC failed to correct the personal jurisdiction deficiencies the Court identified in its March 2022 Order. See Mfr. Def. Mem. at 13-19, ECF No. 184. Plaintiffs counter that the SAC alleges facts indicating that the Foreign Defendants

---

[7] The SAC asserts fifteen counts on behalf of the Consumer Plaintiffs against all Defendants, and fifteen counts on behalf of MSPRC against only the Manufacturer Defendants. SAC ¶¶ 342-570.

[8] The Foreign Defendants' service of process arguments are moot, as each appears to have been properly served. See October 2022 Order, ECF. No. 229; Certificates of Service, ECF Nos. 226, 232, 234.

have purposely directed their activity at New Jersey.[9] See Pl. Opp. at 81-91, ECF No. 203. In the alternative, Plaintiffs request jurisdictional discovery to support their allegations. See Pl. Opp. at 91-92. The Court holds that Plaintiff has failed to sufficiently allege personal jurisdiction over the Foreign Defendants but should be permitted jurisdictional discovery.

For the Court to exercise specific jurisdiction, Plaintiffs must show that (1) the Foreign Defendants "deliberate[ly] targeted" New Jersey and (2) and that the claims against [*11] the Foreign Defendants "arise out of or relate to" those targeting actions. O'Connor v. Sandy Lane Hotel, Ltd., 496 F. 3d 312, 317-18, 323 (3d. Cir. 2007). While physical entrance into New Jersey is not required, "the forum contacts of a subsidiary corporation will not be imputed to a parent corporation for jurisdictional purposes without a showing of something more than mere ownership." Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004).

Plaintiffs argue that the Foreign Defendants have deliberately targeted New Jersey through their actions abroad, which sought to distribute MCDs in New Jersey through their U.S. subsidiaries. Pl. Opp. at 82-89. The SAC specifically alleges that each Foreign Defendant directly controlled at least procurement of manufacturing materials[10] and compliance with FDA regulations to ensure their products could be distributed in the United States.[11] The SAC also alleges, upon information and belief, that the Foreign Defendants coordinated responses about MCDs to the FDA, id., and lists FDA investigations into the manufacturing standards of facilities run by subsidiaries of the Foreign Defendants. SAC ¶¶ 184-86, 188-91, 202-19, 240-50, 256-273.

These allegations suggest that the Foreign Defendants played key roles in the manufacture of their pharmaceutical products generally, and in ensuring [*12] compliance with FDA regulations so that those products could be distributed in the United States. However, these allegations do not establish that the Foreign Defendants were specifically involved in the manufacture and/or distribution of the MCDs in New Jersey.[12] The targeted conduct of the Foreign Defendants needs to be closely related to the Plaintiff's claim. O'Connor, 496 F. 3d at 423 (Courts applying the relatedness requirement "must keep the jurisdictional exposure that results from [conduct targeted at the forum] closely tailored to that [conduct]."). The Plaintiffs have therefore not yet carried their burden to demonstrate personal jurisdiction over the Foreign Defendants.

The Court can assist the plaintiff in proving jurisdiction "by allowing jurisdictional discovery" where appropriate. Kirkwood v. Brenntag N. Am., Inc., No. 19-14947, 2020 U.S. Dist. LEXIS 55104, 2020 WL 1516974 (D.N.J. Mar. 30, 2020) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)). At the pleading stage, a plaintiff need only present "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum state,' such that [its] claim is not clearly frivolous." Id. (quoting Toys "R" Us, 318 F.3d at 456). A grant of jurisdictional discovery lies within a district court's discretion, guided as always by the relevant legal standards. SoftwareArt Corp. v. Satyajit Gopalakrishnan, No. 07-4755, 2008 U.S. Dist. LEXIS 55708, 2008 WL 2876395 (D.N.J. July 22, 2008).

The [*13] Court is satisfied that the Plaintiffs have particularly pled sufficient facts to set forth a nonfrivolous claim of personal jurisdiction over the Foreign Defendants. In response to any renewed motion, Plaintiffs shall demonstrate how the Foreign Defendants directed their conduct related to manufacturing MCDs at New Jersey. The Court denies the Motion without prejudice and permits the Foreign Defendants to renew their objections following jurisdictional discovery.

---

[9] Plaintiff does not argue that the Foreign Defendants are subject to the Court's general jurisdiction.

[10] The SAC includes allegations of Teva Industries, Emcure, Aurobindo, and Alkem maintaining procurement departments for all of their manufacturing facilities. SAC ¶¶ 181, 197, 236, 253.

[11] The SAC alleges that Teva Industries, Emcure, Aurobindo, and Alkem maintained global quality and regulatory compliance departments in part to ensure compliance with FDA regulations, ¶¶ 182-83, 198-99, 237-38, 254-55. The FDA investigated a manufacturing facility in New Jersey allegedly under the direction/control of Emcure.

[12] The SAC's allegations that the FDA investigated an Emcure controlled a manufacturing facility in New Jersey, ¶¶ 212-16, do not indicate that the facility manufactured MCDs. Similarly, the SAC's allegations that the FDA investigated a Teva Industries controlled facility in India regarding its standards for manufacturing MCDs, ¶¶ 185-86, do not show the required link to New Jersey. Without a link to the manufacture or distribution of MCDs in New Jersey, the Court does not have specific jurisdiction over the Foreign Defendants.

### 2. Standing

Defendants argue that the Court should dismiss the claims of the consumer Plaintiffs because the SAC failed to correct the standing deficiencies the Court identified in its March 2022 Order. See Mfr. Def. Mem. at 21-24, Pharmacy Def. Mem. at 6-10. The Court disagrees.

The Court previously found that the Consumer Plaintiffs lacked standing because they failed to demonstrate that they suffered an injury, as they did not allege that they purchased any MCDs containing NDMA.[13] March 2022 Order at 5-6. The SAC now alleges that not only has each consumer plaintiff purchased a product that was not the same as the reference listed drug, but also that the purchased MCDs were contaminated with NDMA. SAC ¶¶ 1, 8, 9, 12, 303, 318. [*14] These allegations are sufficient to plead injury in fact.

The Consumer Plaintiffs have also sufficiently alleged causation as they have traced each Plaintiff's injury to the relevant Defendant(s). Id. ¶¶ 16-24. For example, resolving all inferences in favor of the Plaintiff, the SAC alleges that Plaintiff Joseph Brzozowski purchased contaminated MCDs from Defendant CVS, which was originally manufactured and distributed/sold by the Teva Defendants. Id. ¶ 16. Defendants' arguments that these allegations are not specific enough are unavailing at this early stage. As the Court previously found, "these allegations are enough to establish that 'the defendant[s'] challenged actions, and not the actions of some third party, caused the plaintiff's injury' - the purchase of worthless MCDs. *Lujan, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*. [The consumer Plaintiffs have] thereby satisfied the necessary elements of standing." March 2022 Order at 7.

The motions to dismiss for lack of standing are denied.[14] The Defendants may renew these objections at the summary judgement stage.

### 3. Preemption[15]

The Pharmacy Defendants next argue that the consumer Plaintiffs' claims are expressly preempted by the *Drug Supply Chain Security Act, 21 U.S.C. §§ 360eee-360eee-4* (the "Act" or "DSCSA"). Pharmacy Def. Mem. at 10-13. The [*15] Court Disagrees.

Preemption is an affirmative defense, and the burden of proof is on the defendant. *Lupian v. Joseph Cory Holdings LLC, 905 F.3d 127, 130 (3d Cir. 2018)*. "The question of whether a certain state action is pre-empted by federal law is one of congressional intent." *Gade v. Nat'l Solid Wates Mgmt. Ass'n, 505 U.S. 88, 96, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992)* (internal citation omitted). The DSCSA establishes a framework of critical steps and "requirements for tracing products" to enable the eventual electronic identification and traceability of prescription drugs. Specifically, the Act requires pharmacies to (1) reject shipments of prescription drug where the previous owner fails to provide specific information about the drug, § 360eee-1(d)(1)(A)(i), § 360eee(26)-(27); (2) capture specific information "as necessary to investigate a suspect product[,]"§ 360eee-1(d)(1)(A)(iii); and (3) implement a system for quarantining suspect products and investigating whether they are unfit for distribution, § 360eee-1(d)(4).

The Pharmacy Defendants specifically argue that the DSCSA includes an express preemption provision: "no State or political subdivision of a State may establish or continue in effect any requirements for tracing products through the distribution system. . . which are inconsistent with, more stringent than, or in addition to, any requirements applicable under [the Act]." *21 U.S.C. § 360eee-4(a)*. However, as a Court in this District [*16] has found, "Plaintiffs' claims here allege that the [MCDs] were contaminated before they entered the supply chain. Accordingly, plaintiffs' claims do not arise out of any defective tracing. Therefore, the plain language of

---

[13] By contrast, the Court previously found that MSPRC adequately alleged standing on behalf of the TTPs. March 2022 Order at 3.

[14] The Court will grant the motion to dismiss for lack of standing specifically regarding Defendant Avkare, Inc. AvKare, Inc. is a repackaging company, and the Plaintiffs have not asserted any facts tracing their alleged injury to any repackagers. SAC ¶ 49. It is unclear to the Court what Avkare's role in Plaintiiffs alleged loss is other than being owned by Amneal, Inc, and the SAC along with Plaintiffs' opposition does not clarify.

[15] The Defendants also seek to "preserve" the Manufacturing Defendants' prior unsuccessful preemption, primary jurisdiction, and subsumption arguments. Mfr. Def. Mem. at 44-46;Pharmacy Def. Mem. at 14. The Court's March 2022 Order conclusively rules on these purely legal issues, and therefore remains the law of the case. The Court will not address these and other "preserved" arguments regarding MSPRC's claims against the Manufacturing Defendants.

2023 U.S. Dist. LEXIS 244806, *16

the preemption clause again negates defendants' interpretation." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig., 2020 WL 7418006, at *11 (D.N.J. 2020)*. The court concluded that "[a]lthough the preemption clause seeks to eliminate inconsistent State regulations related to tracing of pharmaceuticals, Congress did not enact the DSCSA in an effort to displace all state law regarding defective pharmaceutical drugs." *Id. at *10*; see also *21 U.S.C. § 360eee-4(e)* ("Nothing in this section shall be construed to preempt State requirements related to the distribution of prescription drugs if such requirements are not related to product tracing").

The Court finds that the DSCSA does not preempt the consumer plaintiff's claims.

**4. 12(b)(6) Failure to State a Claim**

Defendants next argue that the SAC should be dismissed because Plaintiffs have failed to plead essential elements of each claim. The Court agrees in part with Defendants and addresses each claim in turn.

**a) Breach of Warranties (Counts 1-4)[16]**

The Pharmacy Defendants argue that the Plaintiff's breach of express and implied warranty claims against [*17] them fail because they neither made any express statement regarding the MCDs chemical makeup, nor did the Pharmacy Defendants have a duty related to the fitness of the MCDs. Pharmacy Def. Mem. 14-22. The Court agrees in part.

Plaintiffs fail to allege an "express" warranty made by the Pharmacy Defendants. Plaintiffs argue that by affixing labels and inserts containing information from manufacturers, Pl. Opp. at 41, and then "selling pharmaceutical drugs in the stream of commerce, each [Pharmacy] warrants that the generic drugs for which

they receive payment from are the same as existing brand-named drugs[.]" SAC ¶ 370. However, the SAC does not allege that the Pharmacy Defendants made any statement of their own ensuring the chemical makeup of the MCDs at issue. "[T]he mere act of selling a [drug] by a downstream entity lacking an obligation to comply with the Orange Book formulation," even if the product is determined to be contaminated, "cannot create a bridging argument that translates the sale into an express warranty made by [the Pharmacy Defendants]." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig., 2021 WL 222776, at *13 (D.N.J. Jan. 22, 2021)*. Further, express warranty claims require pre-suit notice under New Jersey Law, which the SAC does not claim was ever provided [*18] to a Pharmacy Defendant. *Kury v. Abbott Labs., Inc., No. CIV.A. 11-803 FLW, 2012 U.S. Dist. LEXIS 4862, 2012 WL 124026, at *7 (D.N.J. Jan. 17, 2012)* ("Accordingly, because Plaintiff has failed to allege that the condition precedent has been met—sending a pre-litigation notice—Plaintiff's [NJ] express warranty claim necessarily fails.").

Plaintiffs have also failed to allege breach of the implied warranty of merchantability against the Pharmacy Defendants under New York, California and Indiana Law. As the Court previously stated, Plaintiffs need only allege "(1) that a merchant sold goods; (2) the goods were not "merchantable" at the time of sale; (3) injury and damages to the plaintiff or its property; and (4) which were caused proximately and in fact by the defective nature of the goods."[17] March 2022 Order at 22 (citation omitted). The Pharmacy Defendants first correctly argue that pre-suit notice is a "substantive condition precedent" to recovering pursuant to an Indiana breach of warranty claim. *Courtesy Enters., Inc. v. Richards Labs., 457 N.E.2d 572, 579 (Ind. 1983)*. The SAC includes no allegations of any Plaintiff providing a Pharmacy Defendant notice.

Next the Pharmacy Defendants correctly argue that in New York and California, "there is no cause of action for breach of any implied warranties" against retail pharmacies, because such claims "are conditioned on the buyer's [*19] reliance upon the skill and judgment of the seller but when a consumer asks a druggist to fill a prescription. . . he does not rely on the druggist's judgment as to whether that particular drug is inherently

---

[16] In the Court's previous decision, it found that the FAC sufficiently alleged breach of implied and express warranties by the Manufacturer Defendants on behalf of MSRP under New Jersey, California, and Indiana Law. March 2022 order at 22-24. The Manufacturer Defendants make no new arguments regarding the Consumer Plaintiffs' nearly identical warranty claims in the SAC. For the same reasons stated in the March 2022 Order, the Court finds that the SAC sufficiently alleges breach of implied and express warranties (Counts 1, 2, 3 and 4) by the manufacturer defendants on behalf of the Consumer Plaintiffs as well.

[17] The Pharmacy Defendants also argue lack of knowledge, but that is not an element required to plead a breach of implied warranty of merchantability claim.

fit for its intended purpose but rather he places that confidence and reliance in the physician who prescribed the remedy." *Bichler v. Willing, 58 A.D.2d 331, 334, 397 N.Y.S.2d 57 (N.Y. 1977)*; See also *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig., No. 19-MD-2875, 2022 WL 1013945, at *10 (D.N.J. Apr. 5, 2022)* (noting the "absence of a pharmacies' duty to ensure merchantability of a prescribed drug" under New York Law); *Garza v. Endo Pharms., No. CV 12-1585, 2012 U.S. Dist. LEXIS 153129, 2012 WL 5267897, at *2 (C.D. Cal. Oct. 24, 2012)* (citing *Hector v. Cedars-Sinai Med. Ctr., 180 Cal. App. 3d 493, 508 n. 3, 225 Cal. Rptr. 595 (Cal. Ct. App. 1986)*) ("Because under California law pharmacies primarily provide a service, not a product, a breach of warranty claim does not lie.").

Although the Pharmacy Defendants have cited a case from New Jersey endorsing this doctrine generally, that case did not involve breach of warranty claims. See *Feldman v. Lederle Labs., 97 N.J. 429, 479 A.2d 374, 380-81 (N.J. 1984)* ("When the essential nature of the transaction involves a service rather than a product, public policy may dictate, in view of the status of the provider, that the general welfare is served better by inapplicability of the strict liability doctrine."). As the Pharmacy Defendants have not cited applicable authority indicating otherwise,[18] the Court finds that the SAC alleges enough regarding the breach of the implied warranty of merchantability [*20] under New Jersey Law to survive a motion to dismiss.[19]

The Court dismisses Count 1 and 3 against the Pharmacy Defendants with prejudice, except that Count 3 may continue under New Jersey Law.

**b) Negligence Claims (Counts 7-8, 13-16)**

The Pharmacy Defendants primarily argue that the SAC fails to allege that they breached any duty, as required for the negligence, negligence per se, and negligent misrepresentation claims. Pharmacy Def. Br. at 23-26. The Manufacturing Defendants argue that Plaintiffs may not recover for a purely economic injury without alleging a special relationship. Mfr. Def. Br. at 30-32, 38-41. The Court agrees in part.

To state a claim for negligence, a plaintiff must allege "(1) a duty of care; (2) a breach of that duty; (3) actual and proximate causation; and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594, 59 A.3d 561 (2013)* (citing *Stanley Co. of Am. v. Hercules Powder Co., 16 N.J. 295, 315, 108 A.2d 616 (1954)*). "The concept of negligence per se allows a litigant, and ultimately a court, to invoke a statute to supply elements of a negligence (e.g., duty and breach), when a defendant violates a statute that is designed to prevent the particular harm at issue and meets other applicable criteria." *Kindercare Educ. LLC v. N.J. Fire Equip., No. 16-4211, 2019 U.S. Dist. LEXIS 49103, 2019 WL 1326890, at *7 (D.N.J. Mar. 25, 2019)* (citation omitted).

Here, the Consumer Plaintiffs have failed to allege that the Pharmacy Defendants breached [*21] their duty of care. Plaintiffs allege that the Defendants had a duty to "ensure that the MCDs it sold in the United States were therapeutically equivalent to their RLDs and not contaminated with carcinogenic impurities, complied with cGMPs, and were not adulterated or misbranded." e.g., SAC ¶ 544. But at most, the cases Plaintiffs cite suggest that the Pharmacy Defendants had a duty not fill prescriptions that are per se unreasonable. e.g., *Arrington v. Walgreen Co., 664 F. Supp. 2d 1230, 1233 (M.D. Fla. 2009)* ("[A] pharmacist's duty to use due and proper care in filling a prescription extends beyond simply following the prescribing physician's directions. In the instant case, [the Pharmacy] knew that [Plaintiff] was allergic to sulfa-based drugs and filled her prescription for such a drug without warning her or double-checking with her physician."); See also *Ingram v. Hook's Drugs, Inc., 476 N.E.2d 881, 887 (Ind. Ct. App. 1985)* (placing the "duty to warn of the hazards of the drug on the prescribing physician and requires of the pharmacist only that he include those warnings found in the prescription" in a negligence claim).

In this context, the Pharmacy Defendants had a duty not to fill prescriptions for specific drugs known to be contaminated. See *Fagan v. Amerisourcebergen Corp., 356 F. Supp. 2d 198, 204, 213 (E.D.N.Y. 2004)* (finding a pharmacy liable for negligence where it sold a counterfeit [*22] drug despite a prior announcement

---

[18] There is little law on point in New Jersey, and the parties do not fully brief how the New Jersey Supreme Court would address this issue. As the Court sits in Diversity, it request that the parties fully evaluate this issue at summary judgement or by separate motion. Any renewed motion shall be made on a schedule approved by the magistrate judge.

[19] The Pharmacy Defendants also argue that they cannot be held liable because they are "innocent sellers," but they cite provisions specific to strict liability claims. *N.J. Stat. Ann. § 2A:58C-9* ( titled "Identification of manufacturer; strict liability of product supplier"); *Ind. Code Ann. § 34-20-2-3* (titled "Strict liability of manufacturer").

from the manufacturer that the counterfeit drugs could be easily identified by lot number and label markings). The argument that the Pharmacy Defendants had "actual knowledge of such contamination in the wake of the recalls of valsartan, losartan, and irbesartan," however, is unavailing. Pl. Opp. at. 76. Plaintiffs' authority does not support the premise that a pharmacy's knowledge of prior recalls of other drugs for NDMA contamination imputes knowledge of potential MCD contamination. Cf. *Fellner v. Tri-Union Seafoods, L.L.C., 2010 U.S. Dist. LEXIS 36195, 2010 WL 1490927, at \*5 (D.N.J. 2010)* (concluding that a manufacturing defendant had knowledge requiring a duty to warn because it "was aware that [its own] tuna products contained methylmercury . . . that could result in mercury poisoning"). Accordingly, the negligence, negligence per se, and negligent misrepresentation claims against the Pharmacy Defendants must be dismissed.

The SAC has sufficiently alleged negligence claims against the Manufacturing Defendants to survive a motion to dismiss.[20] The Court previously dismissed MSPRC's negligence claims because it made "no allegations of a special relationship between the TPPs and the Manufacturing Defendants, nor identified any independent legal duties," [*23] to exempt it from the economic loss doctrine. March 2022 Order at 41-42 (citing California, New York, Indiana, and New Jersey cases stating an economic loss doctrine). Plaintiffs' addition of conclusory allegations regarding a special relationship are unavailing.[21] However, because the SAC includes specific allegations regarding independent duties under state law,[22] the Court will join the other courts in the Third Circuit in "declin[ing] to rule on economic loss arguments at the motion to dismiss phase, [because] the economic loss rule [] requires a 'fact-intensive inquiry.'" *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig., 2021 U.S. Dist. LEXIS 20886, 2021 WL 364663, at \*22*.

The Court dismisses Counts 7, 13, and 15 against the Pharmacy Defendants, but Counts 7, 8, 13, 14, 15, and 16 may continue against the Manufacturing Defendants.

### c) Common Law Fraud (Counts 5-6)[23]

The Defendants next argue that the SAC fails to allege the requisite state of mind for the fraud claims. Mfr. Def. Mem at 25-29; Pharmacy Def. Mem. at 35-37. The Pharmacy Defendants separately argue that the SAC does not allege that they made a material misrepresentation. Pharmacy Def. Mem. at 34-35. The Court agrees in part.

*Fed. R. Civ. P. 9(b)* provides that "[i]n alleging fraud or mistake, a party must state with particularity the [*24] circumstances constituting fraud or mistake." To satisfy this requirement, a plaintiff must provide "precise allegations of date, place or time" in its pleading or use other "means of injecting precision and some measure of substantiation into their allegations of fraud." *Bd. of Trs. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002)* (internal quotation omitted).

Plaintiffs fail to allege that the Pharmacy Defendants made a material misrepresentation. Although the Court has already found that specific public statements by the Manufacturer Defendants, "namely that the MCDs were bioequivalent to their RLDs and that [they] followed cGMPs," qualify as material misrepresentations, March 2022 Order at 26-27, the SAC includes no such statements made by the Pharmacy Defendants. As discussed above, supra Section III.4.b, the Pharmacy

---

[20] As discussed above, supra Section III.2, Plaintiffs have sufficiently identified the Defendants and alleged that the contaminated MCDs they paid for were worthless. The Court has found Plaintiffs' allegations of causation and injury sufficient to survive the motion to dismiss stage.

[21] Plaintiffs now include allegations that "[e]ach Defendant maintained or should have maintained a special relationship with Plaintiffs and the Class" either because "they were obligated to ensure that their MCDs complied with cGMPs, were not adulterated or misbranded, and were the equivalent of the RLD," or "by virtue of their superior knowledge and economic position vis-à-vis the true nature of their MCDs." SAC ¶¶ 547, 551, 560, 564, 575, 586. These allegations do nothing more than conclude that a special relationship exists, and Plaintiff's brief offers no authority suggesting that such allegations suffice.

[22] The SAC alleges an independent duty for manufacturers based on state drug regulations to ensure that end purchasers receive drugs that were made in accordance with cGMPs. See id. ¶ 582.

[23] The Court reiterates its prior holding that because Plaintiffs have alleged that their causes of action accrued in June 2020 with the FDA announcement of Defendants' recalls, and Defendants do not proffer any support for their position that Plaintiffs' claim accrued prior to that time—Defendants do not carry their burden of establishing that Plaintiffs' claims are barred by the applicable statute of limitations. March 2022 Order at 25-26 n. 23.

Defendants' re-printed information containing statements that the Plaintiffs attribute to the manufacturers are not statements of the Pharmacy Defendants. Accordingly, Plaintiffs fraud claims against the Pharmacy Defendants must be dismissed.[24]

Plaintiffs have sufficiently alleged scienter against the Manufacturing Defendants to survive a motion to dismiss. The Court previously found that MSPRC alleged with particularity [*25] "a misrepresentation to sustain its claims sounding in fraud," but did not adequately plead that the Manufacturing Defendants "had knowledge or were reckless as to the falsity of those representations." March 2022 Order at 27-28. Plaintiffs now include allegations concluding that "[i]f Defendants had not routinely disregarded the FDA's cGMPs, or had fulfilled its quality assurance obligations, Defendants would have identified the presence of these nitrosamine contaminants almost immediately." SAC ¶ 323. To support this assertion, Plaintiffs rely on the 2018 recalls by "many manufacturers," including Defendants Teva and Aurobindo, of an unrelated drug due to NDMA contamination. Id. ¶ 324-25. Additionally, Plaintiffs rely on allegations that each Manufacturing Defendant was responsible for procuring ingredients and for quality control. Id ¶¶ 180-182, 196-198, 222-224, 235-237, 253-255. These allegations, among others, provide sufficient detail regarding industry standards and knowledge about NDMA contamination to suggest that the Manufacturing defendants were at least reckless in the manufacturing of the MCDs at issue.[25]

The Court finds that Plaintiffs have alleged [*26] the essential elements of Fraud against the Manufacturing Defendants but not he Pharmacy Defendants. As a result, the Court will dismiss Counts 5 against only the Pharmacy Defendants with prejudice.

d) Unjust Enrichment (Counts 11 and 12)

The Defendants argue that Plaintiff's unjust enrichment claims must be dismissed either because such claims cannot be pled in the alternative, or because the SAC does not plead wrongful conduct. Mfr. Def. Mem. at 41-42. Pharmacy Def. Mem. at 30-31. The Court agrees in part.

The Court previously dismissed MSPRC's unjust enrichment claims under New York and California law but held that the FAC's allegations were sufficient against the Manufacturing Defendants under New Jersey and Indiana Law. March 2022 Order at 38-39. The Plaintiffs now omit unjust enrichment claims under New York Law. SAC ¶¶ 530, 536. Because the Defendants do not make new arguments regarding the Plaintiffs' claims under New Jersey and Indiana law, the Court's prior holding that New Jersey and Indiana law permits pleading unjust enrichment in the alternative at the motion to dismiss stage applies here as well. Counts 11 and 12 may continue against both the Manufacturing and Pharmacy [*27] Defendants under New Jersey Law and Indiana Law.[26]

In contrast, The Court dismisses Plaintiffs unjust enrichment claims under California Law against the Pharmacy Defendants because Plaintiffs have not alleged that they committed any "actionable wrong." *Hill v. Roll Internat. Corp., 195 Cal. App. 4th 1295, 128 Cal. Rptr. 3d 109, 118 (Cal. App. 2011)*.[27] This claim must

---

[24] Even if plaintiffs could adequately allege that the reprinted information was somehow a misrepresentation, they have failed to allege that the pharmacy defendants acted with scienter. As discussed supra, Section III.4.c, Plaintiffs have also failed to allege recklessness or knowledge of the Pharmacy Defendants. The SAC alleges nothing regarding the Pharmacy's awareness of the contamination of MCDs.

[25] Because this information is often in the exclusive control of a defendant, circumstantial evidence is sufficient to meet *Rule 9(b)*'s pleading standard for scienter. See *Caspersen v. Oring, 441 F. Supp. 3d 23, 40* ("*Rule 9(b)* expressly provides that "[m]alice, intent knowledge and other conditions of a person's mind may be alleged generally" (alteration in original)). The Manufacturing Defendants may renew their arguments on a full record at summary judgment.

[26] Although the Pharmacy Defendant cited a case from the Southern District of Indiana, that case was applying Montana and North Dakota law when it required "proof that defendants' actions were wrongful and/or not justified." *In re AT&T Fiber Optic Cable Installation Litig., 2001 U.S. Dist. LEXIS 24290, 2001 WL 1397295, at *12 (S.D. Ind. Nov. 5, 2001)*. Additionally, the Pharmacy Defendant's corresponding argument regarding disgorgement is unavailing. The Pharmacy Defendants cited the Restatement of Restitution and Unjust Enrichment, but cited no case indicating that New Jersey and Indiana, have adopted the doctrine.

[27] The Court has dismissed all other claims against the Pharmacy Defendants under California Law. While California permits unjust enrichment claims to stand alone as claims in quasi-contract for restitution, *Soo v. Lorex Corp., No. 20-CV-01437-JSC, 2020 U.S. Dist. LEXIS 164664, 2020 WL 5408117, at *8 (N.D. Cal. Sept. 9, 2020)*, Plaintiffs have not

also be dismissed against the Manufacturing Defendants because California prohibits such claims where there is an adequate legal remedy. See March 2022 Order at 38-39 (citing Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 250, 134 Cal. Rptr. 3d 588 (Cal. App. 2011)).[28] Because the Court has found at least one claim may continue against the Manufacturing Defendants for the underlying allegations, an unjust enrichment claim is inappropriate. The Court dismisses Counts 11 and 12 under California Law against both sets of Defendants.

**e) State Consumer Protection Laws (Counts 9-10 and 17-23)**

The Defendants primarily argue that Plaintiffs' state consumer protection claims fail under the laws of California, Indiana, New York, and New Jersey because the SAC does not particularly allege fraudulent conduct and because Plaintiffs' injury is insufficient. Mfr. Def. Mem. at 36-29. Pharmacy Def. Mem. at 32-37. The Defendants also argue that Plaintiffs' notice under Indiana's state consumer [*28] law was inadequate. Mfr. Def. Mem. at 34-35. The Pharmacy Defendants separately request that these claims be dismissed because dispensing prescription drugs is not a consumer-oriented practice as required by state consumer laws. Pharmacy Def. Mem. at 37-38. The Court agrees in part.

As discussed above, Plaintiffs have failed to allege either recklessness or knowledge as required to plead a claim sounding in fraud against the Pharmacy Defendants. This failure requires dismissal of each state consumer claim that the Court previously dismissed solely for lack of scienter. March 2022 Order (dismissing claims under California's Unfair Competition Law

---

alleged any quasi-contractual breach or provided any facts that would support such a claim against Pharmacy Defendants.

[28] Plaintiffs' citation of cases supporting the existence of unjust enrichment as a standalone claim under California Law do nothing to negate that such claims cannot duplicate claims for which there is an adequate legal remedy. Each of the cases cited by Plaintiffs for this proposition rely on the California Supreme Court's decision in Hartford Cas. Ins. Co. v. J.R. Mktg., which specifically states that an unjust enrichment claim "arises when the enrichment obtained lacks any adequate legal basis and thus "cannot conscientiously be retained." 61 Cal. 4th 988, 190 Cal. Rptr. 3d 599, 353 P.3d 319, 326 (CA 2015).

("UCL"), Cal. Bus & Prof. Code §§ 17200, et seq., False Advertising Law ("FAL"), Cal. Bus & Prof. Code §§ 17500, et seq., and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770, et seq). Accordingly, the Court dismisses Counts 17, 18, and 19 against Pharmacy Defendants with prejudice, as further amendment would be futile. These claims may continue against the Manufacturing Defendants, as the Court has already found the SAC's allegations of fraud and injury in fact sufficient against them at this stage.

Plaintiffs' claims pursuant to the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code §§ 24-5-0.5-1, et seq., are dismissed in part. The Court previously found that (1) MSPRC could not allege an uncured deceptive acts claim because the TPP's did not provide the required notice to a Defendant, and (2) MSPRC's incurable deceptive [*29] acts claims failed for lack of scienter. March 2022 Order at 33-34. The SAC does not contain the required scienter allegations for the Pharmacy Defendants; and only alleges that notice was provided by the Consumer Plaintiffs to the Manufacturing Defendants, SAC Ex. A at 2, ECF No. 165.1. Therefore, the Court again dismisses Counts 10 and 22: to the extent they (1) claim an incurable deceptive act under the IDCSA against Pharmacy Defendants, (2) claim an IDCSA uncured deceptive act brought by MSPRC, or (3) claim an ISCSA uncured deceptive act against the Pharmacy Defendants.

That leaves only (1) the Consumer Plaintiffs' IDCSA uncured deceptive act claim against the Manufacturing Defendants and (2) the incurable deceptive act claims against the Manufacturing Defendants. The Manufacturing Defendants first argue that the notice provided by Consumers fails to completely describe the nature of the deceptive act and resulting damage. Mfr. Def. Mem. at 34-35. However, the Court finds the notice adequate because it included both specific allegations regarding the NDMA contamination and further states that the MCDs purchased were worthless as a result. SAC Ex. A at 2; cf. A.B.C. Home & Real Estate Inspection, Inc. v. Plummer, 500 N.E.2d 1257, 1262 (Ind. Ct. App. 1986) (reversing the trial [*30] court's finding that notice was adequate where it did not apprise the Defendant of the advertisement that was allegedly deceptive). The incurable deceptive act claim is also sufficient as the Court has already founds the fraud allegations sufficient against the Manufacturing Defendants. Accordingly, Count 22 may continue to the extent that they (1) claim an incurable deceptive act claim against the Manufacturing Defendants, or (2) claim an uncured deceptive act claim on behalf of the

Consumer Plaintiffs against the Manufacturing Defendants.

Plaintiffs' New York consumer law claims pursuant to New York General Business Law ("NYGBL") §§ 349 & 350 are dismissed. The Defendants correctly argue that while allegations that a consumer overpaid for a product are proper, allegations that a plaintiff would not have bought a product if not for the defective act are not. Zottola v. Eisai Inc., 564 F. Supp. 3d 302, 310 (S.D.N.Y. 2021) ("Under New York law, a plaintiff's allegation that he or she bought a product that he or she 'would not have purchased, absent a manufacturer's deceptive commercial practices' is insufficient to establish a cognizable injury under NYGBL §§ 349 and 350."). Unlike the plaintiffs in Daniel v. Mondelez Int'l, Inc., who alleged that they "paid money for less Product than Defendant represented," [*31] 287 F. Supp. 3d 177, 195 (E.D.N.Y. 2018), Plaintiffs allege that they "would not have paid for these Defendants' MCDs" if not for the deceptive acts, e.g., SAC ¶ 17. The Court therefore dismisses Counts 20 and 21.

Finally, Plaintiffs' claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. §§ 56:8-1, et seq, may continue. As the Court previously found, March 2022 Order at 35, Defendants' argument that Plaintiffs NJCFA claims fail for lack of ascertainable loss or concrete injury are unavailing. The Court has already found Plaintiffs' economic loss sufficient to allege a concrete injury, supra, Section III.2. Accordingly, Count 23 may continue against both sets of Defendants.[29]

## IV. CONCLUSION

For the reasons stated above,[30] Defendants' Motions to Dismiss, ECF Nos. 184, 185 are each **GRANTED IN PART** and **DENIED IN PART**. The Court **DENIES** the Motions to dismiss for preemption, lack of personal jurisdiction, standing, except that it **GRANTS** the Motion to dismiss for lack of standing as to AvKare. The parties are **ORDERED** to engage in jurisdictional discovery.

Regarding the Motions to Dismiss for Failure to State a Claim, Counts 20, and 21 are **DISMISSED** in their entirety **WITH PREJUDICE**, as further amendment would be futile.

Of the remaining claims asserted against the Pharmacy Defendants: Count [*32] 1; Count 3 under California, New York, and Indiana Law; Counts 5, 7; Count 11 under California Law; Counts 13, 15, 17, 18, 19, and 22, are **DISMISSED WITH PREJUDICE**, as further amendment would be futile.

Of the remaining claims asserted against the Manufacturing Defendants, Count 11 under California Law and Count 12 under California Law are **DISMISSED WITH PREJUDICE**, as further amendment would be futile.

**SO ORDERED**.

/s/ Madeline Cox Arleo

**MADELINE COX ARLEO**

UNITED STATES DISTRICT JUDGE

---

**End of Document**

---

[29] For the avoidance of doubt, the court also dismisses Counts 9 and 10 to the extent they claim violations of any state consumer law dismissed herein.

[30] The Court also declines to summarily dismiss all claims against Amneal Inc. as requested by Defendants. Mfr. Def. Mem. at 43. The role of each Amneal entity and whether they are liable due to their agency relationships with each other, involve questions of facts not presently before the Court and questions of law not fully briefed by the Defendants. Defendants may renew these arguments at summary judgement.