# Exhibit P



Neutral

As of: November 19, 2025 9:05 PM Z

# N.J. Chinese Cmty. Ctr. v. McAleer

United States District Court for the District of New Jersey

August 15, 2022, Decided; August 15, 2022, Filed

Civil Action No. 21-08320 (FLW)

**Reporter**
2022 U.S. Dist. LEXIS 145256 *; 2022 WL 3403297

NEW JERSEY CHINESE COMMUNITY CENTER, Plaintiff, v. PETER MCALEER, STATE OF NEW JERSEY, IPD GROUP INC. dba EIN PRESSWIRE, Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

press release, allegations, amended complaint, retracted, default, motion to dismiss, suppression, qualified immunity, courts, conspiracy, additional allegation, original complaint, entry of default, meritorious defense, quotations, immune, vacate, motion for default, default judgment, public official, briefing, plaintiff's claim, file a complaint, civil rights, constitutional right, sovereign immunity, motion to vacate, culpable, parties, pleaded

**Counsel:** [*1] For NEW JERSEY CHINESE COMMUNITY CENTER, INC., Plaintiff: CYNTHIA MEI HWANG, NEW JERSEY CHINESE COMMUNITY CENTER, LEGAL SERVICES DEPARTMENT, SOMERSET, NJ.

For PETER MCALEER, STATE OF NEW JERSEY, Defendants: STEVEN BRIKOWSKI, LEAD ATTORNEY, NEW JERSEY OFFICE OF THE ATTORNEY GENERAL, DOL - TORT LITIGATION AND JUDICIARY SECTION, R.J. HUGHES JUSTICE COMPLEX, W. MARKET ST., TRENTON, NJ.

For IPD GROUP, INC., doing business as, EIN PRESSWIRE, Defendant: PAUL JEFFREY BOND, LEAD ATTORNEY, HOLLAND & KNIGHT LLP, PHILADELPHIA, PA.

**Judges:** Hon. Freda L. Wolfson, Chief United States District Judge.

**Opinion by:** Freda L. Wolfson

## Opinion

**AMENDED OPINION**

**WOLFSON, Chief Judge:**

This matter is before the Court upon the Motion of Plaintiff, New Jersey Chinese Community Center, Inc. ("Plaintiff" or "NJCCC") for Default Judgment, and upon the Cross-Motion of Defendants, the State of New Jersey and Peter McAleer ("McAleer") (together "State Defendants"), to vacate default and to dismiss Plaintiff's complaint. Plaintiff alleges that State Defendants violated NJCCC's constitutional right to freedom of speech by suppressing a press release defendant IPD Group, Inc. d/b/a/ EIN Presswire[1] had agreed to publish on behalf of Plaintiff. To that end, [*2] Plaintiff asserts that State Defendants violated NJCCC's free speech rights under the First and Fifth Amendments of the U.S. Constitution pursuant to 42 U.S.C. §§ 1983 - 1986, the New Jersey State Constitution, and the New Jersey Civil Rights Act ("NJCRA"). Plaintiff further maintains that the default entered against State Defendants should not be vacated. For the reasons set forth below, the Court **GRANTS** State Defendants' motion to vacate default. In addition, State Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. State Defendant's motion to dismiss is **GRANTED** as to the State of New Jersey. All claims against the State of New Jersey are dismissed with prejudice. In addition, State

---

[1] Plaintiff also brought the same claims against defendant EIN Presswire. On May 17, 2022, the Court granted EIN Presswire's motion to dismiss, but permitted Plaintiff 30 days to file an amended complaint alleging additional facts showing state action on the part of EIN Presswire. Thereafter, Plaintiff filed its Amended Complaint. (ECF No. 27.) EIN Presswire's Motion to dismiss the amended complaint is currently pending. (ECF No. 28.)

Defendants' motion to dismiss as to the section 1985 and 1986 claims brought against Mr. McAleer is **GRANTED**. However, State Defendants' motion to dismiss as to the section 1983 and NJCRA claims brought against Mr. McAleer is **DENIED** without prejudice. Mr. McAleer and Plaintiff are directed to submit supplemental briefing addressing whether the additional allegations set forth in the amended complaint state a suppression of speech claim against Mr. McAleer under section 1983 and the NJCRA within 30 days of the accompanying Order.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this **[*3]** motion, the Court begins with the procedural history. On April 6, 2021, Plaintiff filed a complaint seeking damages and injunctive relief against all named defendants for alleged violations of its rights to freedom of speech under §§ 1983-1986 of the Civil Rights Act, the New Jersey Constitution, and the NJCRA. (Complaint ("Compl."), ECF No. 1.) Summons were issued to all defendants on April 6, 2021. (ECF No. 4.) On July 12, 2021, Plaintiff sought a six-month extension of time to serve its summons and complaint, which the Magistrate Judge denied on July 15, 2021. (ECF Nos. 5-6.) The Magistrate Judge provided Plaintiff a 45-day extension. On August 16, 2021, Plaintiff served the summons and complaint on State Defendants, via email to the NJAG Electronic Service email, pursuant to service of process instructions provided by a security officer at the Office of the State of New Jersey.[2] An agency representative acknowledged receipt of service on August 18, 2021. (ECF No. 8.) Plaintiff also filed an Affidavit of Service as to EIN Presswire on September 13, 2021. (ECF No. 9.) On October 4, 2021, EIN Presswire moved to dismiss Plaintiff's complaint, which I granted. Claims brought against EIN Presswire were dismissed **[*4]** without prejudice and Plaintiff was directed to file an amended complaint alleging additional facts demonstrating state action on the part of EIN Presswire. On June 9, 2022, Plaintiff filed an amended complaint. (Amended Complaint ("Am. Compl."), ECF No. 27.)

State Defendants failed to respond to the summons and the original complaint, and on November 9, 2021, Plaintiff filed a request for entry of default, which the Clerk entered on the same date. (ECF Nos. 16, 17.) On March 10, 2022, Plaintiff filed a motion for default judgment. (Plaintiff's Motion for Default Judgment ("Pl.'s Mot."), ECF No. 18.) Later that month, State Defendants filed letters requesting a one-cycle adjournment of Plaintiff's Motion to April 18, 2022, with Plaintiff's consent. (ECF No. 20.) On April 5, 2022, State Defendants filed a cross-motion to vacate default and dismiss Plaintiff's original complaint. (State Defendants' Opposition to Plaintiff's Motion for Default Judgment and Cross-Motion to Dismiss ("Defs.' Br. in Opp'n"), ECF No. 22.) Plaintiff opposed State Defendants' motion. (Plaintiff's Reply ("Pl.'s Reply"), ECF No. 23.)

Turning now to the facts, Plaintiff's allegations in its initial complaint are **[*5]** as follows. On February 15, 2021, Plaintiff submitted a press release to EIN Presswire for publication titled "In Somerset Superior Court, Judge Reed Just Couldn't Stand Up to Judge Miller's Pressure in Deciding a Case." (Compl. ¶ 5.) The press release was allegedly part of a fundraising campaign to raise awareness of discrimination and bias against the Asian American community. (Id. ¶ 9.) On February 20, 2021, EIN Presswire allegedly approved the press release for distribution. (Id. ¶ 5.) Less than a month later, on March 10, 2021, Plaintiff avers that it discovered that the press release had been retracted without its knowledge or consent. (Id. ¶ 6.) Plaintiff alleges that EIN Presswire retracted the press release because defendant, Mr. Peter McAleer, the Director of Communications and Community Relations at the New Jersey Administrative Office of the Courts, had "filed a complaint and ordered that it be retracted." (Id. ¶ 7.) Plaintiff's original complaint does not explain the content of Mr. McAleer's complaint, or the capacity in which Mr. McAleer "ordered" EIN Presswire. Indeed, as Director of Communications and Community Relations, it does not appear that Mr. McAleer has the **[*6]** capacity to enter an order that would compel a private entity such as EIN Presswire to refrain from issuing any press releases. Nevertheless, as a result of the alleged retraction of the press release, Plaintiff maintains that its credibility and fundraising ability have been severely damaged. (Id. ¶ 10.)

Plaintiff supplemented its allegations as to Mr. McAleer in its amended complaint. (Am. Compl.) Instead of claiming that Mr. McAleer "filed a complaint and ordered that it be retracted," Plaintiff now alleges that "[a]ccording to EIN Presswire, shortly after the

---

[2] Pursuant to an order issued by the Supreme Court of New Jersey, signed April 7, 2020, the provisions of Rule 4:4-4(a)(7) of the Rules Governing the Courts of the state of New Jersey were relaxed and supplemented to permit electronic service of process by email on the State of New Jersey. (*See* Covid-19 Order, April 7, 2020.)

publication of the press release, [EIN Presswire] received a complaint by [Mr. McAleer] . . . ." (Am. Compl. ¶ 35.) However, the amended complaint does not reference the form of the complaint, *i.e.*, whether it was written or oral, or the contents of the complaint. Further, Plaintiff alleges that "[i]t is believed the contact from the New Jersey Administrative Office of the Courts caused the [sic] EIN Presswire to retract the press release shortly after it was published." (*Id.* ¶ 36.) Plaintiff further alleges that "[a]ccording to Jeremy Fields, the Vice President of EIN Presswire, [Mr. McAleer] has threatened EIN Presswire with [*7] 'possible litigation' and other bad consequences if the press release were not retracted." (*Id.* ¶ 37.) As a result, Plaintiff alleges that "EIN Presswire had no choice but to succumb to [Mr. McAleer's] demand." (*Id.* ¶ 38.) Plaintiff concludes with the allegation that "[b]y wielding the power vested in him from the New Jersey Administrative Office of the Court, [Mr. McAleer] apparently used his position of power to unlawfully cause the [sic] EIN Presswire to retract the press release." (*Id.* ¶ 39.) Because there has not been briefing on these amended allegations and the manner in which they impact the suppression claim against Mr. McAleer, if at all, the Court **DENIES** State Defendants' motion to dismiss without prejudice as to Mr. McAleer. The Court directs Mr. McAleer and Plaintiff to submit supplemental briefing on the adequacy of the additional allegations in the amended complaint to state a suppression claim as to Mr. McAleer within 30 days of the accompanying Order. However, State Defendants' motion to dismiss is **GRANTED** as to the section 1985 and 1986 claims brought against Mr. McAleer. In addition, State Defendants' motion to dismiss is **GRANTED** as to the State of New Jersey. All claims brought [*8] against the State of New Jersey are dismissed with prejudice. The Court also **GRANTS** State Defendants' motion to vacate default.

## II. LEGAL STANDARD

### A. Standard for Default Judgment

A district court may enter default judgment pursuant to Fed. R. Civ. P. 55(b)(2) once an entry of default has been entered by the Clerk of the Court. The decision whether to enter default judgment in any given case is a matter of judicial discretion. *See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008)* (citing *Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984)*).

Under Federal Rule of Civil Procedure 55(c), an entry of default can be set aside for "good cause." When deciding whether to vacate an entry of default, the Court must consider "(1) whether the plaintiff will be prejudiced if the default is lifted; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Clauso v. Glover, No. 09-05306, 2010 U.S. Dist. LEXIS 81542, 2010 WL 3169597, at *1 (D.N.J. Aug. 11, 2010)*. (quoting *Sawadski De Bueno v. Bueno Castro, 822 F.2d 416, 419-20 , 23 V.I. 449(3d Cir. 1987)*).

An entry of default "is not favored and doubtful cases must be resolved in favor of the non-moving party." *Id.*; see also *Hritz v. Woma Corp., 732 F.2d at 1188* (noting that "this court's overriding preference is the disposition of litigated matters on the merits rather than by default"); *Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867 (3d Cir.1984)* ("We reiterate what we have said on numerous occasions: that dismissals with prejudice or defaults are drastic sanctions.").

### B. Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim when there [*9] is no subject matter jurisdiction. *Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)*. A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review. *Const. Party of Pennsylvania v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014)* (citations omitted); *In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 632 (3d Cir. 2017)*. On a facial attack, courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," since the motion contests the sufficiency of the pleadings. *Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)*; *Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016)*.

On a factual attack, courts may "consider evidence outside the pleadings," such as affidavits, since the motion contests the underlying basis for jurisdiction. *Gould Elecs. Inc., 220 F.3d at 176* (citing *Gotha v. United States, 115 F.3d 176, 178-79, 36 V.I. 392 (3d Cir. 1997)*); *Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)* ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *CNA v. United States, 535 F.3d*

132, 139 (3d Cir. 2008) ("[A] factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.") (quotations and citation omitted). In such circumstances, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," Mortensen, 549 F.2d at 891, but "must be careful [ ] not to allow its consideration of jurisdiction to spill over into a determination [*10] of the merits of the case, and thus must tread lightly." Kestelboym v. Chertoff, 538 F. Supp. 2d 813, 815 (D.N.J. 2008) (quotations and citation omitted). The proponent of jurisdiction bears the burden to prove that it exists throughout the litigation. Mortensen, 549 F.2d at 891. Here, State Defendants mount a facial attack to Plaintiff's complaint.

C. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)); United Van Lines, LLC v. Lohr Printing, Inc., No. 11-4761, 2012 U.S. Dist. LEXIS 44302, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is [*11] plausible on its face." Id. at 570; Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). All reasonable inferences must be made in the plaintiff's favor. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).

III. DISCUSSION

A. Motion to Vacate Default

As stated above, in considering a motion for default judgment courts consider "(1) whether the plaintiff will be prejudiced if the default is lifted; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." Clauso, 2010 U.S. Dist. LEXIS 81542, 2010 WL 3169597, at *1. Here, I find that all three factors weigh in favor of denying Plaintiff's motion for default judgment and vacating the Clerk's entry of default against State Defendants.

While all factors are pertinent, the meritorious defense factor is a "threshold" inquiry; the absence of a meritorious defense is dispositive. U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." Id. (internal quotations and citations omitted). It is insufficient for a defendant [*12] to simply allege a defense. Rather, a defendant seeking to set aside a default must "set forth with some specificity the grounds for his defense." Harad v. Aetna Cas. and Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988). In short, "[a] defendant may not establish a meritorious defense with simple denials or conclusory statements, but instead must provide specific facts supporting its defense." Borges v. Santos, No. 10-03450, 2011 U.S. Dist. LEXIS 89556, 2011 WL 3515996, *3 (D.N.J. Aug.11, 2011) (quoting $55,518.05 in U.S. Currency, 728 F.2d at 195 (internal quotations omitted)). Where "at least one meritorious defense" has been specifically alleged, default judgment may be inappropriate. Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 657 (3d Cir. 1982); see also Miles v. Aramark Correctional Service, Inc., 321 Fed. Appx. 188, 191 (3d Cir. 2009) (citing one meritorious defense in support of conclusion that default judgment was not warranted).

First, I find that State Defendants have meritorious defenses to Plaintiff's claims. As discussed, infra, State Defendants argue that (1) they are entitled to Eleventh

*Amendment* sovereign immunity and are not "persons" amenable to suit under 42 U.S.C. § 1983 or the NJCRA; (2) Plaintiff's complaint fails to contain any factual allegations to state a plausible claim for conspiracy under 42 U.S.C. § 1985; (3) Plaintiff's complaint fails to state a claim for violation of constitutional rights under the First and Fifth Amendments of the Constitution; and (4) Plaintiff's complaint should be dismissed as it fails to state a claim for injunctive relief or declaratory judgment. In addition, the State of **[*13]** New Jersey argues that Plaintiff cannot base a claim against the State under § 1983 or the NJCRA on a theory of respondeat superior or vicarious liability. Further, Mr. McAleer maintains that he is entitled to qualified immunity from suit in federal court. Indeed, I find that State Defendants' defenses are not "simple denials or conclusory statements." Borges, 2011 U.S. Dist. LEXIS 89556, 2011 WL 3515996, *3. Rather, as discussed below, State Defendants provide specific facts as to their existence as non "persons" amenable to suit, and their roles in Plaintiff's allegations of harm. For example, the State of New Jersey indicates its lack of involvement in the retracted press release in support of its claim that a theory of respondeat superior or vicarious liability is an insufficient basis of liability under § 1983 or the NJCRA. (Defs.' Br. in Opp'n, p. 15.)

In addition, setting aside the entry of default will not prejudice Plaintiff. Prejudice arises where the setting aside of the entry of default results in the loss of relevant evidence or some other occurrence that tends to impair the plaintiff's ability to pursue its claims. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987); *see also* Feliciano, 691 F.2d at 657 (holding that the "loss of available evidence, increased potential for fraud or collusion, or substantial reliance **[*14]** upon the [default] judgment" support a showing of prejudice). On the other hand, delay in satisfying a claim, alone, rarely establishes sufficient prejudice. Id. at 656-57; *see also* Nationwide Mut. Ins. Co. v. Starlight Ballroom, 175 Fed. Appx. 519, 523 (3d Cir. 2006) (citing same); Julaj v. Tau Assocs. LLC, 2013 U.S. Dist. LEXIS 125106, 2013 WL 4731751, at *4 (D.N.J. 2009) (vacating default because "the inconvenience and expense to a plaintiff of having to litigate on the merits do not rise to the level of prejudice required to satisfy [the] element").

Here, Plaintiff makes no argument as to prejudice. Moreover, I find that there is no indication of any loss of available evidence, potential fraud or collusion, or reliance upon the entry of default on the part of Plaintiff. What is more, vacating the entry of default will not cause significant delay in the proceedings as the claims against EIN Presswire have been pending and litigated. Accordingly, the Court concludes that Plaintiff will not be prejudiced by the setting aside of the entry of default.

Finally, I do not find that State Defendants' failure to respond was culpable. To find "culpable conduct" on the part of a non-responding defendant requires evidence of "willfulness" or "bad faith." Hritz, 732 F.2d at 1182. "[T]he words 'willfulness' and 'bad faith' are not talismanic incantations which alone resolve the issue . . . but rather are **[*15]** simply terms to guide the district court by expressing [the Third Circuit's] preference for avoiding default judgments where the circumstances do not justify such a result." Id. at 1182-83. A "[d]efendant is also presumed culpable where it has failed to answer, move, or otherwise respond." Slover v. Live Universe, Inc., No. 08-02645, 2009 U.S. Dist. LEXIS 17919, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) (citation omitted). Here, State Defendants responded with the instant cross-motion, and in their opposition briefing, asserted that the delay was attributable to a forwarding error. Specifically, State Defendants claim that they failed to respond to Plaintiff's complaint due to an administrative failure wherein "Plaintiff's electronic service email was not forwarded to the undersigned, so the undersigned was unaware that Plaintiff had properly served the State of New Jersey with Plaintiff's Complaint pursuant to Fed. R. Civ. P. 4(m)." (Def.s' Br. in Opp'n, pp. 16-17.) Further, the NJ Supreme Court's Order provided to Plaintiff did not permit the personal service on state employees via the NJAG Electronic Service email. (*See* Covid-19 Order, April 7, 2020.) Thus, the Court finds that Mr. McAleer was not properly served with Plaintiff's complaint. Notwithstanding, the State of New Jersey concedes that it was properly served pursuant **[*16]** to the NJ Supreme Court's Order. In any event, however, failure to respond as a result of a forwarding error certainly does not rise to "wilfulness" or "bad faith." Hritz, 732 F.2d at 1182. Accordingly, I conclude that State Defendants' failure to timely respond to Plaintiff's complaint was not culpable. In sum, I find all factors weigh in favor of denying Plaintiff's motion for default judgment against State Defendants, and vacate default.

**B. State of New Jersey**

**a.** Section 1983, 1985, **and** 1986 **Claims**

Plaintiff argues that State Defendants violated NJCCC's free speech rights under the First and Fifth

2022 U.S. Dist. LEXIS 145256, *16

Amendments pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, the New Jersey State Constitution, and the NJCRA. In response, the State of New Jersey argues that it is has sovereign immunity from these claims and the NJCRA claim. As such, the State of New Jersey contends that this Court lacks subject matter jurisdiction over these claims. I agree.

The Eleventh Amendment to the Constitution immunizes the States from certain claims in federal court: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. In general, the Eleventh Amendment bars citizens from [*17] bringing suits for damages against any state in federal court.[3] See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); Bennett v. City of Atl. City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003); see also Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); Edelman, 415 U.S. at 662-63.

Narrow exceptions to Eleventh Amendment immunity have arisen in the contexts of: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania, 271 F.3d 491, 503 (3d Cir. 2001). Although Congress has overridden a state's sovereign immunity in certain statutes, it did not do so when it enacted sections 1983, 1985, and 1986. See Quern v. Jordan, 440 U.S. 332, 342, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (barring section 1983 action because the Civil Rights Act of 1871 did not abrogate Eleventh Amendment immunity of states); Gary v. Pennsylvania Human Relations Comm'n, 497 Fed. Appx. 223, 228 (3d Cir. 2012) (sovereign immunity barred section 1985 claim against a state agency); Tucker v. Sebelius, No. 12-5900, 2013 U.S. Dist. LEXIS 162844, 2013 WL 6054552, at *7 (D.N.J. Nov. 15, 2013) (stating that the doctrine of sovereign immunity barred the plaintiff's section 1985 and 1986 claims); Muhammad v. Dempsey, No. 11-350, 2011 U.S. Dist. LEXIS 118867, 2011 WL 4905513, at *3 (M.D. Pa. Oct. 14, 2011) ("[T]he Supreme Court has rejected the idea that the Eleventh Amendment does not apply to § 1983, and this would logically apply to § 1985 as well, because both statutes are part of the Reconstruction Civil Rights Acts and were passed with the same congressional intent." (citation omitted)); Garcia v. Richard Stockton Coll. of New Jersey, 210 F. Supp. 2d 545, 550 (D.N.J. 2002) ("Nor has Congress expressly abrogated New Jersey's immunity from suit under § 1985(3). Therefore, New Jersey is immune from suit under that section." (citation omitted)). Moreover, New Jersey has not consented to be sued in federal court. For these reasons, the Court finds [*18] that Plaintiff's section 1983, 1985, and 1986 claims against the State of New Jersey are barred to the extent they seek monetary damages.

Nonetheless, Plaintiff also seeks injunctive relief under sections 1983-1986. However, Plaintiff's claims still fail against the State of New Jersey because states are not "persons" under sections 1983, 1985, or 1986. In Will v. Michigan Department of State Police, 491 U.S. 58, 65, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court held that "a State is not a person within the meaning of § 1983." A state is not a "person" that may be sued regardless of whether the State has waived immunity. See Garcia v. Richard Stockton Coll. of New Jersey, 210 F. Supp. 2d 545, 549 (D.N.J. 2002) (citing Will, 491 U.S. at 70-71). Further, the term "persons" in section 1983 has the same meaning under sections 1985 and 1986. See N.J. Sand Hill Band of Lenape & Cherokee Indians v. Corzine, 2010 U.S. Dist. LEXIS 66605, 2010 WL 2674565, at *6 (D.N.J. June 30, 2010) (finding that "persons" under § 1983 and § 1985 have the same meaning); Fontan v. City of Lancaster, No. 96-5653, 1998 U.S. Dist. LEXIS 18038, 1998 WL 967585, at *3 (E.D. Pa. Nov. 6, 1998) ("The term 'person,' as used in § 1983, has the same meaning as 'person' as used in §§ 1985 and 1986." (citation omitted)). Thus, because a state is not a "person" within the meaning of section 1983, and sections 1985 and 1986 both refer to persons, it follows that the State of New Jersey cannot be held liable as a "person" under any of these sections of the Civil Rights Act. See New Jersey Sand Hill Band of Lenape & Cherokee Indians, 2010 U.S. Dist. LEXIS

---

[3] Plaintiff argues that the Eleventh Amendment does not immunize states from suits brought by its own state. (Pl.'s Reply, p. 7.) However, it has long been established that states are immune from suits brought by their own citizens. See Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) ("[A]n unconsenting State is immune from suits brought in federal courts by her *own citizens* as well as citizens of another state.") (citations omitted) (emphasis added); Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 167 (3d Cir. 2002) ("As developed, the Eleventh Amendment provides states with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens.").

66605, 2010 WL 2674565, at *6 (finding that because the term "persons" has the same meaning in §§ 1983 and 1985, and states are not "persons" under § 1983, they cannot be liable under § 1985). These claims against the State of New Jersey are therefore dismissed because the State may not be sued under §§ 1983-1986.

**b. New [*19] Jersey Civil Rights Act**

In addition to bringing claims under 42. U.S.C. §§ 1983-1986, Plaintiff also brings a claim against the State of New Jersey under the NJCRA. Modeled after 42. U.S.C. § 1983, the NJCRA "creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions."[4] Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443-44. (D.N.J. 2011). Courts in this district have consistently construed the NJCRA in terms nearly identical to the Civil Rights Act. See Chapman v. New Jersey, No. 08-4130, 2009 U.S. Dist. LEXIS 75720, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009); Samoles v. Lacey Twp., No. 12-3066, 2014 U.S. Dist. LEXIS 79211, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) ("courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983") (internal quotations and citation omitted).

Because the NJCRA is modeled after § 1983 and does not otherwise expressly waive sovereign immunity, courts have found that New Jersey is similarly immune from suit under the NJCRA. See Brown v. State, 442 N.J. Super. 406, 426, 124 A.3d 243 (App. Div. 2015), rev'd on other grounds, 230 N.J. 84, 165 A.3d 735 (2017) ("likewise, because the State is not a 'person' under the Civil Rights Act, it is equally immune from suits from damages as it is for suits seeking injunctions and other equitable relief"); see also Didiano v. Balicki, 488 F. App'x 634, 638 (3d Cir. 2012) (rejecting the argument that "the word 'person' should be interpreted differently in the NJCRA context than in § 1983"); Baker v. Camarillo, 2018 U.S. Dist. LEXIS 38325, 2018 WL 1203473, at *3 (D.N.J. Mar. 8, 2018) ("As with § 1983, New Jersey state courts have held that the State, its agencies, and state officials in their official capacities are not 'persons' within the meaning of the [*20] NJCRA and are immune from suit."). Thus, in line with the reasoning set forth with respect to §§ 1983-1986, above, I find that the State of New Jersey is not a "person" within the meaning of the NJCRA. Therefore, I conclude that Plaintiff has failed to state a claim under the NJCRA against the State of New Jersey.

**C. Peter McAleer**

Plaintiff brings the same §§ 1983-1986 and NJCRA claims against Mr. McAleer.[5] Unlike the State of New Jersey, however, Plaintiff's claims against Mr. McAleer are not based on a theory of respondeat superior or vicarious liability. Rather, in its initial complaint, Plaintiff claimed that Mr. McAleer "had filed a complaint and ordered that [the press release] be retracted." (Compl. ¶ 7.) Plaintiff now alleges that EIN Presswire "received a complaint" by Mr. McAleer shortly after the publication of the press release and that the contact "caused the [sic] EIN Presswire to retract the press release." (Am. Compl. ¶¶ 35-36.) Additionally, Plaintiff claims that "[a]ccording to Jeremy Fields, the Vice President of EIN Presswire, [Mr. McAleer] [] threatened EIN Presswire with 'possible litigation' and other bad consequences if the press release were not retracted." (Id. ¶ 37.) Mr. McAleer responded [*21] that Plaintiff's initial complaint lacks sufficient allegations to state a claim against Mr. McAleer for a violation of Plaintiff's constitutional rights under §§ 1983-1986. Moreover, Plaintiff argued that Mr. McAleer is entitled to qualified immunity from suit. However, Mr. McAleer did not have the opportunity to address the additional allegations against him in the amended complaint as to the suppression claim. Thus, while I address the claims below, and find based on the allegations before me that Plaintiff has not stated section 1985 or 1986 claims, I will refrain from determining whether Plaintiff has adequately pleaded a section 1983 claim pending further briefing from Mr. McAleer and Plaintiff.

**a. Section 1983, 1985, and 1986 Claims**

To bring a § 1983 claim, a plaintiff must allege deprivation of a constitutional right by a person acting

---

[4] Although Plaintiff alleges a violation of constitutional rights to freedom of speech under the New Jersey State Constitution and the NJCRA separately in the complaint, I construe the New Jersey State Constitution claims as being brought under the Act.

[5] It is not clear whether Plaintiff brings these claims against Mr. McAleer in his official or individual capacity. To the extent they are brought in his official capacity, they are barred by sovereign immunity. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010). Thus, the Court construes the complaint as suing Mr. McAleer in his individual capacity.

under the color of state law. *Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011)*. The parties do not dispute that Mr. McAleer is a state actor. Therefore, the relevant inquiry before the Court is whether Plaintiff has alleged a deprivation of a constitutional right. Plaintiff argues that Mr. McAleer violated its right to freedom of speech under the *First* and *Fifth Amendments*[6] *of the Constitution*. This Court recently found in connection with EIN Presswire's previous motion to dismiss that Plaintiff **[*22]** alleged suppression of speech based on content. Specifically, I determined that by alleging that Mr. McAleer, a state actor, "ordered" the withdrawal of a press release titled "In Somerset Superior Court, Judge Reed Just Couldn't Stand Up to Judge Miller's Pressure in Deciding a Case," Plaintiff adequately stated a *First Amendment* suppression of speech claim. See *N.J. Chinese Cmty. Ctr. v. McAleer, No. 21-08320, 2022 U.S. Dist. LEXIS 88446, 2022 WL 1553334, at *5 (D.N.J. May 17, 2022)*. There, I found that suppression of a press release critical of a state judge is content-based suppression. As I explained previously, the government generally may not regulate content unless the regulation is narrowly drawn and serves a compelling interest, such as the protection of secrecy of information important to national security. See *Capitol Square Rev. & Advisory Bd. v. Pinette, 515 U.S. 753, 761, 115 S. Ct. 2440, 132 L. Ed. 2d 650 (1995)*; *Snepp v. United States, 444 U.S. 507, 510 n. 3, 100 S. Ct. 763, 62 L. Ed. 2d 704 (1980)*; *Brown v. Glines, 444 U.S. 348, 354, 100 S. Ct. 594, 62 L. Ed. 2d 540 (1980)*. Indeed, where material, such as the press release at issue in this case, is not properly classified information, the government may not censor it as it has no legitimate interest in precluding its publication. See *McGehee v. Casey, 718 F.2d 1137, 1141, 231 U.S. App. D.C. 99 (D.C. Cir. 1983)* (citing *United States v. Marchetti, 466 F.2d 1309, 1313 (4th Cir. 1972)*). Not only does it appear that the speech at issue is unclassified, but that it is speech that is critical of a state judge, also a public official. "The *First Amendment* guarantees an individual the right to speak freely, including the right to criticize the government and government officials." **[*23]** *Trulock v. Freeh, 275 F.3d 391, 404 (4th Cir. 2001)*. Thus, I found that by claiming that Mr. McAleer, a state actor, "filed a complaint and ordered" the retraction of speech critical of a public official, Plaintiff asserted the violation of a federal right. (Compl. ¶ 7.)

However, as discussed above, the amended complaint raises additional allegations that were not before the Court when it issued its decision on EIN Presswire's motion to dismiss. Indeed, the amended complaint does not state that Mr. McAleer "filed a complaint," but clarifies that EIN Presswire "received a complaint from by [sic] [Mr. McAleer]." (Am. Compl. ¶ 35.) Moreover, unlike the original complaint, the amended complaint does not allege that Mr. McAleer "ordered" the retraction of the press release. (Compl. ¶ 7.) Instead, the amended complaint claims that Mr. McAleer "threatened EIN Presswire with 'possible litigation' and other bad consequences if the press release were not retracted." (Am. Compl. ¶ 37.) In that regard, although the Court does not rely on the amended complaint in connection with this Motion to Dismiss, the Court does note that the allegations set forth in the amended complaint are materially different than those in the original complaint. And, although **[*24]** State Defendants responded to Plaintiff's original complaint, they did not have the opportunity to respond to the additional allegations in the amended complaint. Therefore, while the allegations as pleaded in the original complaint suffice to state a claim against Mr. McAleer, the Court declines to determine whether the new allegations constitute suppression at this juncture.

Mr. McAleer additionally claims that he is entitled to qualified immunity on Plaintiff's *First Amendment* claim. (Defs.' Br. in Opp'n, pp. 25-26.) Qualified immunity protects a government official from civil liability and suit "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*. Qualified immunity considers both "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)*. As such, qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)*.

Courts partake in a two-step analysis to evaluate qualified immunity defenses: "We first determine

---

[6] Plaintiff asserts that its rights to freedom of speech were also violated under the *Fifth Amendment*. (Compl., ¶ 11.) However, the right to freedom of speech does not arise under the *Fifth Amendment*, and Plaintiff has not alleged deprivation of any other right apart from freedom of speech. Accordingly, the Court does not construe Plaintiff to have asserted a *Fifth Amendment* claim.

Case 1:19-cv-20278-ESK-EAP   Document 225-18   Filed 11/21/25   Page 10 of 13
PageID: 1190

Page 9 of 12
2022 U.S. Dist. LEXIS 145256, *24

whether a [*25] right has been violated. If it has, we then must decide if the right at issue was clearly established when violated such that it would have been clear to a reasonable person that her conduct was unlawful." *Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 557 (3d Cir. 2017)*. "Courts are free to examine the two prongs of the qualified immunity analysis in either order. For efficiency, a court may elect to consider the 'clearly established' prong first because, if that prong is not satisfied, then qualified immunity applies." *Muth v. Woodring, 666 F. App'x 137, 139 (3d Cir. 2016)* (citations omitted).

"[T]he burden is on the defendants to establish they are entitled to qualified immunity." *E. D. v. Sharkey, 928 F.3d 299, 306 (3d Cir. 2019)*. "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *Id.*

As to the second prong, "[t]he inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Williams, 848 F.3d at 570*. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018)*. Stated simply, the rule must be "settled law." *Id.* A principle is settled law if it is dictated by "controlling [*26] authority" or a "consensus of cases of persuasive authority." *Id. at 589-90*. "It is not enough that the rule is suggested by then-existing precedent." *Id. at 590*. Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

The Third Circuit looks to the following courts to determine whether a right is clearly established: the Supreme Court, the Third Circuit, and its sister circuits. See *Porter v. Pa. Dep't of Corr., 974 F.3d 431, 449 (3d Cir. 2020)* ("[W]e look first for applicable Supreme Court precedent. If none exists, we consider whether there is a case of controlling authority in our jurisdiction or a robust consensus of cases of persuasive authority in the Courts of Appeals that could clearly establish a right for purposes of qualified immunity.") (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)* (internal citations, quotation marks, and alterations omitted)). The court may consider all relevant cases, not just those cited by the parties. See *Elder v. Holloway, 510 U.S. 510, 516, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994)*).

In the instant case, Mr. McAleer argues that (1) the original complaint lacks any factual allegations to state a claim against him for a violation of Plaintiff's rights to freedom of speech under the *First Amendment*, or to state a plausible claim for conspiracy against Mr. [*27] McAleer, and (2) assuming the existence of a cognizable claim, these rights were not clearly established at the time of the incident. (Defs.' Br. in Opp'n, pp. 25-26.) As discussed, *supra*, although the Court previously found that Plaintiff stated a plausible claim for suppression of speech critical of a state official in violation of the *First Amendment* based on limited allegations in its original complaint, the parties must now address whether a right has been violated considering the additional allegations. In addition, assuming, *arguendo*, that the additional allegations state a claim, Mr. McAleer must also examine whether the right is clearly established.

Mr. McAleer argues in a footnote that it was not "clearly established by any 'controlling authority' and no 'robust consensus of cases of persuasive authority' that [Mr. McAleer's] alleged actions of filing a complaint with EIN Presswire and directing a private company over whom he has no control, to retract a press release it had published/distributed, would violate Plaintiff's right to freedom of speech under the *First* or *Fifth Amendments*." (Defs.' Br. in Opp'n, p. 26, n. 8.) (quoting *Ashcroft v. al-Kidd, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)*). Aside from this single contention, Mr. McAleer does not sufficiently analyze [*28] whether there is any clearly established federal law that would have put him on notice that his conduct violated Plaintiff's rights. More problematically, Mr. McAleer defines the right at issue far too narrowly. At bottom, this is a case of alleged interference with speech critical of a state judge for allegedly failing to remain impartial.

In that regard, there are several cases that have established the right to criticize local officials. In *Hartman v. Moore*, the Supreme Court instructed that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the *First Amendment* prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)* (quoting *Crawford-El v. Britton, 523 U.S. 574, 588 n. 10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)*). Although *Hartman*

concerned a First Amendment retaliation claim, it nonetheless established the bedrock First Amendment right to speak critically of government officials. Moreover, multiple courts of appeals have also affirmed the right to criticize public officials.[7] *See, e.g.,* Blankenship v. Manchin, 471 F.3d 523, 533 (4th Cir. 2006) ("[I]t is clearly established that 'the First Amendment prohibits [a public official] from retaliating against an individual for speaking critically of the [*29] government.'") (quoting Trulock v. Freeh, 275 F.3d at 406); Jenkins v. Rock Hill Local Sch. Dist., 513 F.3d 580, 588 (6th Cir. 2008) ("[T]he right to criticize public officials is clearly protected by the First Amendment."); Bloch v. Ribar, 156 F.3d 673, 682 (6th Cir. 1998) (denying defendant's claim for qualified immunity because the "right to criticize public officials is clearly established and supported by ample case law") (quoting Barrett, 130 F.3d at 246).

In addition, the broader right to publish is unequivocally established. *See* Grosjean v. American Press Co., 297 U.S. 233, 250, 56 S. Ct. 444, 80 L. Ed. 660 (1936); New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) (noting that "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials"); Smith v. Daily Mail Pub. Co., 443 U.S. 97, 102, 99 S. Ct. 2667, 61 L. Ed. 2d 399 (1979) ("state action to punish the publication of truthful information seldom can satisfy constitutional standard"); First Amend. Coal. v. Jud. Inquiry & Rev. Bd., 784 F.2d 467, 472 (3d Cir. 1986) (instructing that "in most instances, publication may not be constitutionally prohibited").

Considering the additional allegations in the amended complaint, the Court directs Mr. McAleer to redefine the right at issue and discuss the law in the context of the allegations as now framed. In so doing, the Court reserves its decision on whether Mr. McAleer is entitled to invoke the defense of qualified immunity pending further briefing from both parties.

However, [*30] even as the allegations now stand in the amended complaint, the Court finds that Plaintiff has failed to state a claim against Mr. McAleer under §§ 1985 and 1986 of the Civil Rights Act. Sections 1985 and 1986 apply to civil rights conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 826, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983) (internal quotations and citation omitted). A plaintiff seeking to raise such a claim must allege (1) a conspiracy, with the purpose of depriving a person or class of persons of equal protection or privileges and immunities under the law, (2) an act in furtherance of that conspiracy, and (3) personal or property injury. Evans v. Gloucester Twp., 124 F. Supp. 3d 340, 354 (D.N.J. 2015).

Plaintiff's section 1985 and 1986 claims are not viable. First, Plaintiff fails to allege that Mr. McAleer conspired with at least one other entity or individual to deprive Plaintiff of its rights. Plaintiff's sole allegations concerning Mr. McAleer in its original complaint were that he "had filed a complaint and ordered that [the press release] be retracted," and "failed to provide any reason or cite any authority that empowered him to suppress the plaintiff's press release," despite repeated emails. (Compl., ¶¶ 7-8.) In Plaintiff's amended complaint, Plaintiff claims that "EIN Presswire [*31] . . . received a complaint from by [sic] [Mr. McAleer][,]" the contact "caused the [sic] EIN Presswire to retract the press release shortly after it was published," and Mr. McAleer had "threatened EIN Presswire with 'possible litigation' and other bad consequences if the press release were not retracted." (Am. Compl. ¶¶ 35-37.) As pleaded, these additional allegations are insufficient to show agreement or any concerted action in furtherance of an agreement necessary to state a conspiracy claim. *See* Shokirjoniy v. City of Clinton Twp., No. 18-08904, 2021 U.S. Dist. LEXIS 63045, 2021 WL 1207721, at *3 (D.N.J. Mar. 31, 2021) ("Civil rights conspiracies brought under § 1985 require a meeting of the minds, and to survive a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action.") (internal quotation marks and citations omitted). Even had Plaintiff alleged conspiracy, however, Plaintiff nonetheless fails to allege facts showing that the alleged conspiracy was motivated by racial animus. *See* Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006)

---

[7] Courts have treated state judges as public officials for the purposes of section 1983 First Amendment claims. *See, e.g.,* Huminski v. Corsones, 386 F.3d 116, 136 (2d Cir. 2004) (instructing that two state judges "would not, as a matter of law, be qualifiedly immune with respect to [plaintiff's] claim that they violated his First Amendment right to criticize public officials"); Barrett v. Harrington, 130 F.3d 246, 264 (6th Cir. 1997) (affirming district court's denial of state judge's request for immunity with respect to plaintiff's First Amendment retaliation claim because of clearly established right to "criticize public officials").

("claimant must allege some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirator's action in order to state a claim") (internal quotations and citations omitted) (emphasis in original); **[*32]** *Farrar v. McNesby, 639 F. App'x 903, 906 (3d Cir. 2016)* (finding that the district court had correctly dismissed plaintiff's section 1985 and 1986 claims where plaintiff had made no showing that defendants were motivated by racial animus). Although Plaintiff states that the press release was part of a fundraising campaign to raise awareness related to discrimination against the Asian American community, neither Plaintiff's complaint nor its amended complaint alleges that Mr. McAleer ordered the retraction of the press-release with the objective to deprive Asian Americans of their rights. (Compl., ¶ 9; Am Compl. ¶¶ 31-32, 41.) Rather, from the title of the press release, it appears that any alleged retraction of the press release was likely motivated by a concern for a state judge's reputation. Because Plaintiff has not alleged any facts showing conspiracy, let alone racially motivated conspiracy, NJCCC fails to state section 1985 and 1986 claims against Mr. McAleer. Accordingly, the section 1985 and 1986 claims are dismissed without prejudice.

**b. New Jersey Civil Rights Act**

Plaintiff also asserts a state constitutional claim under the NJCRA against Mr. McAleer. As discussed above, claims under the NJCRA are evaluated "through the lens of § 1983." *Trafton, 799 F. Supp. 2d at 444*. Thus, for the reasons expressed in connection **[*33]** with the section 1983 claim, I similarly decline to determine whether the new allegations constitute a suppression claim under the NJCRA at this time.

**IV. CONCLUSION**

For the foregoing reasons, State Defendants' motion to vacate default and cross-motion to dismiss is **GRANTED** in part and **DENIED** in part. State Defendants' motion to vacate default is **GRANTED**. State Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. All claims against the State of New Jersey are dismissed with prejudice. State Defendants' motion to dismiss as to the section 1985 and 1986 claims brought against Mr. McAleer is **GRANTED**. However, State Defendants' motion to dismiss as to the section 1983 and NJCRA claims brought against Mr. McAleer is **DENIED** without prejudice. Mr. McAleer and Plaintiff are directed to submit additional briefing addressing whether the additional allegations set forth in the amended complaint state a suppression of speech claim against Mr. McAleer under section 1983 and the NJCRA within 30 days of the accompanying Order.

**DATED**: August 15, 2022

/s/ Freda L. Wolfson

Hon. Freda L. Wolfson

U.S. Chief District Judge

**ORDER**

**THIS MATTER** having been opened to the Court upon a motion for default judgment by Cynthia M. Hwang, Esq., counsel for **[*34]** plaintiff New Jersey Chinese Community Center ("Plaintiff"); it appearing that defendants State of New Jersey and Peter McAleer (together "State Defendants"), by and through their counsel Ashley L. Costello, Esq., oppose the motion and cross move to vacate default and dismiss pursuant to *Fed. R. Civ. P. 12(b)(1)*, *12(b)(6)*, and *55(c)*; the Court having considered the submissions of the parties pursuant to *Federal Rule of Civil Procedure 78*, and for good cause shown,

**IT IS** on this 15th day of August, 2022:

**ORDERED** that Plaintiff's Motion for Default Judgment is **DENIED**; and it is further

**ORDERED** that State Defendants' Motion to Vacate Default is **GRANTED**; and it is further

**ORDERED** that State Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part: all claims are dismissed with prejudice to the extent they are brought against defendant State of New Jersey; section 1985 and 1986 claims brought against defendant Peter McAleer are dismissed without prejudice; State Defendants' Motion to Dismiss is **DENIED** without prejudice with respect to section 1983 and NJCRA claims brought against Peter McAleer; and it is further

**ORDERED** the parties are given leave to submit supplemental briefing within 30 days of this Order as to the adequacy of additional allegations in the amended complaint to **[*35]** state a suppression of speech claim under section 1983 and the NJCRA.

/s/ Freda L. Wolfson

Hon. Freda L. Wolfson

U.S. Chief District Judge

**End of Document**