**DECLERCQ LAW FIRM, PLLC**
300 Carnegie Center Dr, Suite 150
Princeton, NJ 08540
P: (609) 873-3148
Emily K. Declercq, Esq., NJ Attorney ID#: 100782017

**OF COUNSEL**
BLACKMON & BLACKMON, PLLC
907 W Peace St.
Canton, MS 39046
P: 601-859-1567 F: 601-859-2311
Edward Blackmon, Jr., Esquire, MS Attorney ID#: 3354
Barbara M. Blackmon, Esquire, MS Attorney ID#: 3346
Bradford J. Blackmon, Esquire, MS Attorney ID#: 104848

| | |
|---|---|
| BRANDON COPELAND<br>         Plaintiff,<br>vs.<br>POLIQUIN GROUP, a business entity, form unknown, POLIQUIN PERFORMANCE CENTER 2 LLC, CAROLEEN KANDEL A/K/A CAROLEEN KANEL A/K/A CAROLEEN JONES, an individual, JAD NUTRITION doing business as XTREME FORMULATIONS, a business entity, form unknown, TOTAL BODY NUTRITION LLC doing business as TBN LABS LLC, WE DO PRIVATE LABEL LLC, MICHIGAN ELITE CONDITIONING FOR ATHLETES LLC A/K/A MECA, JOHN DOES 1-30, ABC CORPORATIONS 1-30 and XYZ PARTNERSHIPS 1-30, unidentified individuals, corporations and partnerships (fictitious designations);<br>         Defendant(s). | Civ. No.: 1:19-cv-20278-ESK-EAP<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE UNAUTHORIZED APPEARANCES** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE UNAUTHORIZED APPEARANCES**

## PRELIMINARY STATEMENT

This motion presents a threshold and dispositive question: whether counsel who admit they have never communicated with their purported client, who were retained solely by an insurer that has now formally disclaimed coverage, may lawfully appear in this Court on behalf of a defaulted LLC. It is Plaintiff's position that they may not. Under federal law and New Jersey law governing attorney authority and representation of business entities, these appearances are unauthorized and must be stricken.

Defense counsel's own filings concede the dispositive fact: "We have never spoken to anyone at JAD." (ECF 218 at 2.) Counsel was appointed solely by Evanston Insurance Company ("Evanston"), and which, through a different law firm that never entered an appearance, has since issued a declination of coverage. Despite this, the originally appointed counsel continues to file substantive papers, including a motion to vacate default, without any demonstration of attorney-client communication or authority to act.

The procedural irregularities compound daily. These irregularities impair the Court's ability to supervise its docket, undermine the integrity of default procedures under Rule 55, and cause concrete prejudice to Plaintiff. They must be remedied immediately through the Court's inherent authority to regulate the conduct of attorneys and strike unauthorized appearances. Permitting insurer-appointed counsel to litigate on behalf of an entity they have never communicated with, at the direction of an insurer with no contractual relationship to the defense, would undermine both Rule 55's default procedures and the fundamental requirements governing attorney representation.

## STATEMENT OF FACTS

**A. Plaintiff's Early Challenges to Defense Counsel's Authority**

2

From the moment counsel first appeared in this matter claiming to represent JAD Nutrition, LLC, Plaintiff has consistently challenged their authority to do so. At the October 31, 2025 telephone conference, defense counsel carefully avoided directly answering whether JAD or the insurer was her client. She did not disclose that she had never spoken to anyone at JAD and had not been authorized to appear.

Plaintiff memorialized these authority concerns in writing on November 14, 2025 (ECF No. 216), explicitly stating that "the absence of any stated basis for defense or indemnity raises a threshold question as to counsel's authority under New Jersey law to appear for a defaulted LLC."

Only after persistent questioning did counsel finally acknowledge in her recent November 18, 2025 filing that she had "never spoken to anyone at JAD" and was "retained by the carrier."

**B. Procedural History of the Default Against JAD Nutrition**

JAD was served via the Minnesota Secretary of State on May 18, 2023 (ECF No. 99). Deposition testimony submitted with the default judgment motion indicated JAD was aware of the lawsuit. JAD never appeared; default was entered under Rule 55(a). See (ECF No. 153). Plaintiff moved for default judgment.(ECF No. 202). No appearance was made until the insurer belatedly learned of the case in October 2025.

**C. Hinshaw's Sudden Appearance Without Client Contact**

On October 22, 2025, attorney Rachel Nudel of Hinshaw & Culbertson suddenly filed a Notice of Appearance on behalf of JAD (ECF No. 205) and a motion for extension to review the docket (ECF No. 206). Unbeknownst to Plaintiff, Hinshaw's appearance on October 22,

3

2025 was based solely on insurer appointment. This appearance was not prompted by any communication from JAD itself, but rather by Evanston Insurance Company's belated discovery of this litigation through Plaintiff's October 11, 2025 correspondence. In subsequent filings, defense counsel made a series of remarkable admissions that underscore the absence of any legitimate attorney-client relationship:

- "We have never spoken to anyone at JAD." (ECF No. 218, at 2)
- "We understand that JAD is no longer in operation." (ECF No. 218, at 1)
- "[W]e have been unable to obtain contact with any representative of JAD." (ECF No. 218, at 2)
- "As defense counsel, the undersigned is not involved in [the coverage] investigation." (ECF No. 218, at 2)

Despite these admissions, counsel filed substantive pleadings on JAD's behalf, including opposition to Plaintiff's discovery requests and, most recently, a motion to vacate the default judgment (ECF No. 225).

### D. The Insurer's Declination Issued by an Entirely Different Law Firm

On November 20, 2025, Plaintiff received a letter via private email at 5:23 PM EST from an entirely different law firm, Meagher + Geer LLP, purporting to act on behalf of Evanston Insurance Company. This firm has never entered an appearance in this case. The letter, signed by attorneys Laura J. Hanson and Charles J.L. Jaskolski, was never properly filed with the Court through ECF.

Instead, on November 21, 2025, Ms. Nudel filed a brief letter (ECF No. 223) simply "advising" the Court that the declination letter had been sent to Plaintiff privately. Per Ms. Nudel's own admission in ECF No. 223: "We were advised that a copy of this letter was sent

4

yesterday to plaintiff's counsel via both regular mail and e-mail at 4:23 PM CST (5:23 PM EST.)" Notably:

- Meagher + Geer never appeared in the case
- The actual declination letter was not filed through ECF
- The letter was sent only via "regular mail and e-mail" per Ms. Nudel's admission
- No Certificate of Service was provided
- No L. Civ. R. 11.2 certification accompanied the submission
- The substantive coverage determination was made by attorneys who are not before this Court

This declination letter, from counsel who are complete strangers to this litigation, stated that Evanston "has determined that there is no insurance coverage available for JAD under the insurance policy." The declination references underwriting information concerning policy termination, successor or replacement coverage, and contract manufacturers (including Agropur), but the insurer has not produced the underwriting file or any materials supporting those conclusions.[1] Meanwhile, Hinshaw continues to purport to represent JAD despite the declination and despite confirming they have no client contact.

The procedural irregularities are striking: One law firm (Hinshaw) purports to represent a client it has never spoken to, while another law firm (Meagher + Geer) makes coverage determinations without proper certification and without appearing in the case, and then the first

---

[1] Plaintiff is not seeking insurance discovery through this motion; however, these omissions underscore that the Court cannot confirm the accuracy of the insurer's position or its authority to appoint defense counsel without access to the underlying underwriting information. Plaintiff reserves all rights, including the right to challenge the substance of the declination and any reservation-of-rights issues, at the appropriate time.

5

firm "advises" the Court about a letter that was never properly filed. This shell game of unauthorized representation violates basic principles of federal practice.

### E. The Insurer's Knowledge of No Coverage Weeks Before Disclosure

Notably, defense counsel's own exhibit filed with ECF No. 218 contains email correspondence dated November 4, 2025, in which the insurer's claims specialist believed no coverage existed. Despite this, for over two weeks counsel resisted providing a position, repeatedly stating the insurer was still "investigating" and denied that the Court had ordered production of the coverage position. The insurer then apparently waited until November 20 to issue its declination. Plaintiff was prejudiced by the delay and by the insurer's failure to act promptly or transparently, including having to advocate on the record for disclosure of the insurance coverage position that was ordered on October 31 while counsel opposed disclosure (ECF No. 216 and 219).

### F. Hinshaw Filed a Motion to Vacate Without Authority

On November 21, 2025, a second Hinshaw attorney, Ms. Villaverde, filed an appearance (ECF No. 221). Her practice profile indicates that she represents insurers, not insureds. She has likewise never communicated with JAD. The appearance compounds the unauthorized representation problem. Counsel then filed a motion to vacate the default judgment (ECF No. 225), all without any communication with or authorization from JAD.

### G. The Motion to Vacate Default Is a Nullity

The insurer-appointed counsel, despite having no client authority, filed a motion to vacate default on November 21, 2025 (ECF No. 225). This filing led to: (1) administrative termination of Plaintiff's motion for default judgment, and (2) referral of the motion to vacate to Magistrate Judge Pascal.

Because the movant lacked authority to represent JAD, the motion to vacate is void and must be stricken.

## ARGUMENT

I. **The Court has Inherent Authority to Strike Unauthorized Appearances and Must Do So to Preserve the Integrity of its Proceedings**

Federal courts have inherent authority to regulate attorney conduct and ensure that parties are legitimately represented. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (upholding a court's inherent power to sanction bad-faith conduct and manage its proceedings). Courts strike filings where counsel lack authority to represent the party and have the power to manage the docket. *See In re Sutter*, 543 F.2d 1030, 1033 (2d Cir. 1976) (affirming the court's power to manage its docket and impose costs on counsel).

The Third Circuit likewise recognizes the court's duty to police unauthorized representation, and the Federal Rules of Civil Procedure directly grant this authority. *See* Fed. R. Civ. P. 11(a) (mandating that unsigned papers be stricken unless promptly corrected. Moreover, Federal Rule of Civil Procedure 11(b) requires that every filing be signed by an attorney who certifies that "the claims, defenses, and other legal contentions are warranted." Fed. R. Civ. P. 11(b)(2). Counsel who have never communicated with their client cannot make this certification in good faith. They cannot know whether JAD has meritorious defenses, whether JAD disputes the facts alleged, or whether JAD even wishes to contest the default.

7

Here, counsel's admission of *zero client contact* is dispositive; this violates Federal Rules and the duty to communicate required by New Jersey Rule of Professional Conduct 1.4, and thus there is no attorney-client relationship at all.

## II. Counsel Cannot Represent an LLC Without Authorization from the Entity

### A. An LLC Cannot Appear without Authorized Counsel

It is black-letter law that a limited liability company cannot appear pro se in federal court and must be represented by licensed counsel duly authorized to do so. *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) (including internal citations to longstanding law that an entity must be represented by duly authorized licensed counsel).

An attorney appearing in federal court must have actual authority from the client. *See* L. Civ. R. 11.2 (requiring proper authorization by the person on whose behalf it is being filed). The District of New Jersey's commitment to ensuring proper authorization is embodied in Local Civil Rule 11.2, which requires verification and certification of authority in various filings. While this rule specifically addresses petitions and initial certifications, it reflects this Court's broader concern that parties appearing before it do so with proper authorization. See L. Civ. R. 11.2 (requiring statement of "authority for making" filings when verified by someone other than the party).

New Jersey Rules of Professional Conduct reinforce this point:

- RPC 1.2(a): A lawyer must abide by a client's decisions.
- RPC 1.4: Communication with the client is mandatory, not optional.

8

Counsel who have "never spoken to anyone at JAD" cannot satisfy these basic requirements and cannot possibly have such authority. An appearance without any client communication is not merely deficient, it is void ab initio.

### B. Representation Without Client Authorization Violates Fundamental Requirements

The requirement that a lawyer represent only actual clients with whom they have communicated is fundamental to the attorney-client relationship. New Jersey law mandates that "a lawyer shall abide by a client's decisions concerning the objectives of representation." N.J. RPC 1.2(a). This necessarily requires, at minimum, that an attorney have a client who has communicated those objectives. Here, counsel admits having "never spoken to anyone at JAD."

Similarly, the requirement of client communication is not merely aspirational but foundational to proper representation. *See* N.J. RPC 1.4. The complete absence of any communication between counsel and JAD fails to meet these basic requirements.

## III. An Insurer Without a Duty to Defend Cannot Control the Defense

New Jersey law is explicit: when an insurer denies coverage, it has no right to select counsel or control the insured's defense. *Burd v. Sussex Mut. Ins. Co.*, 56 N.J. 383, 390 (1970) ("When the carrier denies coverage, the insured selects its own attorney and assumes responsibility for its own defense.").

While the New Jersey cases addressing insurer control of defense typically involve situations where coverage exists, their principles illuminate why an insurer *without* any duty to defend cannot control litigation. In *Merchants Indem. Corp. v. Eggleston*, 37 N.J. 114, 126 (1962), the court held that even when coverage exists, "if a carrier wishes to control the defense and simultaneously reserve a right to dispute liability, it can only do so with the consent of the insured." Here, the situation is even more stark: Evanston has disclaimed any duty to defend

9

entirely, yet its appointed counsel continues to control JAD's defense without any consent from JAD, indeed, without ever speaking to JAD. If an insurer *with* a duty to defend cannot control the defense without the insured's consent under *Eggleston*, an insurer with *no* duty to defend cannot unilaterally control litigation through counsel who have never communicated with the purported client. The consent requirement recognized in *Griggs v. Bertram*, 88 N.J. 347, 356 (1982) and *Sneed v. Concord Ins. Co.*, 98 N.J. Super. 306, 320 (App. Div. 1967) assumes at minimum some communication between counsel and client.

Here, counsel admits having "never spoken to anyone at JAD" (ECF No. 218), making consent impossible. Because Evanston has purportedly disclaimed coverage through Meagher + Geer (even if improperly submitted), Hinshaw has *no legal right* to appear.

**IV.     The Procedural Issues Created by Multiple Unauthorized Firms Demonstrates the Need for Immediate Judicial Intervention**

The current situation is procedurally untenable. JAD Nutrition, a defaulted defendant that has never appeared, is supposedly being represented by:

1. Hinshaw & Culbertson attorneys who admit they have never spoken to JAD and were retained solely by an insurer;
2. Meagher + Geer attorneys who have never entered an appearance but made coverage determinations via private email rather than proper ECF filing;
3. No actual counsel with any demonstrated attorney-client relationship with JAD itself.

This shell game of unauthorized representation violates fundamental principles of federal practice. Meagher + Geer's transmission of the declination letter via private email, without appearing in the case and without providing the required L. Civ. R. 11.2 certification, is itself improper. The fact that Ms. Nudel then "advised" the Court about this private correspondence rather than properly filing it compounds the irregularity.

10

Respectfully, the Court should not permit its docket to be influenced by private emails between law firms, neither of which has authority to represent JAD. The Court should not make substantive determinations based on documents that were never properly filed or served through ECF.

**V.     Plaintiff is Substantially Prejudiced by the Continued Unauthorized Representation**

Plaintiff has suffered and continues to suffer actual prejudice. Plaintiff's default judgment motion was derailed by unauthorized filings. Delay affects judgment recovery, ability to locate assets, and ability to pursue veil-piercing or successor liability. Plaintiff has been forced to expend significant resources responding to counsel who lack a client. The insurer appears to have used "investigation" as a delaying tactic despite knowing coverage likely did not exist as early as November 4.

Plaintiff has also been compelled to participate in substantial motion practice in response to numerous unauthorized filings, including reviewing and analyzing multiple submissions from unauthorized counsel, attempting to decipher private correspondence between multiple law firms, preparing this motion and related papers and time spent in conference calls with counsel who lacked authority to participate.  Plaintiff was prepared to proceed with a straightforward default judgment motion in October 2025. The intervention of unauthorized counsel has transformed a simple default proceeding into complex motion practice involving multiple law firms, none with proper authority.

In addition, there is significant prejudice to judicial economy. The Court has already expended valuable judicial resources on conferences and orders related to these unauthorized appearances, including the October 31 conference and subsequent orders attempting to clarify the insurance situation. This is not speculative prejudice, these are concrete harms that have

11

already materialized and continue to accumulate. The prejudice is particularly acute given that the party benefiting from this delay is a defaulted defendant that has shown no interest in defending itself.

### VI. Plaintiff's Motion for Default Judgment Should be Reinstated

The Court's November 22, 2025 order administratively terminating Plaintiff's Motion for Default Judgment was necessarily premised on the position that the Motion to Vacate was properly before the Court. However, since the Motion to Vacate was filed by attorneys without authority to represent JAD, it is a nullity. The administrative termination should therefore be reversed and Plaintiff's Motion for Default Judgment reinstated.

### VII. The Recent Motion to Vacate Filed by Unauthorized Counsel Must be Stricken

On November 21, 2025, despite the insurer's formal declination of coverage (sent via private email) and counsel's admission of having no communication with JAD, Ms. Nudel filed a motion to vacate the default. This motion exemplifies the fundamental problem: attorneys with no client authorization are making substantive litigation decisions that profoundly affect JAD's interests and Plaintiff's rights.

This Court should not entertain motions from attorneys who admittedly have no relationship with their purported client, and especially on behalf of an insurer who claims it has no duty to defend or indemnify. To do so would be to permit a legal fiction that undermines both the requirements of proper representation and judicial integrity.

### VIII. Plaintiff Properly Reserves All Rights Regarding Future Coverage Issues

While this motion addresses only the threshold question of counsel's authority to appear, Plaintiff , ly reserves all rights, including but not limited to those regarding the insurance coverage issues (including whether the proffered "declination" was a reservation of rights),

12

including but not limited to challenges to the timing of the alleged contamination, the adequacy of the insurer's investigation, the refusal to provide additional insured coverage under other policies despite this apparently existing in the underwriting file and numerous court directives requiring production, umbrella and excess coverage issues, the completeness of the underwriting file and/or potential bad faith claims, including but not limited to awareness of additional insured information or coverage by related to Agropur, and to oppose the pending motion to vacate. These issues are not before the Court on this motion but may be relevant to subsequent proceedings or determinations and/or if properly authorized counsel appears for JAD.

## CONCLUSION

This is an extraordinary and undisputed circumstance: counsel is appearing in federal court with no client contact whatsoever and solely at the direction of an insurer that has now disclaimed coverage through a separate firm that has never appeared. The continued filings are unauthorized and prejudicial. The prejudice to Plaintiff from these unauthorized appearances is actual, ongoing, and mounting daily. Every filing from unauthorized counsel, every day of delay in obtaining judgment, and every effort spent responding to attorneys who lack legitimate authority compounds the harm. This prejudice is particularly egregious given that it benefits a defaulted defendant that has demonstrated no interest in participating in these proceedings despite deposition testimony indicating it was aware of suit.

This situation presents concerns that go beyond the immediate parties' interests. When attorneys appear in federal court claiming to represent an entity with whom they have admittedly never communicated, and when law firms make substantive determinations via private email without even appearing in the case, the integrity of the judicial process itself is implicated. The

13

Court has both the authority and, Plaintiff respectfully submits, the obligation to ensure that parties appearing before it are properly represented.

Plaintiff, therefore, respectfully requests that this Court strike the appearances, strike the motion to vacate, reinstate Plaintiff's motion for default judgment, and require sworn proof of authority before any future filings by any counsel purporting to represent JAD.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Strike the appearances of Rachel Nudel, Esq., April Villaverde, Esq., and the Hinshaw & Culbertson firm;

2. Strike the November 21, 2025 motion to vacate default as filed without authorization (ECF No. 225);

3. Disregard the privately-transmitted declination letter referenced in ECF No. 223;

4. Reinstate Plaintiff's Motion for Default Judgment (ECF No. 202);

5. Bar any counsel from appearing or filing any papers on behalf of JAD Nutrition, LLC unless and until they provide asworn declaration from an authorized representative of JAD confirming the retention or proof of a current duty to defend under an applicable insurance policy;

6. Direct that any future appearances on behalf of JAD comply with all applicable requirements and include certification of proper authorization; and

7. Grant such other and further relief as the Court deems just and proper, including any measures the Court may determine appropriate in the exercise of its inherent supervisory authority.

Respectfully submitted,

14

DECLERCQ LAW FIRM PLLC
BLACKMON & BLACKMON PLLC
*/s/ Emily K. Declercq*
Emily K. Declercq, Esq.
300 Carnegie Center Drive, Suite 150
Princeton, NJ 08540 (609) 873-3148
emily@declercqlawfirm.com
*Attorneys for Plaintiff*

Dated: November 25, 2025
