# MG MEAGHER+GEER®

**Minneapolis | Chicago | Dallas | Phoenix | Los Angeles | Bismarck**

Laura J. Hanson
Direct Dial: 612/347-9192
Direct Fax: 612/877-3085
Email: lhanson@meagher.com

Charles J.L. Jaskolski
Direct Dial: 312/801-5075
Email: cjaskolski@meagher.com

November 20, 2025

Declercq Law Firm, P.L.L.C
c/o Emily K. Declercq, Esq.
300 Carnegie Center Drive, Ste. 150
Princeton, NJ 08540
emily@declerqlawfirm.com

> Re:   *Brandon Copeland v. Poliquin Grp., et al.*
>       Case No. 1:19-cv-20278-ESK-EAP
>       Named Insured: JAD Nutrition d/b/a Extreme Formulations
>       Policy # SP878586
>       Claim No. 000-10-030686
>       M&G File No. 57173.00044

Dear Ms. Declerq:

This office has been retained as counsel in the above-described matter by Markel Service, Incorporated, as claim service manager for Evanston Insurance Company ("Evanston"). This matter arises out of the lawsuit filed by your client, Brandon Copeland ("Copeland"), styled *Brandon Copeland v. Poliquin Grp., et. al.*, Case No. 1:19-cv-20278-ESK-EAP, currently pending in the United States District Court for the District of New Jersey (the "Lawsuit"). The Lawsuit names JAD Nutrition d/b/a Xtreme Formulations ("JAD") as a named defendant. Evanston received its first notice of the Lawsuit via your office's correspondence dated October 11, 2025, received by Evanston on or about October 14, 2025.

Since first receiving notice of the Lawsuit on or about October 14, 2025, Evanston's insurance coverage investigation under a certain liability insurance policy Evanston issued to JAD incepting on April 10, 2017 has remained ongoing. In Plaintiff's letter dated October 11, 2025, Plaintiff requested that Evanston inform Plaintiff of Evanston's insurance coverage position in this matter in response to Plaintiff's submitted notice. In response to that October 11, 2025 correspondence, this letter is intended to inform Plaintiff that Evanston's insurance coverage investigation has concluded in this matter, and Evanston has determined that there is no insurance coverage available for JAD under the insurance policy Evanston issued JAD incepting on April 10, 2017. Specifically, the Evanston insurance policy's insuring agreement is not satisfied in this matter and therefore the insurance policy does not provide any insurance coverage. Additionally,

Declercq Law Firm, P.L.L.C.
c/o Emily K. Declercq, Esq.
November 20, 2025
Page 2

this letter should inform Plaintiff of Evanston's reservation of rights under other provisions of the insurance policy with respect to the Lawsuit. Evanston's coverage position is discussed in greater detail below.

## POLICY INFORMATION

Evanston issued JAD Nutrition DBA: Extreme Formulations the claims-made General Liability (Including Products/Completed Operations Liability) Insurance Policy No. SP878586 for the policy period of April 10, 2017 to April 10, 2018 (the "Policy"). The Policy is subject to a $2,000,000 "Each Occurrence" and Aggregate limit of liability, subject to a $5,000 deductible.

The Policy was cancelled effective November 30, 2017. Enclosed with this correspondence is a copy of the Policy's cancellation endorsement reflecting the date of the Policy's cancellation and Evanston's return of premium to JAD. JAD did not purchase any Extended Reporting Period at the time of the Policy's cancellation. Following the Policy's cancellation, Evanston did not issue any subsequent insurance policy(ies) to JAD.

## COVERAGE ANALYSIS: DISCLAIMER AND RESERVATION OF RIGHTS

Evanston has determined that the Policy does not provide JAD any insurance coverage for the Lawsuit because the Policy's potentially applicable insuring agreement is not satisfied. The Policy's Coverage A "Bodily Injury and Property Damage Liability" insuring agreement provides in pertinent part:

> The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage to which this insurance applies caused by an Occurrence, provided:
>
> 1. the entirety of such Bodily Injury or Property Damage and Occurrence happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and
>
> 2. such Bodily Injury or Property Damage arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.

****

As stated above, the Policy was cancelled effective November 30, 2017, and JAD did not purchase any extended reporting period. Relevant definitions of capitalized terms can be found in the Policy.

Declercq Law Firm, P.L.L.C.
c/o Emily K. Declercq, Esq.
November 20, 2025
Page 3

    Under the allegations set forth in the Lawsuit, the Policy's insuring agreement is not satisfied in this matter. Even to the extent the Lawsuit alleged "Bodily Injury" and/or "Property Damage" and an "Occurrence" (discussed *infra*), the Lawsuit alleges that Plaintiff Copeland first received the Yang R-ALA product in March of 2019 and that Plaintiff Copeland first consumed the Yang R-ALA product on April 1, 2019, over a year after the expiration of the Policy's Policy Period. Additionally, without conceding that service via the Office of the Minnesota Secretary of State was proper, according to the affidavit of service Plaintiff filed with the Court JAD was not served with a copy of the Lawsuit until May 2023, and Evanston was not provided notice of any claim against JAD until October 2025. As a result of the alleged timing of Plaintiff Copeland's procurement and consumption of the Yang R-ALA substance, there was no "Claim" made against JAD within the Policy's Policy Period, as the Policy's insuring agreement requires for insurance coverage to exist. As a result, Evanston has disclaimed insurance coverage to JAD for the Lawsuit on the basis that the Policy's insuring agreement is not satisfied.

    In addition to the foregoing, Evanston has reserved its rights to disclaim insurance coverage under several provisions of the Policy as discussed in greater detail below. Please be advised that Evanston reserves its rights to rely upon any provision of the Policy, and any other defenses to insurance coverage authorized under controlling law, whether or not expressly discussed in this letter.

    First, the Policy's insuring agreement only applies to "Bodily Injury or Property Damage to which this insurance applies caused by an Occurrence", subject to the Policy's other terms, exclusions, conditions, and limitations, with the term "Occurrence" being defined in pertinent part as an "accident including continuous or repeated exposure to substantially the same general harmful conditions." The Lawsuit alleges in various places that Defendants, including JAD, acted with intent to add Ostarine, an unlabeled PES into the Yang R-ALA product, and intent to deceive potential consumers, including Plaintiff Copeland, regarding the actual ingredients contained within the Yang R-ALA product. To the extent that JAD's actions and/or the effects of those actions were intentional, rather than accidental, in nature, there is no "Occurrence" as that term is defined in the Policy. Additionally, the Policy defines the term "Bodily Injury" in pertinent part as "bodily injury, sickness, or disease sustained by a person…"…" and defines the term "Property Damage" in pertinent part as "physical injury to or destruction of tangible property, including consequential loss of use thereof" or "loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence." The Lawsuit alleges that as a result of ingesting the PES contained in the Yang R-ALA product, Plaintiff failed his NFL-mandated drug test and suffered various economic losses, including loss of income, benefits, and injury to Plaintiff's reputation. To the extent that the Lawsuit alleges purely economic injury, rather than injury because of "bodily injury" and/or "property damage", the Policy's insuring agreement is not satisfied. Therefore, Evanston has reserved its rights to disclaim insurance coverage to the extent that the Policy's insuring agreement is not satisfied in this matter.

Declercq Law Firm, P.L.L.C.
c/o Emily K. Declercq, Esq.
November 20, 2025
Page 4

Second, the Policy's insuring agreement only applies to "all sums… the Insured shall become legally obligated to pay as Damages…", subject to the Policy's other terms, exclusions, conditions, and limitations, with the term "Damages" defines in pertinent part as "shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of restitution of fees, profits or charges for services rendered". At various points, the Lawsuit alleges that Plaintiff Copeland is entitled to "trebled compensatory damages," including specifically "treble the monetary loss suffered by Plaintiff," and "punitive damages". Therefore, Evanston has reserved its rights to disclaim insurance coverage to the extent that the Lawsuit seeks damages that do not meet the Policy's definition of "Damages".

Third, the Policy contains Exclusion 15 that bars insurance coverage for "any Claim based upon or arising out of any products or goods manufactured, sold, handled, or distributed or work completed by the Insured or by others operating under the direction or control of the Insured in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof." The Lawsuit alleges in Counts I through III that the named Defendants, including JAD, violated certain provisions of the New Jersey Consumer Fraud Act, in addition to alleging more generally that Defendants' "sale of Yang R-ALA was illegal per Federal and New Jersey law because it contained Ostarine." Therefore, Evanston has reserved its rights to disclaim insurance coverage for JAD's liability, if any, arising out of the Lawsuit on the basis that Exclusion 15 applies.

Fourth, by endorsement, the Policy contains the exclusion entitled "Designated Ingredients" that bars insurance coverage in pertinent part for "claims arising from the importation, manufacture, distribution, sale, use or ingestion of the following, whether as the primary ingredient or in combination with other ingredients or as a synthetic or cloned version, and whether marketed under the name(s)" of certain substances, including but not limited to "[n]atural anabolic steroids; synthetic anabolic steroids." The Lawsuit alleges at points that JAD's alleged product Yang R-ALA was "tainted with the steroid ostarine." (¶ 43). Therefore, Evanston has reserved its rights to disclaim insurance coverage to the extent that Ostarine constitutes a "steroid", or any other substance and/or ingredient designated within the "Designated Ingredients" exclusion.

Fifth, the Policy contains Exclusion 1 that bars insurance coverage in pertinent part for "any Claim based upon or arising out of Bodily Injury… expected or intended from the standpoint of the Insured…" The Lawsuit alleges in various places that Defendants, including JAD, acted with intent to add Ostarine, an unlabeled PES into the Yang R-ALA product, and intent to deceive potential consumers, including Plaintiff Copeland, regarding the actual ingredients contained within the Yang R-ALA product. Therefore, Evanston has reserved its rights to disclaim insurance coverage to the extent that JAD's acts and/or omissions alleged in the Lawsuit were intentional, rather than accidental, in nature and thereby Exclusion 1 applies to bar insurance coverage.

Declercq Law Firm, P.L.L.C.
c/o Emily K. Declercq, Esq.
November 20, 2025
Page 5

Finally, insurance coverage under the Policy is conditioned upon JAD's satisfaction of the Policy's various conditions. The Lawsuit was allegedly served on JAD with a copy of the summons and complaint in the Lawsuit on May 18, 2023 via the Office of the Minnesota Secretary of State. While Evanston does not concede nor imply any agreement that service onto JAD via the Office of the Minnesota Secretary of State was proper, Evanston did not receive any notice of the Lawsuit, or more generally any claim related to the Lawsuit, until Evanston received the correspondence dated October 11, 2025 from Plaintiff Copeland's counsel directly. Therefore, Evanston has reserved its rights to disclaim insurance coverage to the extent that the Policy's "Claims Reporting" and "Assistance and Cooperation of the Insured" conditions have not been complied with in this matter.

## CONCLUSION

As stated above, Evanston has disclaimed insurance coverage for JAD on the basis that the Policy's insuring agreement is not satisfied. As a result, Plaintiff should be aware that there is no insurance coverage under Evanston's Policy for any judgment obtained against JAD in the Lawsuit. Additionally, Evanston has reserved its rights to disclaim insurance coverage to JAD under several other Policy provisions that may be applicable to bar insurance coverage for the Lawsuit. Specifically, Evanston has reserved its rights to disclaim insurance coverage to the extent that the Policy's insuring agreement is not satisfied for want of "Bodily Injury" and/or "Property Damage" and an "Occurrence", to the extent that the Lawsuit seeks entitlement to trebled, punitive, or other damages that do not satisfy the Policy's definition of "Damages", to the extent that Exclusions 1, 15, and "Designated Ingredients" exclusion apply, and to the extent that the Policy's "Claim Reporting" and "Assistance and Cooperation of the Insured" conditions have not been satisfied.

Finally, please be advised that Evanston fully reserves all of its rights under any insurance policy or at law. No action or undertaking by Evanston in the investigation, handling or adjusting of any claims shall be construed as a waiver of any past, present, or future rights of Evanston. No such action or undertaking by Evanston shall be construed to create, enlarge, or extend coverage, nor shall it be considered a waiver of any breach of the provisions, terms, exclusions, or conditions of any policy under which coverage is sought. Evanston's investigation on behalf of Evanson of this matter should not be construed as a waiver of any insurance coverage position. Evanston reserves all of its rights.

Sincerely,

Laura J. Hanson
Charles J.L. Jaskolski

LJH/CJ:jap
Cc: Hinshaw & Culbertson, LLP, c/o Rachel Nudel, rnudel@hinshawlaw.com (*via e-mail only*)
Encl.: 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 1

| POLICY NUMBER<br>SP878586 | POLICY CHANGES EFFECTIVE<br>11/30/2017 | COMPANY<br>Evanston Insurance Company |
|---|---|---|
| NAMED INSURED<br>JAD NUTRITION DBA: EXTREME FORMULATIONS | | AUTHORIZED REPRESENTATIVE<br>RPS Scobie Group - Minnesota<br>6625 W 78th St. Ste. 210<br>Bloomington, MN  55439 |

COVERAGE PARTS AFFECTED

GENERAL LIABILITY (INCLUDING PRODUCTS/COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

CHANGES

**ADDITION OF ENDORSEMENT**

In consideration of the return premium, it is hereby understood and agreed that CANCELLATION OF ADJUSTABLE PREMIUM POLICY, ZZ-46017-01, is being added as attached effective as of the date stated above.

All other terms and conditions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE



POLICY NUMBER: SP878586

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CANCELLATION OF ADJUSTABLE PREMIUM POLICY

In consideration of the return premium specified below, it is hereby understood and agreed that this policy is cancelled pro-rata, effective:

November 30, 2017

Return Premium:        $2,153.00

Is further understood and agreed that Item 9. of the Declarations, Premium for Policy Period, is amended as follows:

9. Premium for Policy Period:

Minimum:       $3,847.00
Deposit:        $3,847.00

All other terms and conditions remain unchanged.

**ZZ-46017-01**                                                                                                    **Page 1 of 1**