Rachel Nudel
**HINSHAW & CULBERTSON LLP**
111 Wood Avenue South
Suite 210
Iselin, NJ 08830
Tel: 908-292-0018
rnudel@hinshawlaw.com
*Attorneys for Defendant*
*JAD Nutrition d/b/a*
*Xtreme Formulations*

# UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| BRANDON COPELAND, *Plaintiff,* v. POLIQUIN GROUP, a business entity, form unknown, POLIQUIN PERFORMANCE CENTER 2 LLC, CAROLEEN KANDEL A/K/A CAROLEEN KANEL A/K/A CAROLEEN JONES, an individual, JAD NUTRITION doing business as XTREME FORMULATIONS, a business entity, form unknown, TOTAL BODY NUTRITION LLC, WE DO PRIVATE LABEL LLC, MICHIGAN ELITE CONDITIONING FOR ATHLETES LLC a/k/a MECA, JOHN DOES 1-30, ABC CORPORATIONS 1-30 and XYZ PARTNERSHIPS 1-30, unidentified individuals, corporations and partnerships (fictitious designations); *Defendants.* | Civil Action No.: 1:19-cv-20278 **DECLARATION OF RACHEL NUDEL IN SUPPORT OF MOTION TO WITHDRAW AS COUNSEL** |

I, Rachel Nudel, pursuant to 28 U.S.C. § 1746, hereby declare under the penalties of perjury that the following it true and correct:

1. I am an attorney at law of the State of New Jersey and am admitted to practice before this Court. I am also a partner with Hinshaw & Culbertson LLP, defending JAD Nutrition, LLC d/b/a Xtreme Formulations ("JAD") in this lawsuit. As such, I am fully familiar with the facts and circumstances at issues in this litigation and set forth below.

2. This Declaration is being submitted in support of the instant motion of Rachel Nudel, Esq., April Villaverde, Esq. and Hinshaw & Culbertson, LLP to withdraw as counsel for JAD.

3. This firm was retained by Evanston Insurance Company ("EIC") on or about October 22, 2025 as defense counsel to represent the interests of JAD in this matter.

4. Specifically, this representation precipitated an emergent request by EIC to address an application by plaintiff's counsel via their motion for a default judgment against JAD (Dkt. 202). EIC was advised via email from plaintiff's counsel on or about October 14, 2025.

5. When this firm was notified of this lawsuit, Plaintiff's motion for a default judgment against JAD was returnable on November 3, 2025, and the

deadline to timely oppose Plaintiff's motion already passed as had the time to move to vacate the default .

6. On that same day the undersigned filed a Notice of Appearance in this matter on behalf of JAD. A copy of the Notice of Appearance was filed under Dkt. No. 205.

7. On the same day, the undersigned called plaintiff's counsel Emily Declercq, Esq. and explained that we were retained by EIC to represent defendant JAD. The undersigned requested that plaintiff's counsel withdraw the motion for a default judgment or, alternatively, to carry their pending motion to December 18, 2025. The undersigned also sent an email memorializing the request. A copy of the email is annexed hereto as **Exhibit A**.

8. Plaintiff's counsel responded that they would not agree to vacate the default as against JAD but agreed to a 2-week adjournment of their motion to November 17, 2025. Plaintiff also followed up on her request for insurance information. The undersigned again reiterated that the November 17, 2025 motion date would not be feasible in light of the extensive docket and renewed the request to carry the motion to December 17, 2025. A copy of the further email exchange is annexed hereto as **Exhibit B.**

9. When plaintiff's counsel did not consent to this request, the undersigned filed a motion for an extension of time (Dkt. 206; 209.) Plaintiff's

counsel filed opposition to the application (Dkt. No. 207.) The Court granted the undersigned's request to adjourn the plaintiff's motion for a Default Judgment against JAD to the December 15, 2025 motion cycle (Dkt. No. 210.)

9. Thereafter, plaintiff's counsel made several applications with the court requesting insurance coverage information (Dkt. Nos. 211, 216, 219 and 222), which required multiple written responses from the undersigned (Dkt Nos. 212, 215, 218, 220 and 223.)

10. Additionally, the undersigned was required to appear for a telephonic Conference before the Court on October 31, 2025 and to provide certain responses (Dkt. Nos. 215; 218) to the Court's subsequent Orders (Dkt. 214; 217 and 218.)

11. Upon assignment of this matter, the undersigned (and EIC) endeavored to locate a representative of JAD.

12. In attempting to do so, the undersigned reviewed the Minnesota Secretary of State web site for the entity, according to which it was noted to be an inactive business entity that was "administratively terminated on 2/27/24." A copy of the Minnesota Secretary of State Web Site printout is annexed hereto as **Exhibit C.**

13. The undersigned also reached out via telephone to the number listed for JAD and an individual for an General Home Healthcare, an entirely unrelated entity answered the telephone and indicated that this was not the telephone number

for JAD and that they did not know of JAD.

14. Similarly, an internet search for "JAD Nutrition" noting JAD's address and telephone number note that the business is "permanently closed." A copy of the internet directory printout is annexed hereto as **Exhibit D**.

15. By way of continued attempt to identify and locate a contact for JAD, on November 4, 2025, the undersigned reached out via both telephone and email to JAD's last-known landlord, First & First. The landlord replied that they did not have any information for JAD and that they appeared to have vacated the property in or around 2015. A copy of the e-mail exchange with the landlord is annexed hereto as **Exhibit E.**

16. Not having located a contact for JAD despite numerous calls, emails and correspondence, the undersigned also conducted additional internet research and came across a public message board that contained a thread from April 2017 about the status of JAD. A poster on the thread by the handle "Rob1882" stated that as of April 2017, that JAD had been sold and under new ownership with one of the owners being Dave Ostlund ("the strongman") and the other Jeff Peterson. A copy of the message board thread is annexed hereto as **Exhibit F** at page 2. A subsequent posting on the same message board from December 25, 2019 by user "tokosh19" states "Old thread bump. They have closed," presumably referring to JAD. *See Id.* at p. 11.

17. While a search for Jeff Peterson yielded no relevant results, a further search for an email address for David Ostlund lead to a public Wikipedia page, which contained a link to a public FaceBook account for Mr. Ostlund. While the Facebook page shows no activity since January 2017, it did contain an email address. A copy of the FaceBook page (with identifiable photos of children redacted) is annexed as **Exhibit G.**

18. On November 4, 2025, the undersigned sent an email to the email address listed on the FaceBook page.[1] To date, there has been no response to this correspondence.

19. EIC and its coverage counsel also attempted to locate JAD and its principals.

20. Searching further, the undersigned came across a Dave Ostland with Baker Management, in Minneapolis through an online search. While this was a different spelling and it was unclear if this was the same individual, on November 12, 2025, the undersigned called the telephone number listed for Baker Management and left a message for a Dave Ostland, but never received a return call.

---

[1] While the letter sent to the email address is a privileged attorney-client communication and will therefore not be e-filed as part of this motion, we can provide a copy to the Court for *in camera* inspection.

21. On November 14, 2025, the undersigned was informed by EIC that they would be issuing a denial of coverage to JAD and that they would be providing the basis for that denial to plaintiff's counsel.

22. In the late afternoon/early evening of November 20, 2025, the undersigned received a copy of the letter sent to plaintiff's counsel by Meagher & Geer, coverage counsel in this matter for EIC advising that there is no insurance coverage available for JAD under the April 10, 2017 Policy. A copy of this this letter was previously filed by plaintiff's counsel under Dkt. No. 227- 3.

23. On November 21, 2025, the undersigned filed a motion to vacate the default judgment against JAD (Dkt. No. 225,) which was the last day pursuant to L. Civ. R. 78.1(a) to file said motion.

24. As more fully set forth in the accompanying brief, without a client contact we cannot continue with this representation as we are unable to ascertain any information that would be necessary to defend the substantive claims and allegations asserted by plaintiff.

25. Additionally, without a witness or client contact with institutional knowledge necessary to address and defend plaintiff's claims, we will not be able to proceed with discovery, provide any written discovery responses or produce a witness for deposition.

26. All of these factors make continued representation and defense of JAD untenable.

27. Finally, as there is no insurance coverage for JAD through EIC, denial of the instant motion may result in a hardship to this firm if we are required to continue with this representation .

Cases

28. A true copy of *Deslo v. Trustees for Ret. Plan for Hourly Employees of Merck & Co., Inc.,* C.A. No. 04-3009 (AET), 2007 U.S. Dist. LEXIS 16643 (D.N.J. March 6, 2007) is annexed hereto as **Exhibit H.**

29. A true copy of *Ramada Worldwide Inc. v. NPR Hospitality, Inc.* C.A. No. 06-4966 (WHW), 2008 U.S. Dist. LEXIS 3161 (D.N.J January 16, 2008.) is annexed hereto as **Exhibit I**.

I declare that the foregoing is true and correct under penalty of perjury.

Respectfully submitted,
**HINSHAW & CULBERTSON LLP**
*Attorneys for Defendant JAD Nutrition, LLC d/b/a Xtreme Formulations*

By: /s/ R. Nudel
Rachel Nudel, Esq.  (RN 8552)
HINSHAW & CULBERTSON LLP
111 Wood Avenue South, Suite 210
Iselin, NJ 08830
Tel: 908-292-0018

December 12, 2025            rnudel@hinshawlaw.com