**DECLERCQ LAW FIRM, PLLC**
300 Carnegie Center Dr, Suite 150
Princeton, NJ 08540
P: (609) 873-3148
Emily K. Declercq, Esq., NJ Attorney ID#: 100782017

**OF COUNSEL**
**BLACKMON & BLACKMON, PLLC**
907 W Peace St.
Canton, MS 39046
P: 601-859-1567 F: 601-859-2311
Edward Blackmon, Jr., Esquire, MS Attorney ID#: 3354
Barbara M. Blackmon, Esquire, MS Attorney ID#: 3346
Bradford J. Blackmon, Esquire, MS Attorney ID#: 104848

| | |
|---|---|
| BRANDON COPELAND<br><br>Plaintiff,<br>vs.<br>JAD NUTRITION LLC doing business as XTREME FORMULATIONS, a business entity;<br><br>Defendant(s). | Civ. No. : 1:19-cv-20278-ESK-EAP<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JAD NUTRITION L.L.C. D/B/A XTREME FORMULATIONS** |

.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JAD NUTRITION
L.L.C. D/B/A XTREME FORMULATIONS**

## I. INTRODUCTION

Plaintiff Brandon Copeland respectfully submits this renewed motion based on the Clerk's entry of default dated February 2, 2026, following the Court's December 30, 2025 Order clarifying JAD Nutrition, LLC's obligation to appear through counsel. Plaintiff submits this memorandum of law in support of his motion for default judgment against Defendant JAD Nutrition L.L.C. d/b/a Xtreme Formulations ("JAD" or "Defendant"). This case presents a straightforward application of New Jersey's strict liability framework for misbranded food products. The undisputed evidence establishes that JAD manufactured and distributed dietary supplements contaminated with Ostarine, a prohibited selective androgen receptor modulator. When Mr. Copeland unknowingly consumed this contaminated product, it triggered a cascade of professional consequences that destroyed years of NFL achievement and resulted in $1,797,902.85 of lost compensation, bonuses, and endorsements.

JAD was properly served with process but apparently chose not to defend this action, as correspondence submitted by another defendant indicates that JAD may have been aware of this suit, yet JAD has never appeared in these proceedings. The Clerk has entered default, and this Court may now consider the merits of Plaintiff's claims and the measure of damages warranted by the evidence.

## II. PROCEDURAL HISTORY

JAD Nutrition was properly re-served with the operative Complaint on January 8, 2026 pursuant to Minn. Stat. § 322C.0116, as reflected in the Secretary of State's Service of Process Acknowledgment filed on January 12, 2026 (ECF No. 250) and after months of attempted service at the company's known addresses. Despite proper service, JAD failed to file an answer, or any responsive pleading, within the time prescribed by the Federal Rules of Civil Procedure. Upon Plaintiff's application, the Clerk of Court entered default against JAD on February 2, 2026 pursuant to Fed. R. Civ. P. 55(a). Plaintiff now moves for entry of default judgment pursuant to Fed. R. Civ. P. 55(b)(2).

### III. FACTUAL BACKGROUND

Upon entry of default, the Court accepts as true all well-pleaded factual allegations in the Complaint, except those relating to damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The Court may also consider evidence submitted in support of damages and liability. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008). The following facts are therefore established:

### A. JAD's Manufacturing, Labeling, and Distribution of the Contaminated Supplement

The documentary evidence definitively establishes JAD's control over the contaminated supplements. An invoice dated April 4, 2019 (Exhibit D) demonstrates that JAD sold Yang R-ALA bearing Lot #C04081910 directly into the distribution chain. This was confirmed again in a December 21, 2021 email (Exhibit D) that JAD manufactured Lot #C12111810 on December 13, 2018 and labeled and distributed it thereafter.

The deposition testimony of Caroleen Kandel, taken under oath on April 29, 2024, provides crucial admissions about JAD's central role. Ms. Kandel testified that she "placed the purchase order with JAD" (Exhibit C-2, Dep. 48:19). She further confirmed that JAD applied all product labels and put the labels on the bottles that were sold to consumers (Exhibit C-2, Dep. 45:5-8). When asked specifically who she relied upon for quality control, her answer was unequivocal: "JAD" (Exhibit C-2, Dep. 58:15).

### B. Laboratory Confirmation of Contamination

The presence of Ostarine in JAD's product is not a matter of dispute; it is a scientific fact confirmed by three independent laboratories.

First, on June 14, 2019, AEGIS Sciences Corporation, the official testing laboratory of the NFL Players Association, analyzed Mr. Copeland's actual supplement and found it "POSITIVE for ostarine at approximately 3.5 ppm" (Exhibit B-1).

Second, to eliminate any possibility of tampering or isolated contamination, AEGIS independently purchased and tested a sealed bottle of the same product. Their August 6, 2019 report confirmed the contamination, finding the product "POSITIVE for ostarine at a threshold <1 ppm" (Exhibit B-2).

Third, even Defendant's co-party commissioned its own testing through BSCG Laboratories, which reported on August 28, 2019 that "Ostarine was identified in the item at 4.5 ng/g" (Exhibit B-3).

Ms. Kandel acknowledged under oath that "you have three tests positive" (Exhibit C-2, Dep. 133:10-11).

### C. The Devastating Impact on Mr. Copeland's Career

In April 2019, Mr. Copeland was a rising NFL linebacker for the New York Jets, having worked his entire life to achieve professional football success. He maintained strict dietary and training regimens, carefully selecting supplements to support his performance while complying with NFL regulations. When he consumed Yang R-ALA, he had no knowledge it contained any prohibited substances, and the product label gave no such indication.

The positive test result triggered an automatic four-game suspension without pay under the NFL's strict liability drug policy. But the consequences extended far beyond those four games. As detailed in Mr. Copeland's certification (Exhibit A), he lost not only his weekly

compensation for five weeks, but also signing bonuses, roster bonuses, and retirement contributions totaling over $1.5 million. His endorsement deals were terminated. He incurred thousands in expenses attempting to appeal and address the suspension. The total documented losses amount to $1,797,902.85.

## IV. LEGAL STANDARD FOR DEFAULT JUDGMENT

The Third Circuit has established a three-factor test for determining whether default judgment should be entered: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

While the Court must accept well-pleaded allegations as true, it retains discretion to require proof of damages. *Chanel, Inc.*, 558 F. Supp. 2d at 536. The Court "must make its own determination" regarding damages and "may conduct a hearing to determine the amount." *Comdyne I*, 908 F.2d at 1149.

## V. LIABILITY IS ESTABLISHED AS A MATTER OF LAW

### A. The New Jersey Consumer Fraud Act Imposes Strict Liability

The New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 et seq., provides broad protection against deceptive commercial practices. The Act prohibits:

"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise..." N.J.S.A. 56:8-2.

Critically, the New Jersey Supreme Court has held that violations of other consumer protection statutes constitute per se violations of the CFA. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994). This includes violations of New Jersey's food and drug laws.

### B. Misbranded Food Products Trigger Per Se Liability

Under New Jersey's Food and Drug Act, N.J.S.A. 24:1-1 et seq., a food product is "misbranded" if "its labeling is false or misleading in any particular" or if it fails to bear required information. N.J.S.A. 24:5-1. Federal regulations incorporated by New Jersey law require dietary supplements to list all ingredients. 21 C.F.R. § 101.4.

The presence of an undisclosed pharmaceutical compound in a dietary supplement renders it misbranded as a matter of law. This is not a question of negligence or intent, it is strict liability. As the New Jersey Supreme Court explained in *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 474 (1988), the CFA "does not require proof of reliance, that defendants intended to commit an unlawful act, or that defendants acted in bad faith."

Here, the undisputed evidence establishes:

- Yang R-ALA contained Ostarine (Exhibits B-1, B-2, B-3)
- The label did not disclose Ostarine as an ingredient
- JAD manufactured and labeled the product (Exhibits C, D)

These facts alone establish liability. The product was misbranded. Misbranding violates the Food and Drug Act. That violation constitutes a per se violation of the Consumer Fraud Act. Liability follows automatically.

### C. Additional Causes of Action

By virtue of its default, JAD has also admitted liability for all causes of action asserted against JAD in the Complaint, including breach of express and implied warranties, and

6

negligence, as alleged in the Complaint. A manufacturer impliedly warrants that its products are merchantable and fit for ordinary use. A dietary supplement containing undisclosed drugs is neither. JAD's conduct also constitutes negligence per se based on the statutory violations established above.

## VI. DAMAGES ARE FULLY DOCUMENTED

Unlike liability, damages must be proven even after default. *Comdyne I*, 908 F.2d at 1149. Mr. Copeland has submitted a detailed certification (Exhibit A) establishing his losses with specificity:

**Lost NFL Compensation and Benefits: $1,541,420**

- Four-game salary suspension: $411,765

- Forfeited signing bonus: $73,530

- Lost playtime incentive: $250,000

- Lost roster bonus: $78,125

- Lost performance bonus: $500,000

- Lost retirement contributions: $228,000

**Lost Endorsements and Marketing: $46,500**

**Additional Expenses: $209,982.85**

- Training and lodging during suspension: $14,425

- Lost performance-based pay: $189,582.85

- Legal fees for NFL appeal: $5,975

**Total Compensatory Damages: $1,797,902.85**

These damages flow directly from JAD's violations. Under N.J.S.A. 56:8-19, the Consumer Fraud Act mandates treble damages for violations, yielding $5,393,708.55.

7

## VII. THE CHAMBERLAIN FACTORS WARRANT DEFAULT JUDGMENT

**First Factor, Prejudice to Plaintiff**: Denying default judgment would substantially prejudice Mr. Copeland's ability to obtain complete relief. JAD, as the manufacturer and labeler of the contaminated product, bears significant responsibility for the contamination. Its refusal to participate frustrates Plaintiff's right to recovery, especially in light of Ms. Kandel's recent bankruptcy and Poliquin's apparent complete insolvency.

**Second Factor, Absence of Meritorious Defense**: No conceivable defense exists. Three independent laboratories confirmed contamination. JAD's own customer testified that JAD manufactured and labeled the product. The documentary evidence includes JAD's own invoices and emails. These are not allegations, they are proven facts.

**Third Factor,  Culpable Conduct**: JAD's failure to appear reflects deliberate choice, not inadvertence. The emails admitted in discovery indicate that a co-defendant contacted JAD in 2019 to alert them about the contamination and lawsuit. JAD was properly served yet apparently chose to default, presumably calculating that absence was preferable to defending the indefensible.

## VIII. CONCLUSION

This case presents precisely the situation New Jersey's strict liability framework was designed to address: a manufacturer placing contaminated products into commerce with devastating consequences for innocent consumers. The evidence is overwhelming. The law is clear. Justice requires entry of judgment.

Plaintiff respectfully requests that this Court enter default judgment against JAD Nutrition L.L.C. d/b/a Xtreme Formulations in the amount of $5,393,708.55, representing trebled

8

compensatory damages as mandated by the Consumer Fraud Act, together with attorneys' fees, costs, and pre- and post-judgment interest, and any such other relief that may be appropriate.

Respectfully submitted this 2nd day of February, 2026.

Respectfully submitted,

**DECLERCQ LAW FIRM PLLC**

**BLACKMON & BLACKMON PLLC**

*By: /s/ Emily K. Declercq*

Emily K. Declercq

*Attorneys for Plaintiff*